# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF TAMAR KEDEM SIMAN TOV, BY HEIR-AT-LAW GAD KEDEM, ET AL., | Civil Action No.<br><br>24 Civ. 4765 (AT) |
| Plaintiffs, | |
| v. | |
| UNITED NATIONS RELIEF AND WORKS AGENCY ("UNRWA"), ET AL., | |
| Defendants. | |

## [PROPOSED] BRIEF OF AMICI, StandWithUs AND RAUL WALLENBERG CENTRE FOR HUMAN RIGHTS

Respectfully Submitted By,

Noel J. Nudelman, Esq.
Joseph H. Tipograph, Esq.
HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Ave., NW, Suite 440
Washington, DC 20015
202-463-1818

*Attorneys for Amici*

# TABLE OF CONTENTS

Introduction and Statement of Interest ........................................................................................ 3

ARGUMENT .............................................................................................................................. 3

    I.    The Attacks that Injured the Plaintiffs ........................................................................ 3

    II.    UNRWA is not Entitled to Immunity. ........................................................................ 4

    CONCLUSION ............................................................................................................. 8

**INTRODUCTION AND STATEMENT OF INTEREST**

This non-party amicus brief is submitted on behalf of (a) the StandWithUs Saidoff Legal Department, a division of StandWithUs, an international, nonprofit Israel education organization founded in 2001 that supports Israel and fights antisemitism around the world ("StandWithUs") and (b) Raoul Wallenberg Centre for Human Rights ("Wallenberg Centre").

StandWithUs is dedicated to educating people about Israel and combating the extremism and antisemitism that often distort discourse related to Israel. StandWithUs also vigorously challenges antisemitism through legal action. As a United States-based organization with Jewish and Israeli staff and volunteers, StandWithUs has a strong interest in ensuring that UNRWA is held accountable for supporting and participating in the October 7, 2023, terrorist attack on Israel.

The Wallenberg Centre is a unique international consortium of parliamentarians, scholars, jurists, human rights defenders, NGOs, and students united in the pursuit of justice, inspired by and anchored in Raoul Wallenberg's humanitarian legacy – how one person with the compassion to care and the courage to act can confront evil, prevail, and transform history. Accordingly, in keeping with the Raoul Wallenberg's legacy and the Wallenberg Centre's mission, the Wallenberg Centre as a strong interest in ensure those that those that supported and participated in October 7 2023 terrorist attacks on Israel are held accountable including UNRWA.

**ARGUMENT**

I.   **The Attacks that Injured the Plaintiffs**

On October 7, 2023, the Plaintiffs were mercilessly hunted, tortured, kidnapped, sexually assaulted and killed by an organized attack launched by Hamas with genocidal intent ("October 7 Attack"). Hamas is a Specially Designated Global Terrorist Group, and, on September 3, 2024, the

Government filed a criminal complaint against Hamas' leaders in this Court for committing the October 7 Attack.

Since the October 7 Attack, evidence has surfaced which supports that UNRWA knowingly provided over $1 billion U.S. dollars to Hamas, which used these funds to pay [1]smugglers for the weapons and explosives used in the October 7 Attack.[2] Moreover, UNWRA knowingly employed Hamas members as staff, including in leadership positions, some of whom have been documented as having participated in the October 7 Attack, and regularly met with senior Hamas leaders.

It has further become clear that UNRWA knowingly provided Hamas with a safe haven in its Gaza facilities (including UNRWA's own headquarters) to plan, stage and coordinate the October 7 Attack. And it has long been public knowledge that UNRWA knowingly allows Hamas to indoctrinate recruits and control its schools through Hamas teacher guides, Hamas teachers and al Kutla[3] programming. The full extent to which this occurs is still emerging.

This Court should hold UNWRA accountable for its support of terrorist entities such as Hamas.

**II.    UNRWA is not Entitled to Immunity.**

UNRWA and its activities here are far outside of the immunity intended by the Convention on the Privileges and Immunities of the United Nations, 21 U.S.T. 1418 ("CPIUN"). CPIUN and its protections apply to the United Nations itself, not to the myriad agencies, like UNRWA, which are affiliated with the United Nations. The D.C. Circuit affirmed as much in *Rodriguez v. Pan*

---

[2] *Hamas Skimmed $1 Billion in U.N. Aid for Weapons and Tunnels, Suit Says*, NEW YORK TIMES, June 24, 2024, available at https://www.nytimes.com/2024/06/24/nyregion/hamas-gaza-aid-unrwa-lawsuit.html ("The money trail is at the heart of the case against seven current and former top UNRWA officials who are accused of knowing that Hamas siphoned off more than $1 billion from the agency to pay for, among other things, tunneling equipment and weapons that aided its attack on Israel on Oct. 7.").

[3] Al Kutla is an official arm of Hamas, which operates in educational institutions in the Gaza Strip.

*American Health Org.,* 502 F. Supp. 3d 200, 227 (D.D.C. 2020), *aff'd* 29 F.4th 706 (D.C. Cir. 2022)(rejecting multiple immunity defenses UN-affiliated agency, unless designated by the President under the IOIA). Importantly, the U.S. Executive Branch has never designated UNRWA under the International Organizations Immunities Act of 1945 ("IOIA"), 22 U.S.C. §288 et seq. Most, if not all of, UNRWA's funding comes from outside of the United Nations: member countries, NGOs and private donors. In a recent article, a UNRWA official is quoted as describing his agency's connection to the United Nations, as "U.N. in name only."[4] Therefore, it is abundantly clear that even UNWRA sees itself as functioning outside the scope of the United Nation's purview, placing it outside the protections of CPIUN.

Even if this Court were to extend the CPIUN beyond the United Nations itself to affiliated agencies like UNRWA – something no court has previously done – such immunity would not extend to the *jus cogens* violations alleged here. Under international law, no treaty or international act may validate any action in support of genocide, mass rape, or ethnic cleansing. It is a well-established principle of treaty interpretation that a treaty among nations is void and unenforceable if it violates a *jus cogens* norm, just as an ordinary contract may be held void for illegality or for violating public policy.

The norms of *jus cogens* are the most serious and fundamental rules of international law, and in that regard, the Defendants' actions here violate the United Nations' guiding principles. The United Nations maintains that any action or decision of any international organization that conflicts with a *jus cogens* norm is ineffective.

---

[4] *How a U.N. Agency Became a Flashpoint in the Gaza War*, NEW YORK TIMES, Sept. 12, 2024, *available at* https://www.nytimes.com/2024/09/12/magazine/unrwa-gaza-war.html ("The U.N. General Assembly renews its mandate every few years, but the U.N. provides only a tiny portion of its budget. The rest comes from donors. 'U.N. in name only,' one UNRWA official says.").

Granting UNRWA or any other defendant impunity for *jus cogens* violations would also contradict the express will of the United Nations as set forth in the General Assembly's Resolution 60/147 on "Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law."[5] That resolution and the principles it endorses provide that each member state, including the U.S., is obligated to "[p]rovide those who claim to be victims of a human rights or humanitarian law violation with equal and effective access to justice … *irrespective of who may ultimately be the bearer of responsibility for the violation*" and to "[p]rovide effective remedies to victims."[6]

Indeed, the United Nations Security Council ("UNSC") has mandated that all states, including the United States, must "ensure that any person who participates in the financing, planning, preparation or perpetration of terrorist acts or in supporting terrorist attacks is brought to justice..."[7] That the United States government is now advocating for immunity to UNWRA squarely contradicts UNSC Resolution 1373. Passed on September 28, 2001, just seventeen days after the deadliest terror attack on United States' soil, Resolution 1373 is intended to (1) criminalize acts related to terrorism; (2) take steps to prevent the flow of arms and resources to terrorists; and (3) deny safe havens to terrorists. In asserting immunity on behalf of UNWRA, the United States argues in direct contradiction of the purposes of Resolution 1373 and effectively provides the October 7th Hamas operatives with the safe haven of UNWRA to commit these terrorist atrocities. Therefore, Member States, such as the United States, have a legally binding obligation, pursuant

---

[5] Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law : resolution / adopted by the General Assembly, *available at* https://digitallibrary.un.org/record/563157?v=pdf
[6] (emphasis added)
[7] Resolution 1373 (2001), *available at* https://documents.un.org/doc/undoc/gen/n01/557/43/pdf/n0155743.pdf

to Resolution 1373, to legally and forcefully cooperate intentionally against terrorist groups, such as Hamas, including those that support their terrorist activities, such as UNRWA and the other named Defendants.

To immunize UNRWA, despite its most heinous, egregious and lethal conduct, poses significant forward-looking global and political risks, including to the national security of the United States and Israel. To attach immunity to an entity simply because its existence is perpetuated by the General Assembly would create a precedent in which any organization created and sustained by a majority of a quorum of countries, which could consist of entirely authoritarian governments that wantonly violate human rights and reject basic freedoms, could inflict harm on American, Israeli, and other nations' citizens without any concern for recourse or accountability.

Importantly, UNRWA's relationship with terror organizations is neither marginal nor accidental. UNRWA is inextricably intertwined with terrorist activity, as a result of intentional policies, that were instituted and left in place with an eye towards creating the conditions that fuel the Palestinian issue today. Specifically, UNRWA is a demographic powder keg in that it confers on the Palestinian population a permanent, descending, inheritable recognition of refugee status that prohibits their resettlement as citizens of the countries where they reside. The problematic nature of this refugee definition is evident in the international treaties and conventions that are broadly applied to all other refugee populations around the world. Indeed, refugees from all other countries do not pass down their refugee status, in furtherance of the universal understanding that rapid resettlement provides the best and most efficient outcome for all sides.

> In 1965, UNRWA changed the eligibility requirements to be a Palestinian refugee to include third-generation descendants, and in 1982, it extended it again, to include all descendants of Palestine refugee males, including legally adopted children, regardless of whether they had been granted citizenship elsewhere. This classification process is inconsistent with how all other refugees in the world are

7

classified, including the definition used by the United Nations High Commissioner for Refugees (UNHCR) and the laws concerning refugees in the United States. Under Article I(c)(3) of the 1951 U.N. Convention and Protocol Relating to the Status of Refugees, a person is no longer a refugee if, for example, he or she has "acquired a new nationality, and enjoys the protection of the country of his new nationality." UNRWA's definition of a Palestinian refugee, which is not anchored in treaty, includes no such provision.[8]

Under the universal definition of refugees, fewer than 30,000 people today would qualify as Palestinian refugees, and yet UNRWA recognizes 5.9 million people as permanent Palestinian refugees.[9] The perpetual growth of this stateless population has turned UNRWA into a cash cow, but it has been disastrous for the Middle East, as it has had a destabilizing effect on neighboring countries, and has empowered, enriched, and encouraged terrorist and genocidal conduct, and other human rights abuses in blatant contradiction to the primary purpose of the United Nations. Without legal accountability, UNRWA's destructive potential will only grow with time and with it, the threat that UNRWA poses to global security and world order.

## CONCLUSION

The principles of Nuremberg must not be overlooked. In the aftermath of the Second World War, the United Nations was created to ensure that the trampling of the *jus cogens* norms would never again be permitted. In the midst of that era, on September 29, 1947, Robert Jackson, Chief Prosecutor for the United States at the Nuremberg Trial stated, "**the wrongs which we seek to condemn and punish have been so calculated, so malignant and so devastating, that civilization cannot tolerate their being ignored because it cannot survive their being repeated**."[10] Such is the case here. This Court cannot permit the evils committed on October 7—

---

[8] Jay Sekulow, *UNRWA Has Changed the Definition of Refugee*, FOREIGN POLICY (Aug. 17, 2018), *available at* https://foreignpolicy.com/2018/08/17/unrwa-has-changed-the-definition-of-refugee/
[9] https://www.unrwa.org/what-we-do
[10] *"The Grave Responsibility of Justice": Justice Robert H. Jackson's Opening Statement at Nuremberg*, THE NATIONAL WWII MUSEUM, https://www.nationalww2museum.org/war/articles/robert-jackson-opening-statement-nuremberg (emphasis added).

including the evils committed by supporters of the terrorist attackers—to hide behind a veil of immunity.

The undersigned Amici strongly urge this Court to reject arguments to the contrary and to stand firm on the principle that, in matters of genocide, no agency or organization is entitled to immunity from the law but rather must be held accountable for its transgressions.

> Respectfully submitted,
>
> Noel J. Nudelman
> Joseph H. Tipograph
> HEIDEMAN NUDELMAN & KALIK, PC
> 5335 Wisconsin Ave., NW, Suite 440
> Washington, DC  20015
> 202-463-1818

On Behalf the following Amici,

StandWithUs

Raoul Wallenberg Centre for Human Rights