UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ESTATE OF TAMAR KEDEM SIMAN TOV, BY HEIR-AT-LAW GAD KEDEM, ET AL., | § § § § § § § § § § § | Civil Action No.  24 Civ. 4765 (AT) |
| Plaintiffs | | |
| v. | | |
| UNITED NATIONS RELIEF AND WORKS AGENCY ("UNRWA"), ET AL., | | |
| Defendants | | |

BRIEF OF AMICI, StandWithUs,
RAOUL WALLENBERG CENTRE FOR HUMAN RIGHTS
THE ENDOWMENT FOR THE MIDDLE EAST TRUTH,
NATIONAL JEWSH ADVOCACY CENTER, INC. AND
TEMPLE BETH EL OF BOCA RATON

Respectfully Submitted By,

Noel J. Nudelman, Esq.
Joseph H. Tipograph, Esq.
HEIDEMAN NUDELMAN & KALIK, PC[1]
5335 Wisconsin Ave., NW, Suite 440
Washington, DC  20015
202-463-1818

*Attorneys for Amici*

---

[1] Heideman Nudelman & Kalik, PC. and its attorneys are not legal counsel to any of the Plaintiffs who have brought this case before this Court.  However, the firm represents American victims of the October 7th, 2023 HAMAS terrorist attack and accordingly has an interest in the issues before this Court including whether the Defendants may assert a claim of immunity

## **TABLE OF CONTENTS**

Introduction and Statement of Interest ........................................................................................ 3

    ARGUMENT ............................................................................................................................ 4

        I.      The Attacks that Injured the Plaintiffs ........................................................... 4

        II.     UNRWA is not Entitled to Immunity. ........................................................... 5

    CONCLUSION ......................................................................................................................... 9

## INTRODUCTION AND STATEMENT OF INTEREST

This non-party amicus brief is submitted on behalf of (a) the StandWithUs Saidoff Legal Department, a division of StandWithUs, ("StandWithUs"); (b) Raoul Wallenberg Centre for Human Rights ("Wallenberg Centre"); (c) The Endowment for Middle East Truth ("EMET"); (d) National Jewish Advocacy Center, Inc. ("NJAC") and (e) Temple Beth El of Boca Raton ("Temple Beth El")[2].

StandWithUs is dedicated to educating people about Israel and combating the extremism and antisemitism that often distort discourse related to Israel. StandWithUs also vigorously challenges antisemitism through legal action. As a United States-based organization with Jewish and Israeli staff and volunteers, StandWithUs has a strong interest in ensuring that UNRWA is held accountable for supporting and participating in the October 7, 2023, terrorist attack on Israel.

The Wallenberg Centre is a unique international consortium of parliamentarians, scholars, jurists, human rights defenders, NGOs, and students united in the pursuit of justice, inspired by and anchored in Raoul Wallenberg's humanitarian legacy – how one person with the compassion to care and the courage to act can confront evil, prevail, and transform history. Accordingly, in keeping with Raoul Wallenberg's legacy and the Wallenberg Centre's mission, the Wallenberg Centre as a strong interest in ensuring that those who supported and participated in the October 7, 2023 terrorist attacks on Israel are held accountable, including UNRWA.

EMET is a Washington, D.C. based think tank and policy center which works to educate policy-makers by providing pertinent information to make informed decisions that will improve American security and the security of America's ally, Israel. It provides in-depth research and

---

[2] Temple Beth El of Boca Raton joins this Amicus as to Section II only and takes no position as to the arguments and facts set forth in Section I.

3

analyses which challenges misrepresentations about the Middle East and the nature of the US-Israel relationship with fact-based briefings for policymakers, their staff, and the public-at-large.

NJAC is a nonprofit organization committed to advocating for the Jewish nation and the Jewish state as prisms through which people from all walks of life can learn about the dignity of difference, the power of coexistence, and the strength that comes from tolerance. The proper resolution of this case is a matter of utmost concern to NJAC because it involves holding those who target both the Jewish people and the Jewish State for genocidal attacks accountable.

Temple Beth El is committed to the principles of justice, freedom, fairness, and honesty. We embrace the duty of *Tikkun Olam*—the healing and repair of the world—and believe that indifference is not an option when confronted with injustice. The issue at hand transcends the immediate parties; it holds profound implications for the future safety and dignity of countless individuals, including the Jewish people, against atrocities that violate our shared humanity.  It urges the Court to consider its perspective as part of the global community seeking to live in freedom and peace. To allow immunity to obstruct the pursuit of truth undermines the very foundations of justice and moral responsibility,

## ARGUMENT

### I. The Attacks that Injured or Killed the Plaintiffs

On October 7, 2023, the Plaintiffs were mercilessly hunted, tortured, kidnapped, sexually assaulted and killed by an organized attack launched by HAMAS, which is the acronym for the Islamic Resistance Movement, with genocidal intent ("October 7th Attack"). HAMAS is a Specially Designated Global Terrorist Group, and, on September 3, 2024, the Government

unsealed its criminal complaint against HAMAS's leaders in this Court for committing the heinous and barbaric October 7th Attack.

Since the October 7th Attack, evidence has surfaced which supports that UNRWA knowingly provided over $1 billion U.S. dollars to HAMAS, which used these funds, *inter alia*, to pay smugglers for the weapons and explosives used in the October 7th Attack.[3] Moreover, UNRWA knowingly employed HAMAS members as staff, including in leadership positions, some of whom have been documented as having participated in the October 7th Attack, and regularly met with senior HAMAS leaders.

It has further become clear that UNRWA knowingly provided HAMAS with a safe haven in its Gaza facilities (including UNRWA's own headquarters) to plan, stage and coordinate the October 7th Attack. And it has long been public knowledge that UNRWA knowingly allows HAMAS to indoctrinate recruits and control its schools through HAMAS teacher guides, HAMAS teachers and al Kutla[4] programming. The full extent to which this occurs is still emerging.

This Court should hold UNRWA accountable for its support of terrorist entities such as HAMAS.

## II. UNRWA is not Entitled to Immunity.

UNRWA and its activities here are far outside of the immunity intended by the Convention on the Privileges and Immunities of the United Nations, 21 U.S.T. 1418 ("CPIUN"). CPIUN and its protections apply to the United Nations itself, not to the myriad agencies, like UNRWA, which are affiliated with the United Nations. The D.C. Circuit affirmed as much in *Rodriguez v. Pan*

---

[3] *Hamas Skimmed $1 Billion in U.N. Aid for Weapons and Tunnels, Suit Says*, NEW YORK TIMES, June 24, 2024, *available at* https://www.nytimes.com/2024/06/24/nyregion/hamas-gaza-aid-unrwa-lawsuit.html ("The money trail is at the heart of the case against seven current and former top UNRWA officials who are accused of knowing that Hamas siphoned off more than $1 billion from the agency to pay for, among other things, tunneling equipment and weapons that aided its attack on Israel on Oct. 7.").
[4] Al Kutla is an official arm of HAMAS, which operates in educational institutions in the Gaza Strip.

5

*American Health Org.,* 502 F. Supp. 3d 200, 227 (D.D.C. 2020), *aff'd* 29 F.4th 706 (D.C. Cir. 2022)(rejecting multiple immunity defenses of a UN-affiliated agency, unless designated by the President under the IOIA). Importantly, the U.S. Executive Branch has never designated UNRWA under the International Organizations Immunities Act of 1945 ("IOIA"), 22 U.S.C. §288 et seq. Most, if not all of, UNRWA's funding comes from outside of the United Nations: member countries, NGOs and private donors. In a recent article, a UNRWA official is quoted as describing his agency's connection to the United Nations, as "U.N. in name only."[5] Therefore, it is abundantly clear that even UNRWA sees itself as functioning outside the scope of the United Nation's purview, placing it outside the protections of CPIUN.

Even if this Court were to extend the CPIUN beyond the United Nations itself to affiliated agencies like UNRWA – something no court has previously done – such immunity would not extend to the *jus cogens* violations alleged here. Under international law, no treaty or international act may validate any action in support of genocide, mass rape, or ethnic cleansing. It is a well-established principle of treaty interpretation that a treaty among nations is void and unenforceable if it violates a *jus cogens* norm, just as an ordinary contract may be held void for illegality or for violating public policy.

The norms of *jus cogens* are the most serious and fundamental rules of international law, and in that regard, the Defendants' actions here violate the United Nations' guiding principles.[6] The United Nations maintains that any action or decision of any international organization that conflicts with a *jus cogens* norm is ineffective.

---

[5] *How a U.N. Agency Became a Flashpoint in the Gaza War*, NEW YORK TIMES, Sept. 12, 2024, *available at* https://www.nytimes.com/2024/09/12/magazine/unrwa-gaza-war.html ("The U.N. General Assembly renews its mandate every few years, but the U.N. provides only a tiny portion of its budget. The rest comes from donors. 'U.N. in name only,' one UNRWA official says.").

[6] *See* Report of the International Law Commission: Seventy-First Session, UN GAOR, 74th Sess., Supp. No. 10, at 1−2, paras. 1, 3, UN Doc. A/74/10 (2019) [hereinafter 2019 Report].

Granting UNRWA or any other defendant impunity for *jus cogens* violations would also contradict the express will of the United Nations as set forth in the General Assembly's Resolution 60/147 on "Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law."[7] That resolution and the principles it endorses provide that each member state, including the U.S., is obligated to "[p]rovide those who claim to be victims of a human rights or humanitarian law violation with equal and effective access to justice … *irrespective of who may ultimately be the bearer of responsibility for the violation*" and to "[p]rovide effective remedies to victims."[8]

Indeed, the United Nations Security Council ("UNSC") has mandated that all states, including the United States, must "ensure that any person who participates in the financing, planning, preparation or perpetration of terrorist acts or in supporting terrorist attacks is brought to justice..."[9] That the United States government is now advocating for immunity to UNWRA squarely contradicts UNSC Resolution 1373. Passed on September 28, 2001, just seventeen days after the deadliest terror attack on United States' soil, Resolution 1373 is intended to (1) criminalize acts related to terrorism; (2) take steps to prevent the flow of arms and resources to terrorists; and (3) deny safe havens to terrorists. In asserting immunity on behalf of UNRWA, the United States argues in direct contradiction of the expressed purposes of Resolution 1373 and effectively provides the October 7th HAMAS operatives with the safe haven of UNRWA to commit these terrorist atrocities. Therefore, Member States, such as the United States, have a legally binding

---

[7] Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law : resolution / adopted by the General Assembly, *available at* https://digitallibrary.un.org/record/563157?v=pdf
[8] (emphasis added)
[9] Resolution 1373 (2001), *available at* https://documents.un.org/doc/undoc/gen/n01/557/43/pdf/n0155743.pdf

obligation, pursuant to Resolution 1373, to legally and forcefully cooperate intentionally against terrorist groups, such as HAMAS, including those that support their terrorist activities, such as UNRWA and the other named Defendants.

To immunize UNRWA, despite its most heinous, egregious and lethal conduct, poses significant forward-looking global and political risks, including to the national security of the United States and the State of Israel. To attach immunity to an entity simply because its existence is perpetuated by the General Assembly would create a precedent in which any organization created and sustained by a majority of a quorum of countries, which could consist of entirely authoritarian governments that wantonly violate human rights and reject basic freedoms, could inflict harm on American, Israeli, and other nations' citizens without any concern for recourse or accountability.

Importantly, UNRWA's relationship with terror organizations is neither marginal nor accidental. UNRWA is inextricably intertwined with terrorist activity, as a result of intentional policies that were instituted and left in place with an eye towards creating the conditions that fuel the Palestinian issue today. Specifically, UNRWA is a demographic powder keg in that it confers on the Palestinian population a permanent, descending, inheritable recognition of refugee status that prohibits their resettlement as citizens of the countries where they reside. The problematic nature of this refugee definition is evident in the international treaties and conventions that are broadly applied to all other refugee populations around the world. Indeed, refugees from all other countries do not pass down their refugee status, in furtherance of the universal understanding that rapid resettlement provides the best and most efficient outcome for all sides.

> In 1965, UNRWA changed the eligibility requirements to be a Palestinian refugee to include third-generation descendants, and in 1982, it extended it again, to include all descendants of Palestine refugee males, including legally adopted children, regardless of whether they had been granted citizenship elsewhere. This

classification process is inconsistent with how all other refugees in the world are classified, including the definition used by the United Nations High Commissioner for Refugees (UNHCR) and the laws concerning refugees in the United States. Under Article I(c)(3) of the 1951 U.N. Convention and Protocol Relating to the Status of Refugees, a person is no longer a refugee if, for example, he or she has "acquired a new nationality, and enjoys the protection of the country of his new nationality." UNRWA's definition of a Palestinian refugee, which is not anchored in treaty, includes no such provision.[10]

Under the universal definition of refugees, fewer than 30,000 people today would qualify as Palestinian refugees, and yet UNRWA recognizes 5.9 million people as permanent Palestinian refugees.[11] The perpetual growth of this stateless population has turned UNRWA into a cash cow, but it has been disastrous for the Middle East, as it has had a destabilizing effect on neighboring countries, and has empowered, enriched, and encouraged terrorist and genocidal conduct, and other human rights abuses in blatant contradiction to the primary purpose of the United Nations. Without legal accountability, UNRWA's destructive potential will only grow with time and with it, the threat that UNRWA poses to global security and world order.

## CONCLUSION

The principles of Nuremberg must not be overlooked. In the aftermath of the Second World War, the United Nations was created to ensure that the trampling of the *jus cogens* norms would never again be permitted. In the midst of that era, on September 29, 1945, Robert Jackson, Chief Prosecutor for the United States at the Nuremberg Trial stated, "**the wrongs which we seek to condemn and punish have been so calculated, so malignant and so devastating, that civilization cannot tolerate their being ignored because it cannot survive their being**

---

[10] Jay Sekulow, *UNRWA Has Changed the Definition of Refugee*, FOREIGN POLICY (Aug. 17, 2018), *available at* https://foreignpolicy.com/2018/08/17/unrwa-has-changed-the-definition-of-refugee/
[11] https://www.unrwa.org/what-we-do

**repeated**."[12]  Such is the case here. This Court cannot permit the evils committed on October 7th—including the evils committed by supporters of the terrorist attackers—to hide behind a veil of immunity.

The undersigned Amici strongly urge this Court to reject arguments to the contrary and to stand firm on the principle that, in matters of genocide, no agency or organization is entitled to immunity from the law but rather must be held accountable for its transgressions.

September 27, 2024

Respectfully submitted,

Noel J. Nudelman
Joseph H. Tipograph
HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Ave., NW, Suite 440
Washington, DC  20015
202-463-1818
Email:  attorneys@hnklaw.com

On Behalf the following Amici,

StandWithUs

Raoul Wallenberg Centre for Human Rights

The Endowment for Middle East Truth

National Jewish Advocacy Center, Inc.

Temple Beth El of Boca Raton

---

[12] *"The Grave Responsibility of Justice": Justice Robert H. Jackson's Opening Statement at Nuremberg*, THE NATIONAL WWII MUSEUM, https://www.nationalww2museum.org/war/articles/robert-jackson-opening-statement-nuremberg (emphasis added).