

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

October 18, 2024

**BY ECF**
The Honorable Analisa Torres
United States District Judge
United States District Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Estate of Tamar Kedem Siman Tov, et al. v. UNRWA*,
      <u>24 Civ. 4765 (AT)</u>

Dear Judge Torres:

   Pursuant to the Court's August 23, 2024 order (ECF No. 22), the United States of America (the "Government"), by and through its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this letter in response to Plaintiffs' September 13, 2024 memorandum of law (ECF No. 25 ("Pls. Br.")) and in further support of its July 30, 2024 statement of interest (ECF No. 17 ("Gov't Letter")). The Government writes in accordance with its obligations as a party to treaties governing the immunities of the UN, to explain the applications of those immunities in this case.[1]

   As the Government previously indicated, it takes no position on the factual allegations, which, among other things, recount atrocious crimes committed by Hamas on October 7.

**I.     UNRWA is Entitled to the Privileges and Immunities Afforded to the UN.**

   In the Government's July 30 letter, it explained that UNRWA, as a subsidiary organ of the United Nations, is entitled to the privileges and immunities of the UN, which afford it absolute immunity from suit.  (*See* Gov't Letter 3-5).

   In response to the Government's assertion that UNRWA is entitled to immunity as a subsidiary organ of the UN, Plaintiffs argue that: (1) UNRWA is affiliated with, but distinct from the UN; and (2) as a distinct entity, the General Convention (referred to as

---

[1]     The Government incorporates those abbreviations defined in July 30 Letter.

the "CPIUN" in Plaintiffs' brief), does not extend to UNRWA.  (*See* Pls. Br. 7-16).[2]  These contentions are unsupported by the law.

### A. UNRWA Is a Subsidiary Organ of the UN General Assembly Entitled to the Privileges and Immunities Afforded to the UN Through the General Convention.

The UN Charter provides that the General Assembly, which is a principal organ of the United Nations, "may establish such subsidiary organs as it deems necessary for the performance of its functions."  UN Charter art. 22.  Thus, where the General Assembly creates an institution, it is a subsidiary organ of the General Assembly.  In 1949, the General Assembly, exercising its article 22 powers, established UNRWA as a subsidiary organ.  *See* G.A. Res. 302 (IV) (Dec. 8, 1949).

UNRWA's existence as a subsidiary organ of the UN is well-recognized.  General Assembly resolutions extending the mandate of UNRWA explicitly refer to UNRWA as a "subsidiary organ."  *See, e.g.*, G.A. Res. 513 (VI) (Jan. 26, 1952) (referring to UNRWA as a "subsidiary organ established by the General Assembly"); G.A. Res. 1315 (XIII) (Dec. 12, 1958) ("Recalling that the Agency is a subsidiary organ of the United Nations").  Indeed, in many instances, such General Assembly resolutions confirm that UNRWA, "as a subsidiary organ of the United Nations, enjoys the benefits of the [General Convention]."  G.A. Res. 1456 (XIV), Preamble (Dec. 9, 1959); *see also* G.A. Res. 1018 (XI), Preamble, (Feb. 28, 1957); G.A. Res. 1191 (XII), Preamble (Dec. 12, 1957).

The UN's Repertory of Practice, a legal publication containing analytical studies of the decisions of the principal organs of the United Nations, classifies UNRWA as a subsidiary organ of the General Assembly.  *See, e.g.*, United Nations, *Repertory of United Nations Organs*, Volume 1, Article 7, para 16 (1945-1954) (citing UNRWA as an example of a "subsidiary organ" that is also an "operational agency"); *see id*. at Article 22, para 16 & Annex (listing UNRWA as "subsidiary organ").

---

[2]    Plaintiffs appear to argue that the defendants in this action must appear to assert immunity as an affirmative defense.  (*See* Pls. Br. 7).  That is not the case.  To the extent UNRWA and the Individual Defendants are immune from suit, this Court lacks subject matter jurisdiction over the action.  *See Brzak v. United Nations*, 597 F.3d 107, 111, 114 (2d Cir. 2010) (affirming dismissal of claims against UN and former officials on subject matter jurisdiction grounds); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 n.20 (1983) ("Under the [Foreign Sovereign Immunities Act], ... subject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity.").  This Court must assess its jurisdiction over the case, even without a responsive pleading or motion from the defendants.  Fed. R. Civ. P. 12(h) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see Georges v. United Nations*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015) (dismissing action for lack of subject matter jurisdiction where Government submitted statement of interest asserting immunity, but defendants had not been served or appeared).

The UN Secretariat, in its publications, also repeatedly refers to UNRWA as a subsidiary organ. *See* 1968 U.N. Jurid. Y.B. 182, U.N. Doc. ST/LEG/SER.C/6 ("[UNRWA] is a subsidiary organ of the General Assembly, with a mandate established by that body, and must at all times act as a United Nations agency."); 1969 U.N. Jurid. Y.B. 209, U.N. Doc. ST/LEG/SER.C/7 (referring to UNRWA as "subsidiary organ"); 1976 U.N. Jurid. Y.B. 159, U.N. Doc. ST/LEG/SER.C/14 (same); 1997 U.N. Jurid. Y.B. 439, U.N. Doc. ST/LEG/SER.C/41 (same); 2000 U.N. Jurid. Y.B. 354-58, U.N. Doc. ST/LEG/SER.C/38 (same).[3]

UNRWA's status as a subsidiary organ of the UN is further confirmed by its organizational structure and activities, which are controlled by the General Assembly. *See, e.g.*, Daniel-Erasmus Khan, *Article 22*, The Charter of the United Nations: A Commentary, 1002 (Bruno Simma et al., 4th ed. 2024) ("The [General Assembly] retains at all times organizational power and thereby the ability to control the structure and activities of the subsidiary organs."); William Dale, *UNRWA: A Subsidiary Organ of the United Nations*, The International and Comparative Law Quarterly, Vol. 23, No. 3, at p. 577 (July 1974) ("The constitutional features common to all subsidiary organs of the United Nations are that they are created, their membership, structure and terms of reference are determined and may be modified, and they may be discontinued, by or under the authority of a principal organ of the United Nations.").

The General Assembly, as UNRWA's parent organ, periodically renews its mandate. *See, e.g.*, G.A. Res. 77/123, ¶ 6 (Dec. 12, 2022). On December 12, 2022, the General Assembly extended UNRWA's current mandate until June 30, 2026. G.A. Res. 77/123 (Dec. 12, 2022). Each year, the General Assembly adopts a series of resolutions concerning UNRWA's mandate. *See, e.g.*, G.A. Res. 78/74 (Dec. 7, 2023); G.A. Res. 78/73 (Dec. 7, 2023).

The UN Secretary-General appoints UNRWA's Commissioner-General. *See* G.A. Res. 302 (IV), ¶ 9 (Dec. 8, 1949) (providing that the Commissioner-General (referred to as the "Director") is appointed by the Secretary-General at the request of the General Assembly). That Commissioner-General reports directly to the General Assembly. *See, e.g.*, UNRWA, Annual Report of the Commissioner-General to the General Assembly – 1 January to 31 December 2022, U.N. Doc. A/78/13 (Aug. 18, 2023).

---

[3]    In support of their argument that UNRWA is not a subsidiary organ of the UN, Plaintiffs point to a UN organizational chart, which lists UNRWA under "Other Entities." *See* ECF No. 24, Declaration of John W. Brewer, at Ex. D. However, the organizational chart signifies that UNRWA was established by the General Assembly, that it is among the General Assembly's subsidiary organs, and that it further falls within one of the subcategories of subsidiary organs described as "Other Entities." The inherent limitations of this single-page visualization are ill-suited to address the particulars of UNRWA's status as part of the United Nations. Nor does this chart undermine or preempt the General Assembly's unambiguous and authoritative pronouncements on the subject.

Further, UNRWA receives funding from the UN's regular budget, *see* G.A. Res. 3331 (XXIX), § B (Dec. 17, 1974); G.A. Res. 77/122 ¶ 17 (Dec. 15, 2022), and submits its budget to the General Assembly's Advisory Committee on Administrative and Budgetary Questions, *see e.g.*, G.A. Res. 78/254, § 26 (Dec. 22, 2023).  Its staff regulations and rules, which are modeled on the UN Secretariat's own staff regulations and rules, are approved by the Secretary General of the UN.  *See* G.A. Res. 302 (IV).  Additionally, UNRWA is subject to the specific jurisdiction of the United Nations Appeals Tribunal (formerly the United Nations Administrative Tribunal).  *See* U.N. Appeals Tribunal, About the UN Appeals Tribunal, https://www.un.org/en/internaljustice/unat/about-contact-calendar.shtml (last visited Oct. 4, 2024).

Plaintiffs' assertion that the Government cites no cases involving or mentioning UNRWA is not probative of whether UNRWA is in fact a subsidiary organ of the UN entitled to the immunities afforded by the General Convention.[4]  (Pls' Brief 10)  The Government is aware of no case in United States courts in which UNRWA's status as a subsidiary organ of the UN has in fact been challenged.

Given UNRWA's status as a subsidiary organ of the UN, it is entitled to the immunity of the UN pursuant to the General Convention and is immune from this suit.  *See Georges v. United Nations*, 84 F. Supp. 3d 246, 249 (S.D.N.Y. 2015) (MINUSTAH, subsidiary body of the Security Council, immune from suit under the General Convention), *aff'd*, 834 F.3d 88 (2d Cir. 2016); *Laventure v. United Nations*, 279 F. Supp. 3d 394, 400 (E.D.N.Y. 2017) (same), *aff'd*, 746 F. App'x 80 (2d Cir. 2018); *Sadikoglu v. United Nations Dev. Programme*, No. 11 Civ. 0294 (PKC), 2011 WL 4953994, at *3 (S.D.N.Y. Oct. 14, 2011) (United Nations Development Programme ("UNDP"), subsidiary body of the General Assembly, immune from suit under the General Convention); *Bisson v. The United Nations*, No. 06 Civ. 6352 (PAC) (AJP), 2007 WL 2154181, at *7 (S.D.N.Y. July 27, 2007) (World Food Programme, a subsidiary organ of the UN, immune from suit under the General Convention), *report and recommendation adopted sub nom. Bisson v. United Nations*, 2008 WL 375094 (S.D.N.Y. Feb. 11, 2008).[5]

### B.  UNRWA Is a Subsidiary Organ of the UN Entitled to Immunity Under the IOIA.

The Government's July 30 letter asserted that the Individual Defendants are afforded official acts immunity pursuant to Section 7(b) of the International Organizations

---

[4]    Plaintiffs cite *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200 (D.D.C. 2020), in support of their argument that the immunity protections of the General Convention do not extend to UN "affiliate organizations."  (*See* Pls. Br. 10-11)  But unlike the Pan American Health Organization (PAHO), UNRWA is a subsidiary part of the UN, covered by the General Convention, and thus *Rodriguez* is inapposite.

[5]    Given that UNRWA is a subsidiary organ of, and therefore a part of, the UN, Plaintiffs' arguments about the Convention on the Privileges and Immunities of the Specialized Agencies (*see* Pls. Br. 8-9), which concerns UN-affiliated entities, misses the mark.

Immunities Act, 22 U.S.C. § 288 *et seq*. ("IOIA"). (*See* Gov't Letter 7). UNRWA also is immune from this action pursuant to the IOIA.

The UN and, therefore, UNRWA, are afforded immunity under United States law pursuant to the IOIA. The IOIA accords international organizations so designated by the President "the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity." 22 U.S.C. § 288a(b). The UN was designated as an international organization for purposes of the IOIA by Executive Order in 1946, before the United States became a party to the General Convention. Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946). The IOIA thus "serves as a separate and independent source of immunity" for UNRWA. *See Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 120 (D.D.C. 2009), *aff'd*, No. 09-7114, 2010 WL 4340534 (D.C. Cir. Oct. 20, 2010).

Since UNRWA is a subsidiary organ of the UN, it also is given the immunity afforded to the UN pursuant to the IOIA. *See Bisson*, 2007 WL 2154181, at *7 (World Food Programme, as subsidiary organ of the UN, entitled to immunity under General Convention and IOIA); *D'Cruz v. Annan*, No. 05 Civ. 8918, 2005 WL 3527153 at *2 (S.D.N.Y. Dec. 22, 2005) (UN entities and/or subdivisions immune from suit under both the General Convention and IOIA), *aff'd* F. App'x 42 (2d Cir. 2007); *Shamsee v. Shamsee*, 428 N.Y.S.2d 33, 36 (2d Dep't 1980) (UN Joint Staff Pension Fund, as an organ of the UN, entitled to immunity under the General Convention and IOIA), *aff'd*, 53 N.Y.2d 739 (1981); *Hunter v. United Nations*, 800 N.Y.S.2d 347, 2004 WL 3104829 at *3 (N.Y. Sup. Ct. 2004) (UNICEF, as a UN agency, entitled to immunity under the IOIA, even though it had not been separately designated as an international organization).

## II.    UN Immunity Is Absolute Under the General Convention and IOIA

As explained in the Government's July 30 letter, the General Convention is a self-executing treaty that affords absolute immunity to the UN and its subsidiary organs. In response, Plaintiffs argue that even if UNRWA is entitled to the privileges and immunities afforded by the General Convention, such immunity does not extend to claims of aiding and abetting violations of *jus cogens* norms.[6] However, that argument is unsupported by the law.

---

[6]    The concept of a *jus cogens* norm, also known as a peremptory norm of international law, is generally viewed as "a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." Vienna Convention on the Law of Treaties (VCLT), art. 53, 1155 U.N.T.S. 331 (1969). Under the VCLT a "treaty is void if ... it conflicts with a peremptory norm of general international law." *Id*. The United States is not a party to the VCLT, but views many of its provisions, including Article 53, as reflecting customary international law. *See United States v. Yousef,* 327 F.3d 56, 94 (2d Cir. 2003). While international law does not permit derogation from *jus cogens* norms, there is also no rule

The plain text of the General Convention does not afford any exceptions to the immunity of the UN.  The General Convention provides that "the United Nations shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."  General Convention, art. II, § 2, 21 U.S.T. 1418 (1946).  This treaty language, which applies to "every form of legal process," and speaks of no exceptions, is controlling.  *See United States v. Stuart*, 489 U.S. 353, 365 (1989) (clear import of treaty language controls).  Nothing in the General Convention suggests that the UN's immunity is conditioned on the particular nature of the alleged wrongdoing.  *See Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 180 (1982) ("the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight").

Every court to have considered the issue has held that the text of the General Convention makes the UN's immunity absolute.  *Brzak*, 597 F.3d at 111 (the General Convention accords the UN "absolute immunity," except to the extent that the UN expressly waives it); *Georges v. United Nations*, 834 F.3d 88, 97 n.48 (2d Cir. 2016) (reaffirming *Brzak*); *Emmanuel v. United States*, 253 F.3d 755, 756 n.2 (1st Cir. 2001) ("United Nations immunity is absolute unless expressly waived.").

The Government is aware of no court that has held that the UN's alleged violation of *jus cogens* norms abrogates the immunities afforded to it by the General Convention.

Further, there is no *jus cogens* exception to the immunities afforded to the UN under the IOIA.  *See Kling v. World Health Organization*, 532 F. Supp. 3d 141, 153 (S.D.N.Y. 2021) (dismissing action alleging that World Health Organization, a designated international organization under the IOIA, had violated *jus cogens* norms).  Nor is there a *jus cogens* exception to the Foreign Sovereign Immunities Act ("FSIA"), *see Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 245 (2d Cir. 1996) (violation of *jus cogens* principles does not demonstrate an implied waiver of sovereign immunity within the meaning of FSIA); *Carpenter v. Rep. of Chile*, 610 F.3d 776, 779 (2d Cir. 2010) ("A claim premised on the violation of *jus cogens* does not withstand foreign sovereign immunity."), which offers "continuously equivalent" immunities to the IOIA, *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019).

Thus, Plaintiffs' attempt to create a *jus cogens* exception to the immunity afforded to the UN under the General Convention is contrary to both the plain text of the General Convention and binding precedent establishing the absolute immunity afforded to the UN.

## III.    Defendants Lazzarini and Grandi Are Entitled to Diplomatic Immunity in this Action.

In the Government's July 30 letter, it explained that Defendants Lazzarini and Grandi, by virtue of their ranks as Under-Secretaries General of the United Nations, must be granted "the privileges and immunities ... accorded to diplomatic envoys, in accordance

---

of international law requiring an exception to immunity from civil jurisdiction in domestic civil courts.

with international law."  General Convention, art V, § 19; *see also Brzak*, 597 F.3d at 113 (General Convention provides "current diplomatic envoys" with "absolute immunity from civil and criminal process" subject to limited enumerated exceptions); *Deng v. United Nations*, No. 22 Civ. 5539 (LTS), 2022 WL 3030437, at *3 (S.D.N.Y. July 29, 2022) (holding that "the Secretary General of the United Nations, Under Secretaries-General and Assistant Secretaries-General ... enjoy full diplomatic immunity").

As set forth in the Vienna Convention on Diplomatic Relations (VCDR), diplomats enjoy immunity from civil and criminal jurisdiction, with only three enumerated exceptions. Specifically, diplomats do not enjoy immunity from civil actions involving (a) their privately-owned real estate; (b) their performance in a private capacity as an executor, administrator, heir, or legatee; and (c) "any professional or commercial activity ... in the receiving State outside [their] official functions."  *See* VCDR art. 31(1), 23 U.S.T. 3227 (1961).  These exceptions all relate to specified personal capacity financial activities.

Plaintiffs contend that because their allegations involve violations of *jus cogens* norms that such conduct constitutes "professional ... activities other than official functions."  (*See* Pls. Br. 26).  This argument is contrary to law.

The professional and commercial activities exception is limited in scope to a diplomat's work for personal profit outside the diplomat's official role.  *See Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 445 (2d Cir. 2019) (commercial activity exception is "broadly understood to refer to trade or business activity engaged in for personal profit" (citing *Tabion v. Mufti*, 73 F.3d 535, 537 (4th Cir. 1996) (holding that the "commercial activity" exception "relates only to trade or business activity engaged in for personal profit")); *Logan v. Dupuis*, 990 F. Supp. 26, 30-31 (D.D.C. 1997) (adopting the holding of *Tabion*); *see also* Eileen Denza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations* 253, Oxford Commentaries on International Law (4th ed. 2016) (The exception encompasses "[p]aid employment outside the mission or provision of professional services for remuneration by a [diplomat] or a member of his family" such as the spouse of a diplomat who "works as a doctor, teacher, or administrator.").

The drafting history of the VCDR indicates that the professional and commercial activities exception was intended to complement the VCDR's prohibition on outside employment by diplomats.  Specifically, it was included in the treaty to provide for instances in which a diplomat acts contrary to Article 42's prohibition on diplomats practicing any professional or commercial activity for personal profit.  *See* United Nations Conference on Diplomatic Intercourse & Immunities: Official Records 212–13, U.N. Doc. A/CONF.20/14 (1962); *see also* Satow's Guide to Diplomatic Practice 126 (Lord Gore-Booth ed., 5th ed. 1979).  This narrow exception cannot be stretched to create an exception to diplomatic immunity for activity alleged to violate *jus cogens* norms.

Nothing in the VCDR provides an exception to diplomatic immunity for violations of *jus cogens* norms.  *See Devi v. Silva*, 861 F. Supp. 2d 135, 142 (S.D.N.Y. 2012) ("No United States court has recognized a *jus cogens* exception to diplomatic immunity from its civil jurisdiction, and this Court declines to do so.").

Courts have found that the receiving state has "broad discretion to classify diplomats," and an executive branch determination that an official enjoys diplomatic immunity from suit is entitled to "substantial deference." *United States v. Al-Hamdi*, 356 F.3d 564, 571-572 (4th Cir. 2004) (noting "the traditional view in cases involving diplomatic immunity and the Article II power to send and receive ambassadors is not one of judicial review"). Accordingly, Defendants Grandi and Lazzarini are immune from legal process in this action.

## IV. Official Acts Immunity Under the General Convention.

The Government's July 30 letter explained that all of the Individual Defendants, as current and former UNRWA officials, are considered UN officials and are afforded immunity for their official acts, as set forth in Section 18 of the General Convention. (*See* Gov't Letter 7-8). At this time, the Government takes no position on whether the Individual Defendants are entitled to such immunity for the acts alleged in Plaintiffs' complaint. However, the Government responds to Plaintiffs' assertion that there is a categorical exception to official acts immunity under the General Convention for alleged violations of *jus cogens* norms (*see* Pls. Br. 22), and provides the Court with the basic principles governing official acts immunity.

There is no categorical exception to official acts immunity under the General Convention whenever violations of *jus cogens* norms are alleged.[7] As courts have recognized, any such categorical rule would threaten to undermine immunity from suit. *See Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 234 (D.D.C. 2018) (observing that "a *jus cogens* exception would eviscerate any protection that foreign official immunity affords because an exception merges the merits of the underlying claim with the issue of immunity" (internal quotation marks omitted)), *aff'd*, No. 18-7170, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019); *Newman v. Jewish Agency for Israel*, No. 16 Civ. 7593, 2017 WL 6628616, at *2 (S.D.N.Y. Dec. 28, 2017) ("[I]f Plaintiffs could hurdle immunity simply by alleging that the acts were illegal, such a rule would eviscerate the protection of foreign official immunity and would contravene federal law on foreign official immunity." (internal quotation marks omitted)), *aff'd sub nom. Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019).

Indeed, the Second Circuit has held explicitly that there is no categorical *jus cogens* exception to the FSIA or common law immunities. *See Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009). Rather, in the common law context, even where *jus cogens* violations are alleged, the Court "defer[s] to the Executive's determination of the scope of immunity." *Id*. at 15; *see also Rosenberg v. Pasha*, 577 F. App'x 22, 23 (2d Cir. 2014) (declining to adopt a categorical exception to common law immunity for *jus cogens* violations). In *Rosenberg*, the Second Circuit declined to adopt to the reasoning of *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012), the single case cited by Plaintiffs for the contention that official acts immunity does not apply to *jus cogens* violations. (*See* Pls. Br. 22-23). The

---

[7]    The Government has not announced a categorical exception to official acts immunity for *jus cogens* violations and, in certain cases, has suggested immunity for former foreign officials who were alleged to have committed such violations.

*Rosenberg* court held that the Fourth Circuit's reasoning in *Yousuf* was inconsistent with the law of this Circuit. 577 F. App'x at 23-24.

The General Convention exempts current and former UN officials, like the Individual Defendants, "from legal process in respect of words spoken or written and all acts performed by them in their official capacity." General Convention art. V, §18(a). Further, given UNRWA's status as a subsidiary organ of the UN, a designated international organization, its officials likewise are afforded immunity pursuant to the IOIA for "acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees." 22 U.S.C. § 288d(b).

In contrast to the status-based diplomatic immunity afforded Defendants Lazzarini and Grandi, official acts immunity is conduct-based. The primary inquiry to determine the applicability of conduct-based immunity, otherwise known as functional or official acts immunity, is whether the challenged action was performed in an official capacity. In other words, "the [] question is whether the plaintiffs' allegations against the individual defendants involve acts that the defendants performed in the exercise of their United Nations functions." *Brzak*, 597 F.3d at 113.

In determining whether certain acts were taken in an official capacity, the U.S. Department of State has said: "As a general matter, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity for which a determination of immunity is appropriate." *Miango v. Dem. Rep. of the Congo*, No. 15 Civ. 1265 (D.D.C. June 29, 2020), ECF No. 151-1, Letter from Jennifer G. Newstead, Legal Advisor, U.S. Dep't of State, to Joseph H. Hunt, Assistant Attorney General, Civil Division, U.S. Dep't of Justice at 2.

Thus, the Court should approach the application of official-acts immunity under the General Convention consistent with these principles of immunity.

## V.    The UN Has Not Waived Immunity for UNRWA or the Individual Defendants.

With respect to the UN itself, the General Convention provides that waiver of UN immunity must be express and may not be implied. *See* General Convention Art. II, § 2; *see also Laventure v. United Nations*, 746 F. App'x 80, 82 (2d Cir. 2012) (declining to imply waiver of the UN's immunity under the General Convention). Here, the UN has not waived the immunity of UNRWA or its officials in the present case but has instead expressly asserted immunity. (*See* Gov't Letter Ex. 1 at 3).

With respect to the Individual Defendants, Plaintiffs argue that the UN waived their immunity as a result of public statements made by UNRWA Commissioner-General Lazzarini and UN Secretary General Guterres that commit to "hold accountable," "terminate[]," and "refer[] for potential criminal prosecution" any UN officials "involved in" or "shown to have participated or abetted" the October 7 attacks. (Pls. Br. 25). However, the UN has expressly asserted the immunity of the Individual Defendants in a

letter to the Department of State, which the United States conveyed to the Court at the outset of this litigation.  (*See* Gov't Letter Ex. 1).[8]

Accordingly, the UN has neither waived the immunity of UNRWA or the Individual Defendants, and the Government is bound by treaty obligations to assert immunity on their behalf.

Thank you for your consideration of this matter.

Respectfully,

DAMIAN WILLIAMS
United States Attorney


By:    */s/ Tara Schwartz*
       TARA SCHWARTZ
       Assistant United States Attorney
       86 Chambers Street, Third Floor
       New York, New York 10007
       Tel: (212) 637-2633
       Email: tara.schwartz@usdoj.gov

---

[8]      Plaintiffs cite *United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011), for the assertion that the waiver of an individual defendant's immunity under the General Convention or IOIA may be implied or express.  (*See* Pls. Br. 24).  But *Bahel* was a remarkably different case.  In *Bahel*, the Government indicted a former UN official and the UN expressly waived his immunity.  *Id*. at 624-25.  The defendant in *Bahel* participated fully in the proceedings before the court, was present through the pendency of his prosecution, and raised the defense of immunity only after his trial had concluded.  *Id*. at 625-26.  By "waiting until after the trial to raise the issue," the defendant, in the Second Circuit's estimation, "waived his right to invoke immunity."  *Id*. at 626.  By contrast, here the UN has expressly invoked the immunity of the Individual Defendants and they have not appeared before the court.