UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                     :

ESTATE OF TAMAR KEDEM SIMAN TOV, et al.,   :
                                      :

                        Plaintiffs,        :
                                        :

           - against -             :      **Case No. 1:24-cv-4765-AT**
                                        :

UNITED NATIONS RELIEF AND WORKS      :
AGENCY, PHILIPPE LAZZARINI, PIERRE      :
KRÄHENBÜHL, FILIPPO GRANDI, LENI      :
STENSETH, SANDRA MITCHELL, MARGOT     :
ELLIS, AND GRETA GUNNARSDOTTIR,      :
                                        :

                        Defendants.      :
------------------------------------------------------------- X

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

 

                                  CURTIS, MALLET-PREVOST,
                                  COLT & MOSLE LLP

                                  Kevin A. Meehan
                                  Robert Groot
                                  Marwa Farag
                                  101 Park Avenue
Served: New York, NY                    New York, New York 10178
       December 16, 2024             Tel.: (212) 696-6000
                                  Fax: (212) 697-1559
                                  Email: kmeehan@curtis.com

                                  *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

**TABLE OF AUTHORITIES** ................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................. 1

**BACKGROUND** .................................................................................................................... 3

    A.    Background of UNRWA and the Individual Defendants ................................ 3

    B.    The Plaintiffs and the Allegations in the Complaint...................................... 4

    C.    Statement of Interest of the United States Government.................................. 5

**ARGUMENT** ......................................................................................................................... 7

I.    Defendants Are Immune and Therefore This Case Must Be Dismissed For Lack Of
Subject Matter Jurisdiction ................................................................................................ 7

    A.    Plaintiffs Have the Burden of Establishing Subject Matter Jurisdiction ....... 7

    B.    The Claims Against UNRWA Must Be Dismissed for Lack of Subject Matter
Jurisdiction Because UNRWA Is Immune from Suit .................................... 9

        1.    UNRWA Is Entitled to Absolute Immunity under the CPIUN............................. 9

        2.    UNRWA Is Entitled to Absolute Immunity under the IOIA ............................... 16

    C.    The Claims Against Defendants Lazzarini and Grandi Must Be Dismissed Because
They Are Entitled to Diplomatic Immunity................................................. 19

    D.    The Claims Against the Individual Defendants Must Be Dismissed on Immunity
Grounds under the CPIUN and the IOIA...................................................... 21

        1.    The Individual Defendants Are Immune in this Case Because the Complaint
Alleges that They Acted in Their Official Capacity ............................. 22

        2.    The UN Has Not Waived Immunity of the Individual Defendants .................... 24

        3.    The Individual Defendants Are Current and Former UN Officials .................... 27

II.    This Case Must Be Dismissed for Lack of Personal Jurisdiction ......................... 29

**CONCLUSION** ................................................................................................................... **30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*767 Third Ave. Assoc. v. Permanent Mission of Zaire,*
   988 F.2d 295 (2d Cir. 1993) .................................................................................. 20

*Argentine Republic v. Amerada Hess Shipping Corp.,*
   488 U.S. 428 (1989) ............................................................................................. 16

*Atkinson v. Inter-American Dev. Bank,*
   156 F.3d 1335 (D.C. Cir. 1998) ........................................................................... 17

*Baley v. UN,*
   No. 97-9495, 1998 U.S. App. LEXIS 19163 (2d Cir. June 29, 1998) ...................... 9

*Belhas v. Ya'Alon,*
   515 F.3d 1279 (D.C. Cir. 2008) ........................................................................... 26

*Bisson v. UN,*
   No. 06 Civ. 6352 (PAC) (AJP), 2007 U.S. Dist. LEXIS 54334 (S.D.N.Y. July 27, 2007).. 9, 11

*Boimah v. UN Gen. Assembly,*
   664 F. Supp. 69 (E.D.N.Y. 1987) ........................................................................ 18

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
   581 U.S. 170 (2017) ............................................................................................... 8

*Broidy Capital Mgmt. LLC v. Benomar,*
   944 F.3d 436 (2d Cir. 2019) ................................................................. 7, 19, 20, 21

*Brzak v. UN,*
   551 F. Supp. 2d 313 (S.D.N.Y. 2008) ............................................................... 7, 24

*Brzak v. UN,*
   597 F.3d 107 (2d Cir. 2010) .......................................................................... passim

*Carpenter v. Republic of Chile,*
   610 F.3d 776 (2d Cir. 2010) ........................................................................... 15, 26

*D'Cruz v. Annan,*
   No. 05 Civ. 8918 (DC), 2005 U.S. Dist. LEXIS 35589 (S.D.N.Y. Dec. 22, 2005) ................. 22

*De Luca v. UN,*
   841 F. Supp. 531 (S.D.N.Y. 1994) .................................................................... 8, 22

*Deng v. UN*,
No. 22-CV-5539 (LTS), 2022 U.S. Dist. LEXIS 136501 (S.D.N.Y. July 29, 2022) ......... 19, 22

*Devi v. Rajapaksa*,
No. 11 Civ. 6634 (NRB), 2012 U.S. Dist. LEXIS 127825 (S.D.N.Y. Sep. 4, 2012) ......... 15, 26

*Devi v. Silva*,
861 F. Supp. 2d 135 (S.D.N.Y. 2012) ......................................................... 15, 20, 26

*Doe v. Buratai*,
318 F. Supp. 3d 218 (D.D.C. 2018) ......................................................... 22, 24, 27

*Doe v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005) ............................................................... 9

*Does v. Obiano*,
No. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247 (S.D. Tex. Jan. 17, 2024)........................ 26

*Doğan v. Barak*,
932 F.3d 888 (9th Cir. 2019) ................................................................... 26

*El Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
No. 16 Civ. 3895 (NRB), 2017 U.S. Dist. LEXIS 136172 (S.D.N.Y. Aug. 17, 2017) ............ 23

*Fontaine v. Permanent Mission of Chile*,
No. 7 Civ. 10086 (AT), 2020 U.S. Dist. LEXIS 149673 (S.D.N.Y. Aug. 18, 2020) ..... 8, 20, 22

*Fotso v. Republic of Cameroon*,
No. 6:12-cv-1415-TC, 2013 U.S. Dist. LEXIS 83948 (D. Or. May 16, 2013) ....................... 24

*Georges v. UN*,
834 F.3d 88 (2d Cir. 2016) ............................................................... passim

*Georges v. UN*,
84 F. Supp. 3d 246 (S.D.N.Y. 2015) ............................................................... 8, 9

*In re Hunter v. UN*,
800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) ............................................................... 11

*In re Papandreou*,
139 F.3d 247 (D.C. Cir. 1998) ............................................................... 8

*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019)............................................................... 17, 18

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ..................................................................................... 23

*Laventure v. UN*,
    279 F. Supp. 3d 394 (S.D.N.Y. 2017) ............................................... passim

*Laventure v. UN*,
    746 F. App'x 80 (2d Cir. 2018) ................................................................ 14, 16

*Lempert v. Rice*,
    956 F. Supp. 2d 17 (D.D.C. 2013) ................................................................ 11

*Library of Congress v. Shaw*,
    478 U.S. 310 (1986) ..................................................................................... 15

*Manoharan v. Rajapaksa*,
    711 F.3d 178 (D.C. Cir. 2013) ..................................................................... 26

*Matar v. Dichter*,
    500 F. Supp. 3d 284 (S.D.N.Y. 2007) ........................................................... 9

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009) ................................................ 15, 20, 21, 26

*Mazengo v. Mzengi*,
    542 F. Supp. 2d 96 (D.D.C. 2008) ............................................................... 29

*McGehee v. Albright*,
    210 F. Supp. 2d 210 (S.D.N.Y. 1999) .......................................................... 22

*Mohammadi v. Islamic Republic of Iran*,
    947 F. Supp. 2d 48 (D.D.C. 2013) ............................................................... 24

*Moore v. United Kingdom*,
    384 F.3d 1079 (9th Cir. 2004) ..................................................................... 18

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ....................................................................................... 19

*Pascarella v. Sandals Resort Int'l, Ltd.*,
    No. 19 Civ. 2543 (AT), 2020 U.S. Dist. LEXIS 37879 (S.D.N.Y. Mar. 4, 2020) .................. 23

*Process & Indus. Devs. v. Federal Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ....................................................................... 8

*Rodriguez v. Pan Am. Health Org.*,
  502 F. Supp. 3d 200 (D.D.C. 2020) ........................................................................ 11

*Rosenberg v. Pasha*,
  577 F. App'x 22 (2d Cir. 2014) ................................................................. 7, 15, 26

*Sadikoğlu v. UN Dev. Programme*,
  No. 11 Civ. 0294 (PKC), 2011 U.S. Dist. LEXIS 120205
  (S.D.N.Y. Oct. 14, 2011) .......................................................................... 9, 11, 18

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ................................................................................................ 23

*Smith v. Socialist People's Libyan Arab Jamahiriya*,
  101 F.3d 239 (2d Cir. 1996) ...................................................................... 15, 18, 26

*Sumitomo Shoji Am., Inc. v. Avagliano*,
  457 U.S. 176 (1982) .......................................................................................... 11, 14

*United States v. Bahel*,
  662 F.3d 610 (2d. Cir. 2011) .................................................................................. 25

*United States v. Chalmers*,
  No. S5 05 Cr. 59 (DC), 2007 U.S. Dist. LEXIS 13232 (S.D.N.Y. Feb. 26, 2007) ................. 15

*van Aggelen v. UN*,
  311 F. App'x 407 (2d Cir. 2009) ............................................................................ 22

*van Aggelen v. UN*,
  No. 06 Civ. 8240 (LBS), 2006 U.S. Dist. LEXIS 95908 (S.D.N.Y. Apr. 11, 2006) ............... 9

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983) .................................................................................................. 9

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016) ................................................................................... 29

*World Wide Minerals, Ltd v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ............................................................................. 15

*Ye v. Zemin*,
  383 F.3d 620 (7th Cir. 2004) .................................................................................. 26

*Yousuf v. Samantar*,
  699 F.3d 763 (4th Cir. 2012) ...................................................................... 15, 26, 27

**Statutes**

22 U.S.C. § 254d ............................................................................................. 26

22 U.S.C. § 288 ........................................................................................ passim

28 U.S.C. § 1604 ............................................................................................ 22

28 U.S.C. § 1605 ............................................................................................ 23

**Treaties**

Convention on the Privileges and Immunities of the United Nations,
    Feb. 13, 1946, 21 U.S.T. 1422 ............................................................. passim

UN Charter,
    59 Stat. 1031 ...................................................................................... passim

Vienna Convention on Diplomatic Relations,
    Apr. 18, 1961, 23 U.S.T. 3227 ................................................ 1, 24, 26, 37

**Executive Orders**

Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946) ......................... 21

**UN Documents**

Final Report for UN Secretary-General,
    Independent Review of Mechanisms and Procedures to Ensure Adherence
    by UNRWA to the Humanitarian Principle of Neutrality (Apr. 20, 2024) ............ 33

G.A. Res. 1018 (XI) (Feb. 28, 1957) ........................................................... 15

G.A. Res. 1191 (XII) (Dec. 12, 1957) .......................................................... 15

G.A. Res. 1315 (XIII) (Dec. 12, 1958) ......................................................... 14

G.A. Res. 1456 (XIV) (Dec. 9, 1959) ........................................................... 15

G.A. Res. 513 (VI) (Jan. 26, 1952) .............................................................. 14

G.A. Res. 63/93 (Dec. 5, 2008) .................................................................... 15

G.A. Res. 76(I) (Dec. 7, 1946) ..................................................................... 33

G.A. Res. 78/73 (Dec. 11, 2023)............................................................................ 15, 16

G.A. Res. 78/78 (Dec. 11, 2023)............................................................................ 16

G.A. Res. ES-10/25 (Dec. 11, 2024)....................................................................... 15, 16

Recommendations Presented by the Secretary-General,
   UN Doc. A/116 (Oct. 16, 1946)........................................................................ 33

S.C. Res. 1373 (Sept. 28, 2001)............................................................................. 19

Secretary-General's Bulletin,
   Organization of the United Nations Relief and Works Agency for Palestine Refugees
   in the Near East, UN Doc. ST/SGB/2000/6 (Feb. 17, 2000)................................... 14

UN Secretariat, *Memorandum to the Legal Adviser,*
   *United Nations Relief and Works Agency for Palestine Refugees in the Near East,*
   1984 UN Jurid. Y.B. 157, UN Doc. ST/LEG/SER.C/22 ........................................... 15

UN Secretary-General, *Staff Regulations and Staff Rules, including provisional Staff Rules,*
   *of the United Nations,* UN Doc. ST/SGB/2023/1/Rev.1 (Jan. 1, 2023) ..................... 24

United Nations, Repertory of Practice of United Nations Organs, Vol. 1 (1945-1954).............. 14

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................... 1, 7

**Other Authorities**

Eileen Denza, *Diplomatic Law: Commentary on the VCDR* (4th ed. 2016) .............................. 25

Restatement (Third) of Agency § 7.01 (Am. L. Inst. 2006) ........................................... 29

Defendant United Nations Relief and Works Agency for Palestine Refugees in the Near East ("UNRWA") and Defendants Philippe Lazzarini, Pierre Krähenbühl, Filippo Grandi, Leni Stenseth, Sandra Mitchell, Margot Ellis, and Greta Gunnarsdottir (collectively, the "Individual Defendants") submit this memorandum of law in support of their Motion to Dismiss for lack of subject matter jurisdiction, personal jurisdiction and improper service of process pursuant to Federal Rule of Civil Procedure ("Federal Rules") 12(b)(1), (2), (4) and (5).

## PRELIMINARY STATEMENT

Plaintiffs are non-U.S. citizens who claim to be victims of the terror attack perpetrated by Hamas in Israel on October 7, 2023. But Hamas is not named as a defendant in this case. Nor is any person who planned or carried out the October 7 attack. Instead, Plaintiffs seek to hold the United Nations ("UN") and its officials liable for that attack. The Court need not waste time on the merits of this absurd case. This case must be dismissed on threshold immunity grounds.

UNRWA and its officials are entitled to immunity under the Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1422 ("CPIUN"), and the International Organizations Immunities Act, 22 U.S.C. § 288 *et seq*. ("IOIA"). UNRWA is entitled to absolute immunity under both the CPIUN and the IOIA. The Individual Defendants are entitled to immunity under the CPIUN and the IOIA for acts undertaken in their official capacity. Defendants Lazzarini and Grandi are further protected by diplomatic immunity under the CPIUN and the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227 ("VCDR"), because they currently hold the rank of Under-Secretary-General of the UN. As the U.S. Government has already explained, the UN has not waived immunity and, instead, has expressly asserted immunity on behalf of all Defendants. Where, as here, a defendant is entitled to immunity, courts must dismiss the action for lack of subject matter jurisdiction.

Plaintiffs argue that UNRWA is not really part of the UN and is therefore not entitled to immunity. However, both the U.S. Government and the UN agree that UNRWA, as a subsidiary organ of the UN established by the UN General Assembly, is entitled to immunity under the CPIUN and the IOIA. Courts in the U.S. must defer to this agreed-upon interpretation of the CPIUN absent extraordinarily strong contrary evidence. Plaintiffs offer nothing to support their untenable position. Indeed, courts have consistently held that subsidiary organs of the UN, such as UNRWA, are entitled to immunity under the CPIUN. Furthermore, there are numerous UN General Assembly Resolutions and other authorities expressly recognizing that UNRWA is entitled to immunity under the CPIUN.

Plaintiffs similarly argue that the Individual Defendants may not, in fact, be entitled to immunity as current and former UN officials. That argument is directly refuted by the submissions of both the U.S. Government and the UN, which expressly state that the Individual Defendants qualify for official acts immunity under the CPIUN and the IOIA. Those views are entitled to substantial weight. Plaintiffs offer nothing to rebut them.

Plaintiffs do not seriously dispute that the Individual Defendants are alleged to have acted in their official capacity. There are no allegations concerning the Individual Defendants' private acts. Rather, the few allegations concerning the Individual Defendants all relate to their official duties at UNRWA. The Individual Defendants are immune from suit with respect to such official acts as there has been no express waiver of immunity by the Secretary General.

Finally, Plaintiffs' primary argument for abrogating Defendants' immunity is to ask this Court to create an exception to immunity for violations of *jus cogens* norms. But that argument – which finds no support in the text of the CPIUN, IOIA or VCDR – is precluded by binding Second Circuit precedent. Indeed, the Second Circuit has repeatedly rejected the argument that

- 2 -

defendants should not be accorded immunity for violations of *jus cogens* norms. The Second Circuit's decisions are in accord with the great weight of authority in other circuits. The only case Plaintiffs cite in support of their proposed *jus cogens* exception is an outlier decision of the Fourth Circuit that has been considered and rejected by the Second Circuit and other courts.

## **BACKGROUND**

### A.    **Background of UNRWA and the Individual Defendants**

UNRWA was established in 1949 by the UN General Assembly as a subsidiary organ of the UN. Compl. ¶ 507; Dkt. No. 38 at 2. UNRWA provides humanitarian relief and education, healthcare, and other social services to Palestinians located in Gaza, the West Bank, Jordan, Lebanon, and Syria. Compl. ¶ 540. Plaintiffs allege that UNRWA receives "virtually all" of its funding from UN Member States, including the United States. *Id.* ¶¶ 618, 637.

Defendant Philippe Lazzarini is a citizen of Switzerland who has served as Commissioner General of UNRWA since March 2020. Compl. ¶ 508. Commissioner General is the most senior position at UNRWA. *Id.* Mr. Lazzarini currently holds the rank of Under-Secretary-General of the United Nations. Dkt. No. 17 at 6; Dkt. No. 17-1 at 3. Defendant Filippo Grandi is a citizen of Italy and served as Commissioner General of UNRWA from 2010 to 2014. Compl. ¶ 510. Mr. Grandi is currently the UN High Commissioner for Refugees and holds the rank of Under-Secretary-General of the United Nations. Dkt. No. 17 at 6; Dkt. No. 17-1 at 3. Defendant Pierre Krähenbühl is a citizen of Switzerland who served as Commissioner General of UNRWA from 2014 to 2019. Compl. ¶ 509.

Defendant Leni Stenseth is a citizen of Norway who served as Deputy Commissioner General of UNRWA from 2020 to 2023. *Id.* ¶ 511. Deputy Commissioner General is the second most senior position at UNRWA. *Id.* Defendant Sandra Mitchell is a U.S. citizen who served as

Deputy Commissioner General of UNRWA from 2014 to 2019.  *Id.* ¶ 512.  Defendant Margot

Ellis is a U.S. citizen who served as Deputy Commissioner General of UNRWA from 2010 to

2014.  *Id.* ¶ 513.  Defendant Greta Gunnarsdottir is a citizen of Iceland who has served as

Director of UNRWA's Representative Office in New York since 2020.  *Id.* ¶ 514.

      **B.**    **The Plaintiffs and the Allegations in the Complaint**

      Plaintiffs "are non-U.S. citizen[s]" who claim to be victims of the October 7 terror attack

perpetrated by Hamas in Israel.  Compl. ¶ 4.  The Complaint does not allege that any Defendant

was involved in planning or carrying out the October 7 attack.  Plaintiffs' theory is that UNRWA

should be held liable as one of many third parties who allegedly provided material support to

Hamas, the terrorist organization responsible for the October 7 attack.  *Id.* ¶¶ 534-35.  Plaintiffs

allege that Hamas took *de facto* political control over Gaza in 2007 and thereafter UNRWA

continued to follow its mandate by providing humanitarian relief and services in Gaza.  *Id.*

¶¶ 520-21, 530-31.  Plaintiffs do not allege a single payment by any Defendant to Hamas.

Rather, they allege that Hamas indirectly benefited from the humanitarian aid and services that

UNRWA provided in Gaza.  For example, Plaintiffs allege that Hamas benefited from the

salaries that UNRWA paid its local employees because those local employees may have used

third-party currency traders controlled by Hamas.  *Id.* ¶ 582.  Plaintiffs also allege that, in the

years prior to the October 7 attack, UNRWA was aware that Hamas's network of tunnels

extended underneath certain UNRWA-run schools and medical facilities.  *Id.* ¶¶ 545-57.

Plaintiffs further complain about textbooks used in certain UNRWA schools.  *Id.* ¶¶ 588-596 .

They also allege that UNRWA's local employees in Gaza voted in elections that were won by

candidates with supposed affiliations with Hamas.  *Id.* ¶ 587.

None of the Individual Defendants are alleged to have been involved in any way in the October 7 attack.  Nor are they alleged to have been directly involved in any of the activities that supposedly provided support to Hamas.  Rather, the Complaint contains little more than a conclusory group-pleading allegation that "[e]ach of the Individual Defendants, during their respective time in UNRWA's senior management, directed, ratified, and/or otherwise facilitated the wrongful policies and actions of UNRWA complained of herein."  Compl. ¶ 515.  The Complaint states that the Individual Defendants are only being sued with respect to actions undertaken during the time of their employment by UNRWA.  *Id.* ¶ 516.

Plaintiffs purport to have served UNRWA by delivering the pleadings to its representative office in Washington, D.C. on July 10, 2024.  Dkt. No. 14.  Plaintiffs also claim to have served Defendants Ellis and Gunnarsdottir by mail and by affixing copies of the pleadings to the front doors of their homes.  Dkt. No. 15; Dkt. No. 16.  Plaintiffs do not claim to have served the other Defendants.

**C.      Statement of Interest of the United States Government**

On June 26, 2024, the UN sent a letter to the Permanent Representative of the United States to the UN to assert immunity on behalf of Defendants in this lawsuit.  Dkt. No. 17-1.  The UN stated that UNRWA and the Individual Defendants are entitled to immunity under the CPIUN and that the UN has not waived the immunity of any of the Defendants.  *Id.* at 3.  The letter also explains that Defendants Lazzarini and Grandi hold the rank of UN Under-Secretary-General and are therefore entitled to diplomatic immunity.  *Id.*  The letter further maintains that Defendants are immune from service of process.  *Id.* at 4.  The UN reiterated its assertion of immunity in a follow-up letter dated July 17, 2024.  Dkt. No. 17-2.

On July 30, 2024, the U.S. Government filed a statement of interest and provided the Court with copies of the UN's letters. Dkt. No. 17. The U.S. Government explained that UNRWA is "a subsidiary organ of the United Nations" entitled to immunity under the CPIUN. *Id.* at 4. It further explained that the CPIUN accords UNRWA absolute immunity from the jurisdiction of U.S. courts absent an express waiver of immunity by the UN. *Id.* The U.S. Government confirmed that the UN has not waived immunity and, instead, has expressly asserted immunity on behalf of all Defendants. *Id.* at 5. The U.S. Government further asserted that Defendants Lazzarini and Grandi are entitled to diplomatic immunity. *Id.* at 6. The U.S. Government further asserted that each of the Individual Defendants are current or former UN officials entitled to immunity for their official acts under the CPIUN and the IOIA. *Id.* at 7.

On September 13, 2024, Plaintiffs filed an opposition brief. Dkt. No. 25.

On October 18, 2024, the U.S. Government submitted a response to the Plaintiffs' opposition brief. Dkt. No. 38. The U.S. Government reiterated that UNRWA was entitled to immunity under the CPIUN as a subsidiary organ of the UN. *Id.* at 1-4. The U.S. Government also explained that the UN was designated as an international organization under the IOIA and that designation covered subsidiary organs of the UN, such as UNRWA. *Id.* at 5. The U.S. Government explained that UNRWA is entitled to absolute immunity under the CPIUN and the IOIA and that there is no *jus cogens* exception to immunity under the CPIUN or the IOIA. *Id.* at 5-6. It further explained that the absolute immunity conferred under the CPIUN can only be abrogated by an express waiver of immunity – not an implied waiver. *Id.* at 6, 9. The U.S. Government reiterated that Defendants Lazzarini and Grandi are entitled to diplomatic immunity under the CPIUN and VCDR and that there is no *jus cogens* exception to diplomatic immunity. *Id.* at 6-7. The U.S. Government likewise reiterated that the Individual Defendants are entitled to

immunity for their official acts under the CPIUN and the IOIA. *Id.* at 8. While declining to take a position on whether the actions alleged in the Complaint were official acts by the Individual Defendants, the U.S. Government set forth the principles that the Court should apply in making that determination. *Id.* at 8-9. First, there is no *jus cogens* exception to official act immunity under the CPIUN or the IOIA. *Id.* Second, "acts of foreign officials who are sued for exercising powers of their office are treated as acts taken in an official capacity" for which the defendant is entitled to immunity. *Id.* at 9. Finally, the U.S. Government reiterated that the UN has not waived the immunity of any Defendant and, instead, has expressly asserted immunity on behalf of all Defendants. *Id.* at 9-10.

## ARGUMENT

### I. Defendants Are Immune and Therefore This Case Must Be Dismissed For Lack Of Subject Matter Jurisdiction

Courts lack subject matter jurisdiction where, as here, a defendant is entitled to immunity. *See Georges v. UN*, 834 F.3d 88, 98 (2d Cir. 2016); *Brzak v. UN*, 551 F. Supp. 2d 313, 318-20 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 107 (2d Cir. 2010). Here, Defendants are all entitled to immunity under the UN Charter, the CPIUN, and the IOIA. This case must be dismissed under Federal Rule 12(b)(1) for lack of subject matter jurisdiction.

### A. Plaintiffs Have the Burden of Establishing Subject Matter Jurisdiction

Despite overwhelming authority to the contrary, Plaintiffs mischaracterize jurisdictional immunity as an "affirmative defense" that "must be pleaded and proved" by Defendants. Dkt. No. 25 at 7. Plaintiffs are wrong on the law. Plaintiffs have the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019); *Rosenberg v. Pasha*, 577 F. App'x 22, 23 (2d Cir. 2014). Where, as here, the UN has asserted immunity for itself, its subsidiary organs, or

its employees, courts have uniformly held that plaintiffs bear the burden of establishing subject matter jurisdiction.  *See Georges v. UN*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016); *Laventure v. UN*, 279 F. Supp. 3d 394, 398 (S.D.N.Y. 2017), *aff'd*, 746 F. App'x 80 (2d Cir. 2018); *see also Fontaine v. Permanent Mission of Chile*, No. 7 Civ. 10086 (AT), 2020 U.S. Dist. LEXIS 149673, at *6 (S.D.N.Y. Aug. 18, 2020).  Thus, as the U.S. Government explained, Plaintiffs have the burden to establish that Defendants have waived their immunity in this case.  Dkt. No. 17 at 5.

To be clear, jurisdictional immunity is not an affirmative defense on the merits.  *See De Luca v. UN.*, 841 F. Supp. 531, 533 (S.D.N.Y. 1994) ("immunity shields a defendant not only from the consequences of litigation's results, but also from the burden of defending themselves."), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (cleaned up); *see also In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.").  Unlike an affirmative defense, jurisdictional immunity is a threshold question that must be conclusively decided through an interlocutory appeal at the outset before reaching the merits of the case.  *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* 581 U.S. 170, 174, 187 (2017); *see also Process & Indus. Devs. v. Federal Republic of Nigeria.*, 962 F.3d 576, 584 (D.C. Cir. 2020) (vacating district court's order directing defendant to simultaneously brief immunity and merits defenses).[1]  Furthermore, unlike an affirmative defense, jurisdictional

---

[1] Defendants are asserting a facial challenge to jurisdiction and thus this Motion does not challenge the well-pled factual allegations of the Complaint.  Defendants do not admit any allegations and reserve the right to challenge them as a matter of jurisdiction and on the merits. Defendants reserve the right to seek dismissal on the merits.  Defendants further reserve the right to seek dismissal under the political question doctrine.  *See Matar v. Dichter,* 500 F. Supp. 3d
...Continued

immunity must be decided by a court even where the defendant does not appear. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983). Thus, courts have regularly dismissed cases against the UN and its officials on immunity grounds even when the defendants do not appear. *See Baley v. UN*, No. 97-9495, 1998 U.S. App. LEXIS 19163 (2d Cir. June 29, 1998) (table); *Laventure*, 279 F. Supp. 3d at 398, 401; *Georges*, 84 F. Supp. 3d at 248; *Sadikoğlu v. UN Dev. Programme*, No. 11 Civ. 0294 (PKC), 2011 U.S. Dist. LEXIS 120205, at *6 (S.D.N.Y. Oct. 14, 2011); *van Aggelen v. UN*, No. 06 Civ. 8240 (LBS), 2006 U.S. Dist. LEXIS 95908, at *6 (S.D.N.Y. Apr. 11, 2006), *aff'd*, 311 F. App'x 407 (2d Cir. 2009); *Bisson v. UN*, No. 06 Civ. 6352 (PAC) (AJP), 2007 U.S. Dist. LEXIS 54334, at *46 n.24 (S.D.N.Y. July 27, 2007).

### B.    The Claims Against UNRWA Must Be Dismissed for Lack of Subject Matter Jurisdiction Because UNRWA Is Immune from Suit

UNRWA is entitled to absolute immunity from the jurisdiction of U.S. courts, and therefore this case must be dismissed for lack of subject matter jurisdiction.

### 1.    UNRWA Is Entitled to Absolute Immunity under the CPIUN

Article 105(1) of the UN Charter established the UN's immunities by providing that the UN "shall enjoy in the territory of its Members such privileges and immunities as are necessary for the fulfilment of its purposes." UN Charter art. 105, ¶ 1. Section 2 of the CPIUN states that the United Nations "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." CPIUN, art. II, § 2. Section 2 of the

---

284, 295 (S.D.N.Y. 2007), *aff'd*, 563 F.3d 9 (2d. Cir. 2009) (political question doctrine applied because "the Israeli policy criticized in the Complaint involves the response to terrorism in a uniquely volatile region"); *Doe v. State of Israel*, 400 F. Supp. 2d 86, 111-12 (D.D.C. 2005) ("It is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict").

CPIUN confers absolute immunity on the UN.  *Brzak v. UN*, 597 F.3d 107, 111 (2d Cir. 2010).  The United States ratified the CPIUN, and it is binding law in U.S. courts.  *Id.*

Here, there has been no express waiver of UNRWA's immunity.  As the U.S. Government has explained, the UN has not expressly waived immunity but rather has consistently asserted that UNRWA is immune from suit in this case.  Dkt. No. 17 at 5; Dkt. No. 17-1 at 3; Dkt. No. 17-2 at 2.  Because the UN has not waived UNRWA's immunity, this case must be dismissed.

Unable to satisfy their burden of establishing an express waiver of UNRWA's immunity, Plaintiffs ask this Court to invent new limitations and exceptions to the UN's immunity found nowhere in the CPIUN.  However, Plaintiffs' arguments are contrary to binding law, and adopting Plaintiffs' positions would constitute an impermissible amendment of the plain language of Section 2 of the CPIUN, which clearly and unconditionally grants immunity to the UN absent an express waiver.  *See Georges*, 834 F.3d at 92-94.

**First**, Plaintiffs argue that the CPIUN only accords immunity to the UN's six "principal organs" and not subsidiary organs, such as UNRWA.  Dkt. No. 25 at 2, 11-12.[2]  However, courts have routinely dismissed cases against subsidiary organs of the UN – such as the UN Development Programme ("UNDP"), UN Children's Fund ("UNICEF"), the UN Stabilization Mission in Haiti ("MINUSTAH"), and the World Food Programme ("WFP") – on immunity grounds under the CPIUN.  S*ee Georges,* 834 F.3d at 90 (MINUSTAH and officials immune); *Laventure*, 279 F. Supp. 3d at 400 ("As a UN subsidiary, MINUSTAH enjoys the same

---

[2] Article 7 of the UN Charter defines the UN's "principal organs" as the "General Assembly, a Security Council, an Economic and Social Council, a Trusteeship Council, an International Court of Justice, and a Secretariat."  UN Charter art. 7, ¶ 1.

privileges and immunities as the UN under the CPIUN"); *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013), *aff'd*, 618 F. App'x 3 (D.C. Cir. 2015) ("as a subsidiary program of the UN that reports directly to the General Assembly, the UNDP also enjoys immunity under the Convention"); *Sadikoğlu*, 2011 U.S. Dist. LEXIS 120205, at *9 (holding that "UNDP – as a subsidiary program of the UN" is immune from suit under the CPIUN); *Bisson,* 2007 Dist. LEXIS 54334, at *18, 25 (holding that WFP as a "subsidiary organ" of the UN is immune under the CPIUN); *In re Hunter v. UN*, 800 N.Y.S.2d 347, 347 (N.Y. Sup. Ct. 2004) (UNICEF immune).  Plaintiffs do not cite a single case in which a court held that UNRWA or any other subsidiary organ of the UN was not entitled to immunity under the CPIUN.[3]

Plaintiffs' position is also contrary to the positions of both the U.S. Government and the UN.  "When the parties to a treaty both agree as to the meaning of a treaty provision, and that interpretation follows from the clear treaty language, [courts] must, absent extraordinarily strong contrary evidence, defer to that interpretation."  *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982).  In addition, the Second Circuit has repeatedly held that courts must give "great weight" to the U.S. Government's views on the interpretation and application of the CPIUN.  *See Georges*, 834 F.3d at 93; *Brzak*, 597 F.3d at 111.  Here, both the U.S. Government and the UN agree that Section 2 of the CPIUN confers immunity on subsidiary organs of the UN and that UNRWA is a subsidiary organ.  Dkt. No. 17-1 at 1-3; Dkt. No. 38 at 1-4.  Plaintiffs have not offered any contrary evidence – much less the "extraordinarily strong contrary evidence" required by *Sumitomo* to rebut the views of the UN and the U.S. Government.

---

[3] Plaintiffs' reliance on *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200 (D.D.C. 2020), is misplaced.  The defendant in that case was not a subsidiary organ of the UN and did not assert immunity under the CPIUN.

Plaintiffs' assertion that UNRWA is not a subsidiary organ is refuted by the legal structure governing the UN and UNRWA.  Article 7 of the UN Charter recognizes that the UN encompasses both "principal organs" and "subsidiary organs," and Article 22 states that "[t]he General Assembly may establish such subsidiary organs as it deems necessary for the performance of its functions."  UN Charter arts. 7, 22.  As the U.S. Government has explained, the General Assembly exercised its powers under Article 22 to establish UNRWA as a subsidiary organ.  Dkt. No. 38 at 2.  UNRWA's status as a subsidiary organ is well recognized.  *See* G.A. Res. 513 (VI) , ¶ 3 (Jan. 26, 1952) (referring to UNRWA as a "subsidiary organ established by the General Assembly"); G.A. Res. 1315 (XIII), at 9 (Dec. 12, 1958) ("Recalling that the Agency is a subsidiary organ of the United Nations").  The UN's Repertory of Practice of United Nations Organs, a legal publication mandated by the General Assembly, has also classified UNRWA as a subsidiary organ.  *See* United Nations, Repertory of Practice of United Nations Organs, Vol. 1, at Art. 7, ¶ 16 n.17 (1945-1954);[4] *id.* at Art. 22, ¶ 16;[5] *see also* Secretary-General's Bulletin, Organization of the United Nations Relief and Works Agency for Palestine Refugees in the Near East, UN Doc. ST/SGB/2000/6 (Feb. 17, 2000) ("The United Nations Relief and Works Agency for Palestine Refugees in the Near East (UNRWA) was established as a subsidiary organ of the United Nations under General Assembly resolution 302 (IV) of 8 December 1949, in accordance with Article 22 of the Charter of the United Nations.").

Moreover, several resolutions of the General Assembly expressly confirm that UNRWA, "as a subsidiary organ of the United Nations, enjoys the benefits of the [CPIUN]."  G.A. Res. 1456 (XIV), at 8 (Dec. 9, 1959); *see also* G.A. Res. 1018 (XI), at 6-7 (Feb. 28, 1957) (applying

---

[4] Available at https://legal.un.org/repertory/art7/english/rep_orig_vol1_art7.pdf.
[5] Available at https://legal.un.org/repertory/art22/english/rep_orig_vol1_art22.pdf.

terms of the UN Charter and the CPIUN to UNRWA's mandate); G.A. Res. 1191 (XII), at 8-9 (Dec. 12, 1957) (same); G.A. Res. 63/93, ¶ 12 (Dec. 5, 2008) (recognizing that UNRWA is entitled to immunity under the UN Charter and the CPIUN); G.A. Res. 78/73, ¶ 39 (Dec. 11, 2023); G.A. Res. ES-10/25, at ¶¶ 2, 10, 12, 14 (Dec. 11, 2024).  Legal opinions of the UN Office of Legal Affairs further confirm that UNRWA is entitled to immunity under the CPIUN.  *See, e.g.*, UN Secretariat, *Memorandum to the Legal Adviser, United Nations Relief and Works Agency for Palestine Refugees in the Near East*, 1984 UN Jurid. Y.B. 157, 188-89, UN Doc. ST/LEG/SER.C/22.

Plaintiffs assert that "more recent General Assembly resolutions" do not explicitly state that UNRWA is a subsidiary organ.  Dkt. No. 42 at 7 n.6.  Plaintiffs curiously cite G.A. Res. 78/78 (Dec. 11, 2023), which concerns "Israeli settlements in the Occupied Palestinian Territory" and does not mention UNRWA.  Perhaps Plaintiffs meant to cite G.A. Res. 78/73 (Dec. 11, 2023), which does concern UNRWA.  However, that Resolution – as well as the General Assembly's most recent Resolution on UNRWA – repeatedly recognizes that UNRWA is entitled to immunity under the UN Charter and the CPIUN.  *See* G.A. Res. 78/73, at 3, ¶ 39 (Dec. 11, 2023); *see also* G.A. Res. ES-10/25, at ¶¶ 2, 10, 12, 14 (Dec. 11, 2024).[6]

Plaintiffs suggest that UNRWA should be treated as a "specialized agency" and not a subsidiary organ.  Plaintiffs offer no support for that position.  Nor could they.  Article 57 of the UN Charter defines "specialized agencies" as entities "established by intergovernmental agreement" and that are "brought into relationship with the United Nations in accordance with

---

[6] The other supposedly "recent" resolutions cited by Plaintiffs are from 1965, 1980 and 1995 and extend UNRWA's mandate without explicitly stating that UNRWA is a subsidiary organ.  Three cherry-picked resolutions that are merely silent as to UNRWA's status as a subsidiary organ of the UN are probative of nothing.

the provisions of Article 63." UN Charter art. 57, ¶ 1. But UNRWA was not established pursuant to any treaty, nor is it an organization separate from the UN that must be brought into a relationship with the UN. UNRWA was established by the General Assembly under Article 22 of the UN Charter, which provides for the establishment of subsidiary organs. *See supra* at 12.

**Second**, Plaintiffs argue that this Court should find an implied waiver under Section 2 of the CPIUN in cases involving a *jus cogens* violation. However, the text of the treaty does not provide an implied waiver exception to UNRWA's absolute immunity. Section 2 of the CPIUN only permits the abrogation of UNRWA's absolute immunity where the UN has "expressly waived its immunity." CPIUN, art. II, § 2 (emphasis added). The Second Circuit has held that the UN's waiver must be express. *See Laventure v. UN*, 746 F. App'x 80, 82 (2d Cir. 2018); *Brzak*, 597 F.3d at 112.[7] As the U.S. Government explained in this case, the CPIUN "provides that waiver of UN immunity must be express and may not be implied" and that there is no *jus cogens* exception to the immunity afforded to the UN under the CPIUN. Dkt. No. 38 at 5-6, 9. Again, the U.S. Government's views are entitled to "great weight." *See Georges*, 834 F.3d at 93; *Brzak*, 597 F.3d at 111. Plaintiffs have not offered any contrary evidence – much less the "extraordinarily strong contrary evidence" required by *Sumitomo* to rebut the interpretations of the UN and the U.S. Government. *See* 457 U.S. at 185.

Plaintiffs' request for a judicially created *jus cogens* exception to immunity is inconsistent with the binding decisions of the Second Circuit holding that Section 2 of the

---

[7] In construing Section 2 of the CPIUN, the Second Circuit has applied the principle *expressio unius est exclusio alterius* – *i.e.*, express mention of one thing excludes all others. *See Georges*, 834 F.3d at 93-94. Applying that principle, the explicit reference to an "express waiver" should be construed as precluding the inclusion of an implied waiver exception. That conclusion is supported by the Section 2 use of the mandatory expression that the UN "shall enjoy immunity" to confer absolute and unconditional immunity to the UN. *See id.*

CPIUN confers absolute immunity on the UN.  *See Georges*, 834 F.3d at 97 n.48; *Brzak*, 597
F.3d at 111.  Creating a *jus cogens* exception to the absolute immunity conferred under the
CPIUN cannot be squared with the decisions of the Second Circuit that have uniformly rejected
other attempts to create *jus cogens* exceptions to other forms of immunity.  *See Matar v. Dichter*,
563 F.3d 9, 14-15 (2d Cir. 2009) (holding that there is no *jus cogens* exception to foreign official
immunity); *Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010) (holding that there
is no *jus cogens* exception to FSIA immunity); *Smith v. Socialist People's Libyan Arab
Jamahiriya*, 101 F.3d 239, 244-45 (2d Cir. 1996) (same); *Devi v. Silva*, 861 F. Supp. 2d 135, 142
(S.D.N.Y. 2012) (holding that there is no *jus cogens* exception to diplomatic immunity under the
VCDR); *Devi v. Rajapaksa*, No. 11 Civ. 6634 (NRB), 2012 U.S. Dist. LEXIS 127825, at *10
(S.D.N.Y. Sep. 4, 2012) (holding that there is no *jus cogens* exception to head of state
immunity).[8]

    **Third**, Plaintiffs argue that Security Council Resolution 1373 (Sept. 28, 2001) constitutes
a "prospective waiver" of the UN's immunity under the CPIUN.  An express waiver must be a
"clear and unambiguous manifestation of the intent to waive."  *See United States v. Chalmers*,
No. S5 05 Cr. 59 (DC), 2007 U.S. Dist. LEXIS 13232, at *5 (S.D.N.Y. Feb. 26, 2007); *see also
World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)
("explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign' and
are not enlarged 'beyond what the language requires.'") (quoting *Library of Congress v. Shaw*,
478 U.S. 310, 318 (1986)).  As the Supreme Court has cautioned, a document "that contains no

---

[8] Plaintiffs' argument is entirely predicated on *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012).
However, as explained in more detail below, *infra* at 26, the Second Circuit has already rejected
*Yousuf*.  *See Rosenberg v. Pasha*, 577 F. App'x 22, 24 (2d Cir. 2014) (discussing *Matar*, 563
F.3d at 14-15).

mention of a waiver of immunity to suit in United States courts" cannot be construed as a waiver of immunity. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442-43 (1989). Here, Resolution 1373 does not contain any waiver of immunity. It does not mention the CPIUN or the immunity of the UN. Nor does it mention any cause of action against the UN in any jurisdiction. It certainly does not authorize a civil lawsuit against the UN in U.S. courts.

Furthermore, Section 2 of the CPIUN requires an express waiver of immunity for the "particular case" at issue. CPIUN, art. 2, § 2. Here, Resolution 1373 was issued decades prior to the events giving rise to Plaintiffs' claims and therefore cannot be construed as waiving immunity in this particular case. *See Laventure*, 279 F. Supp. 3d at 400. For example, in *Laventure*, the plaintiffs sued the UN, a subsidiary organ of the UN, MINUSTAH, and certain officials on claims arising out of a UN peacekeeping mission in Haiti in 2010. *Id.* at 396-97. The plaintiffs argued that the UN had expressly waived immunity in two reports adopted by the General Assembly in 1996 and 1997, which outlined the manner in which the UN would accept liability for damages caused by UN peacekeeping missions. *Id.* at 399. However, the district court held that these reports did not constitute a waiver of immunity in that "particular case" because the reports predated the peacekeeping mission in Haiti. *Id.* at 400. The Second Circuit affirmed, concluding that the reports fell "well short of the express waiver required under the CPIUN." *See Laventure*, 746 F. App'x at 82.

## 2.    UNRWA Is Entitled to Absolute Immunity under the IOIA

The IOIA provides immunity to designated international organizations, including the UN. It states that international organizations "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments" absent an express waiver of immunity. 22 U.S.C. § 288a(b). In 1946, President Truman designated the UN as an international

- 16 -

organization under the IOIA.  *See* Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).

Thus, as the U.S. Government explained, UNRWA, as a subsidiary organ of the UN, is entitled

to immunity under the IOIA.  *See* Dkt. No. 38 at 5 (collecting cases).  However, in 1970, the

U.S. acceded to the CPIUN.  From that point forward, UNRWA was entitled to absolute

immunity under Section 2 of the CPIUN without regard for whatever immunities may be

conferred under the IOIA.  As the Second Circuit held in *Brzak*, "whatever immunities are

possessed by other international organizations [under the IOIA], the CPIUN unequivocally

grants the United Nations absolute immunity without exception."  *Brzak*, 597 F.3d at 112.

The Supreme Court's decision in *Jam v. Int'l Fin. Corp.*, 586 U.S. 199 (2019), does not

alter the immunity analysis.  Prior to *Jam*, courts held that international organizations were

entitled to absolute immunity under the IOIA.  *See Atkinson v. Inter-American Dev. Bank*, 156

F.3d 1335, 1341 (D.C. Cir. 1998).  The rationale was that the IOIA affords international

organizations the same jurisdictional immunity as foreign states, and, when the IOIA was

enacted, the U.S. adhered to a theory of absolute foreign sovereign immunity.  *See id.*  However,

in 1976, Congress enacted the Foreign Sovereign Immunities Act ("FSIA"), which codified the

restrictive theory of foreign sovereign immunity.  Thus, the Supreme Court held in *Jam* that

Section 288a of the IOIA effectively incorporates the FSIA.  *See* 586 U.S. at 215.  Nevertheless,

the Supreme Court cautioned that:

> [an international] organization's charter can always specify a
> different level of immunity.  The charters of many international
> organizations do just that.  *See*, *e.g.*, Convention on Privileges and
> Immunities of the United Nations, Art. II, §2, Feb. 13, 1946, 21 U.
> S. T. 1422, T. I. A. S. No. 6900 ("The United Nations . . . shall enjoy
> immunity from every form of legal process except insofar as in any
> particular case it has expressly waived its immunity") . . . .

- 17 -

*Id.* at 214.  In other words, the Supreme Court expressly recognized that the absolute immunity

conferred by CPIUN would prevail over any immunity conferred by the IOIA or FSIA.

The text of the FSIA compels the same conclusion – *i.e.*, the CPIUN governs the

immunity of UNRWA.  The FSIA explicitly states that its grant of jurisdictional immunity is

"[s]ubject to existing international agreements to which the United States is a party at the time of

enactment of this Act . . . ."  28 U.S.C. § 1604.  Pursuant to this so-called "pre-existing treaty

proviso," a foreign state may be entitled to greater immunity than that granted by the FSIA.  *See*

*Moore v. United Kingdom*, 384 F.3d 1079, 1084-85 (9th Cir. 2004).  The CPIUN qualifies as a

pre-existing treaty because it entered into force in the United States before the FSIA was enacted

in 1976.  Thus, the CPIUN remains the operative source of UNRWA's immunity, and the FSIA's

exceptions to immunity do not apply.  *See Brzak*, 597 F.3d at 112; *Sadikoğlu*, 2011 U.S. Dist.

LEXIS 120205, at *12; *Boimah v. UN Gen. Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987).

In any event, Plaintiffs' arguments that the FSIA's waiver exception, 28 U.S.C.

§ 1605(a)(1), and commercial activity exception, 28 U.S.C. § 1605(a)(2), apply are frivolous.

Plaintiffs argue that the FSIA's waiver exception should be construed to abrogate immunity

where the defendant is alleged to have engaged in *jus cogens* violations.  But that argument is

foreclosed by the Second Circuit's binding decision in *Smith* that a violation of a *jus cogens*

standard does not constitute a waiver of immunity under the FSIA.  *See* 101 F.3d at 244-45.  The

FSIA's commercial activity exception would be equally inapplicable in this case.  Plaintiffs rely

on the first two clauses of the commercial activity exception, which apply only where the

plaintiff's action is "based upon" a foreign state's "commercial activity" in the United States.

*See* 28 U.S.C. § 1605(a)(2).  The phrase "based upon" refers to the "gravamen" of the plaintiff's

lawsuit – *i.e.*, the "acts that actually injured [the plaintiff]."  *OBB Personenverkehr AG v. Sachs,*

577 U.S. 27, 35-36 (2015). Here, the Complaint alleges that Plaintiffs were injured in a terror

attack in Israel – not by any commercial activity in the United States.

### C.    The Claims Against Defendants Lazzarini and Grandi Must Be Dismissed Because They Are Entitled to Diplomatic Immunity

Defendants Lazzarini and Grandi, both of whom hold the rank of UN Under-Secretary-

General, are entitled to diplomatic immunity. Dkt. No. 17-1 at 3. Like the other immunities at

issue in this case, diplomatic immunity is a matter of subject matter jurisdiction. *Broidy Capital*,

944 F.3d at 443. Thus, Plaintiffs must prove that an exception to diplomatic immunity applies.

*See id*. They have failed to meet this burden.

The CPIUN provides that all senior officials serving at the level of Assistant Secretary-

General and above are entitled to diplomatic immunity. *See* CPIUN, art. V, § 19; *see also Brzak*,

597 F.3d at 113. As the U.S. Government explained, the rank of Under-Secretary-General –

which is held by both Messrs. Lazzarini and Grandi – is higher than the rank of Assistant

Secretary-General. Dkt. No. 17 at 6; *Deng v. UN*, No. 22-CV-5539 (LTS), 2022 U.S. Dist.

LEXIS 136501, at *6 (S.D.N.Y. July 29, 2022) ("Senior executives of the UN - including . . .

Under Secretaries-General . . . enjoy full diplomatic immunity").[9]

Diplomatic immunity is governed by the VCDR, which states: "A diplomatic agent shall

enjoy immunity from . . . civil and administrative jurisdiction . . . ." VCDR, art. 31(1). The

VCDR sets out three exceptions for actions relating to private immovable property, succession,

or professional or commercial activity outside of official functions. These exceptions are so

narrow that diplomatic immunity is still viewed as absolute immunity. *See Brzak*, 597 F.3d at

---

[9] *See also* UN Secretary-General, *Staff Regulations and Staff Rules, including provisional Staff Rules, of the United Nations*, at 89, UN Doc. ST/SGB/2023/1/Rev.1 (Jan. 1, 2023), https://documents.un.org/doc/undoc/gen/n23/179/72/pdf/n2317972.pdf.

113; *Fontaine*, 2020 U.S. Dist. LEXIS 149673, at *14 ("Under the [VCDR], current diplomatic envoys enjoy absolute immunity from civil and criminal process . . . .") (cleaned up).  None apply here.

Plaintiffs frivolously assert without any support that the VCDR's "professional or commercial activities" exception could apply because the alleged conduct of Messrs. Lazzarini and Grandi "was carried out in their 'professional' capacity during their respective tenures directing UNRWA."  Dkt. No. 25 at 26.  In other words, Plaintiffs contend that a diplomat is not immune with respect to actions performed in their "professional capacity" as a diplomat.  That argument is absurd and would completely eviscerate diplomatic immunity.  The Second Circuit has held that the professional or commercial activity exception applies to trade or business activity engaged in for personal profit outside of the diplomat's official role.  *See Broidy Capital*, 944 F.3d at 445.  As the U.S. Government explained, the professional or commercial activity exception "encompasses '[p]aid employment outside of the mission or provision of professional services for remuneration by a [diplomat].'"  Dkt. No. 38 at 7 (quoting Eileen Denza, *Diplomatic Law: Commentary on the VCDR* 324 (4th ed. 2016)).  Courts "must defer" to that interpretation of the VCDR.  *See 767 Third Ave. Assoc. v. Permanent Mission of Zaire*, 988 F.2d 295, 301-02 (2d Cir. 1993).

Plaintiffs also ask this Court to create a *jus cogens* exception to diplomatic immunity.  "No United States court has recognized a *jus cogens* exception to diplomatic immunity from its civil jurisdiction."  *See Devi*, 861 F. Supp. 2d at 142; *see also Matar*, 563 F.3d at 14-15.  The U.S. Government confirms that there is no *jus cogens* exception to immunity under the VCDR.  Dkt. No. 38 at 7.  Again, courts "must defer" to that interpretation of the VCDR.  *See 767 Third Ave. Assoc.*, 988 F.2d at 301-02.

Finally, Plaintiffs suggest that perhaps Messrs. Lazzarini and Grandi are not actually Under-Secretaries-General of the UN. *See* Dkt. No. 25 at 26; Dkt. No. 42 at 8-9. That is absurd. Both the UN and the U.S. Government have confirmed that Messrs. Lazzarini and Grandi are Under-Secretaries-General of the UN. Dkt. No. 17 at 6; Dkt. No. 17-1 at 3; Dkt. No. 38 at 6-7. Nothing more is required to demonstrate that they are entitled to diplomatic immunity. *See Broidy Capital*, 944 F.3d at 441, 444; *see also* 22 U.S.C. § 254d. Plaintiffs' argument is entirely predicated on the false premise that a defendant bears the burden on immunity. However, it is Plaintiffs – not Defendants – who have the burden. *See* Section I.A *supra.* Plaintiffs cannot satisfy their burden through conspiratorial speculation.

### D. The Claims Against the Individual Defendants Must Be Dismissed on Immunity Grounds under the CPIUN and the IOIA

Section 18 of the CPIUN provides that UN officials "shall be immune from legal process in respect of words spoken or written and all acts performed by them in their official capacity." CPIUN, art. V, § 18(a). Furthermore, as explained above, the UN was designated under the IOIA and that designation covers UNRWA as a subsidiary organ of the UN. *See supra* at 16-17. The IOIA provides that officers and employees of international organizations "shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees" absent a waiver by the organization. 22 U.S.C. § 288d. Both current and former officials are entitled to immunity for official acts performed during time in office. *See Laventure*, 279 F. Supp. 3d at 395, 400; *see also Matar*, 563 F.3d at 14. All of the Individual Defendants are current or former UN officials, and all allegations in the Complaint as to their conduct relate to official acts. The UN has not waived their immunity. Therefore, the claims against the Individual Defendants must be dismissed for lack of subject matter jurisdiction.

- 21 -

### 1. The Individual Defendants Are Immune in this Case Because the Complaint Alleges that They Acted in Their Official Capacity

Courts have uniformly dismissed cases against UN officials based on actions taken in the defendant's official capacity. This is true where courts have applied the CPIUN or the IOIA. *See Laventure*, 279 F. Supp. 3d at 400-01; *van Aggelen v. UN*, 311 F. App'x 407, 409 (2d Cir. 2009); *Deng*, 2022 U.S. Dist. LEXIS 136501, at *7; *D'Cruz v. Annan*, No. 05 Civ. 8918 (DC), 2005 U.S. Dist. LEXIS 35589, at *1-3, 6 (S.D.N.Y. Dec. 22, 2005), *aff'd*, 223 F. App'x 42 (2d. Cir. 2007); *McGehee v. Albright*, 210 F. Supp. 2d 210, 218 (S.D.N.Y. 1999); *De Luca,* 841 F. Supp. at 535; *see also Fontaine*, 2020 U.S. Dist. LEXIS 149673, at *17.

Official acts are those actions undertaken by officials in the scope of their official duties as opposed to private acts. *See Laventure*, 279 F. Supp. 3d at 400-01; *Doe v. Buratai*, 318 F. Supp. 3d 218, 232 (D.D.C. 2018), *aff'd*, 792 F. App'x 6 (D.C. Cir. 2019) . Here, the Individual Defendants are being sued for exercising the powers of their office. The Complaint alleges that "[e]ach of the Individual Defendants, during their respective time in UNRWA's senior management, directed, ratified, and/or otherwise facilitated the wrongful policies and actions of UNRWA complained of herein." Compl. ¶ 515. Furthermore, the Complaint does not assert any claims against the Individual Defendants for acts occurring outside their tenure at UNRWA. *Id.* ¶ 516. Nor does the Complaint allege a single private act by any Individual Defendant.

The Complaint is exceptionally thin on allegations concerning conduct by the Individual Defendants. There are no allegations that Mr. Grandi did anything. Mr. Lazzarini allegedly attended UN conferences, testified as an UNRWA official at a European Parliament hearing, made statements to the press regarding UNRWA, solicited funding from UN Member States, and directed the duties of UNRWA employees. Compl. ¶¶ 574, 602, 619(h), 626, 630, 639. Mr. Krähenbühl allegedly attended UN conferences and solicited funding from UN Member States.

*Id.* ¶¶ 619(e)-(f), 622-25.  Ms. Stenseth allegedly attended UN conferences, solicited funding from UN Member States, and directed the duties of UNRWA employees.  *Id.* ¶¶ 619(g), 630. Ms. Mitchell allegedly attended a single UN Pledging Conference in 2015.  *Id.* ¶ 619(d).  Ms. Ellis allegedly attended UN Pledging Conferences between 2011 and 2015.  *Id.* ¶ 619(a).  Ms. Gunnarsdottir is allegedly a senior member of UNRWA's policy-making team and supervises UNRWA staff in their fundraising, accounting and disbursement functions.  *Id.* ¶¶ 627, 630.  All of these alleged acts are clearly within the scope of the Individual Defendants' duties as UNRWA officials.  None are private acts.

Plaintiffs are essentially proposing a "respondeat inferior" theory positing that UNRWA's officials should be held personally liable for the actions of the organization as a whole.  Of course, "there is no principle of 'respondeat inferior.'"  *Pascarella v. Sandals Resort Int'l, Ltd.*, No. 19 Civ. 2543 (AT), 2020 U.S. Dist. LEXIS 37879, at *17 (S.D.N.Y. Mar. 4, 2020) (J. Torres) (quoting Restatement (Third) of Agency § 7.01 cmt. d (Am. L. Inst. 2006)). But the fact that the claims against the Individual Defendants are really claims against UNRWA in disguise further demonstrates that the Individual Defendants are entitled to immunity.  *See El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16 Civ. 3895 (NRB), 2017 U.S. Dist. LEXIS 136172, at *30 (S.D.N.Y. Aug. 17, 2017), *aff'd*, 735 F. App'x 30 (2d. Cir. 2018). Indeed, as the Supreme Court explained in *Yousuf*:

> [I]t may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest.  "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."

*Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) (cleaned up) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 76 (D.D.C.

2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015). Here, the Individual Defendants are not the real parties in interest.

Finally, the fact that the UN has asserted immunity of the Individual Defendants and sought a statement of immunity from the U.S. Government demonstrates that the Individual Defendants were acting in their official capacity. Indeed, in determining whether an official acted in its official capacity for immunity purposes, courts consider whether the official's principal has sought a statement of immunity or otherwise ratified the acts at issue. *See Buratai*, 318 F. Supp. 3d at 232-33; *see also Fotso v. Republic of Cameroon*, No. 6:12-cv-1415-TC, 2013 U.S. Dist. LEXIS 83948, at *17-18 (D. Or. May 16, 2013).

### 2.    The UN Has Not Waived Immunity of the Individual Defendants

The CPIUN grants the UN Secretary-General the *exclusive* authority to waive the immunity of UN officials. CPIUN, art. V, § 20. Here, the Secretary-General has not waived the immunity of the Individual Defendants. To the contrary, the Secretary-General has asserted that the Individual Defendants are immune because the claims against them relate to actions performed in their official capacity, and the U.S. Government has conveyed his determination to the Court. Dkt. No. 17 at 7-8; Dkt. No. 17-1 at 3-4. The Secretary-General's views concerning whether UN officials acted within the scope of their official functions should be accorded a high degree of deference. *See Brzak*, 551 F. Supp. 2d at 317.

Despite the fact that the UN has explicitly asserted that the Individual Defendants are immune in this case, Plaintiffs contend that a press release issued by a spokesperson for the Secretary-General constitutes a waiver. The press release states that Mr. Lazzarini briefed the Secretary-General on allegations implicating UNRWA local staff members in the October 7 attack. Dkt. No. 24-17. It further states that the Secretary-General instructed Mr. Lazzarini to

investigate those allegations and to ensure that "any UNRWA employee shown to have participated or abetted in what transpired on 7 October, or in any other criminal activity, be terminated immediately and referred for potential criminal prosecution." *Id.* This press release cannot be interpreted as a waiver of the immunity of the Individual Defendants. As explained above, any supposed waiver of immunity must be narrowly construed, and courts will not find a waiver in a document that does not even mention immunity. *See supra* at 15-16. The press release does not refer to any of the Individual Defendants, their immunity, or civil liability. Nothing in that press release even suggests a waiver of immunity from a civil action in a U.S. court.

Plaintiffs also rely on an UNRWA press release in which Mr. Lazzarini states, "Any UNRWA employee who was involved in acts of terror will be held accountable, including through criminal prosecution." Dkt. No. 24-16. Again, this press release does not constitute a waiver as it does not mention the Individual Defendants, their immunity, or civil liability in a U.S. court. In any event, this press release cannot constitute a waiver because only the Secretary-General may waive the Individual Defendants' immunity. CPIUN, art. V, § 20.

Plaintiffs further argue that this Court should find an implied waiver of immunity in cases in which the defendant is alleged to have violated a *jus cogens* norm. As explained above, any waiver of immunity under the CPIUN must be express, not implied. *See supra* at 14.[10]

---

[10] Plaintiffs rely on *United States v. Bahel*, 662 F.3d 610 (2d. Cir. 2011), for the proposition that a court can imply a waiver of immunity under the CPIUN. As the U.S. Government explained, that is not a fair reading of *Bahel*. Dkt. No. 38 at 10 n.8. In *Bahel*, the UN uncovered evidence of corruption by a UN official and referred the matter to the Justice Department. 662 F.3d at 620. The UN then sent a letter to the Justice Department stating that the Secretary-General had waived the defendant's immunity from prosecution under Section 20 of the CPIUN. *Id.* at 621. The Second Circuit held that the Secretary-General "effectively and expressly waived Bahel's immunity." *Id.* at 626.

Moreover, as the U.S. Government has explained, there is no *jus cogens* exception to immunity under the CPIUN or the IOIA.  Dkt. No. 38 at 6.  Plaintiffs' argument is foreclosed by Second Circuit precedent.  *See Rosenberg*, 577 F. App'x at 24; *Matar*, 563 F.3d at 14-15.

Plaintiffs' argument is entirely predicated on *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012), which held that foreign officials cannot claim common law immunity for *jus cogens* violations.  But the Second Circuit has already rejected *Yousuf* as inconsistent with binding precedent.  *See Rosenberg*, 577 F. App'x at 24 (citing *Matar*, 563 F.3d at 14-15).  The Second Circuit's well-reasoned decisions in *Matar* and *Rosenberg* are consistent with other Second Circuit cases that have uniformly refused to recognize a *jus cogens* exception to other forms of immunity.  *See Carpenter*, 610 F.3d at 779; *Smith*, 101 F.3d at 244; *see also Devi*, 861 F. Supp. 2d at 142; *Rajapaksa*, 2012 U.S. Dist. LEXIS 127825, at *10.  *Matar* and *Rosenberg* are aligned with the views of the U.S. Government.  Dkt. No. 38 at 8.  And other courts have consistently rejected *Yousuf* as an outlier in favor of the Second Circuit's decision in *Matar*.  *See Doğan v. Barak*, 932 F.3d 888, 896 (9th Cir. 2019); *see also Manoharan v. Rajapaksa*, 711 F.3d 178, 180 (D.C. Cir. 2013) (holding head of state immunity bars claims under the Torture Victim Protections Act); *Belhas v. Ya'Alon*, 515 F.3d 1279, 1288 (D.C. Cir. 2008) (Israeli general immune from claims of *jus cogens* violations); *Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004) (holding no *jus cogens* exception to head of state immunity); *Does v. Obiano*, No. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247, at *11  (S.D. Tex. Jan. 17, 2024) (describing *Yousuf* as an "outlier" and siding with the "majority of courts that have refused to recognize a *jus cogens*

exception"); *Buratai*, 318 F. Supp. 3d at 236 ("[T]he Court—following courts in this circuit and other circuits—declines to adopt and apply a *jus cogens* exception").[11]

Ultimately, Plaintiffs' argument is a red herring as there are no allegations that any Individual Defendant violated *jus cogens* norms.  At most, the Complaint alleges that the Individual Defendants attended UN conferences and solicited funding from UN Member States.

### 3.    The Individual Defendants Are Current and Former UN Officials

Plaintiffs argue that the Individual Defendants might not be UN officials.  Dkt. No. 25 at 20, 26.  However, the U.S. Government and the UN both confirm that the Individual Defendants are current or former UN officials.  Dkt. No. 17 at 7-8; Dkt. No. 17-2 at 3; Dkt. No. 38 at 9. With respect to the question of whether the Individual Defendants are entitled to official acts immunity, the views of the UN and the U.S. Government are entitled to significant deference.

Plaintiffs nevertheless argue that the Individual Defendants may not be entitled to immunity under the CPIUN because the UN might not have specified the "categories of officials" entitled to immunity or made the names of such officials known to UN Member States. That argument is frivolous.  Section 17 of the CPIUN grants the UN Secretary-General the discretion to designate the "categories of officials" entitled to immunity.  CPIUN, art. V, § 17. In 1946, the Secretary-General designated "all members of the staff of the United Nations, with the exception of those who are recruited locally <u>and</u> are assigned to hourly rates." Recommendations Presented by the Secretary-General, at 2, UN Doc. A/116 (Oct. 16, 1946)

---

[11] In *Yousuf*, the U.S. Government filed a statement of interest asserting that the defendant was <u>not</u> entitled to immunity, and no government had asserted immunity on behalf of the defendant. *See* 699 F.3d at 767.  By contrast, here, the U.S. Government has stated that the Individual Defendants are entitled to invoke immunity under the CPIUN and the IOIA, and the UN has asserted immunity on their behalf.

(emphasis added). The Secretary-General's proposal was communicated to the General

Assembly, which adopted it in a resolution. G.A. Res. 76(I), at 139 (Dec. 7, 1946). Resolutions

of the General Assembly are communicated to UN Member States. Thus, the category of

officials designated by the Secretary-General was communicated to the Member States. Indeed,

the U.S. Government cites G.A. Res. 76(I) to assert that the Individual Defendants are UN

officials. Dkt. No. 17 at 7 n.3.

      In addition, the Individual Defendants were made known to the U.S. Government and

other UN Member States. For starters, the UN sent a letter to the U.S. Permanent Representative

to the UN asserting that each of the Individual Defendants are UN officials entitled to immunity

under the CPIUN. Dkt. No. 17-1 at 3. Furthermore, the Complaint incorporates by reference a

report prepared in connection with an independent inquiry led by former French Foreign

Minister Catherine Colonna. Compl. ¶ 641. That report states that UNRWA shares lists with the

names of its staff with the U.S. and other UN Member States on an annual basis. *See* Final

Report for UN Secretary-General, Independent Review of Mechanisms and Procedures to Ensure

Adherence by UNRWA to the Humanitarian Principle of Neutrality, p. 21 (Apr. 20, 2024),

https://www.un.org/unispal/document/report-independent-review-group-on-unrwa-22april2024/.

It further states that UNRWA's sharing of these lists "is a regular practice that follows the

Convention on Immunity and Privileges" and that Israel views the sharing of the lists "as a

standard procedure for the registration of UN and diplomatic staff to ensure their privileges and

immunities." *Id.* at 21-22.

      In any event, while Section 17 states that the "names of the officials included in these

categories shall from time to time be made known to the Governments of Members," the CPIUN

does not make the immunity of such officials contingent on such disclosure. CPIUN, art. V,

§ 17.  The Second Circuit has rejected similar arguments that the immunity conferred under the CPIUN is contingent on the UN's satisfaction of other obligations under the CPIUN.  *See Georges*, 834 F.3d at 93-94.

Plaintiffs similarly argue that the Individual Defendants may not be entitled to immunity under the IOIA because the UN might not have notified the Individual Defendants to the State Department under 22 U.S.C. § 288e (a).  Dkt. No. 25 at 21.  However, the UN notified the Individual Defendants to the United States Mission to the UN – which is a part of the State Department – and asserted immunity on their behalf. Dkt. No. 17-1 at 3.  That notification was clearly accepted as the U.S. Government responded by appearing in this case and asserting that the Individual Defendants are entitled to immunity for their official acts under the IOIA.[12]

## II.    This Case Must Be Dismissed for Lack of Personal Jurisdiction

The exercise of personal jurisdiction requires valid service of process.  *See Waldman v. PLO*, 835 F.3d 317, 327 (2d Cir. 2016).  Plaintiffs have not served Defendants Lazzarini, Grandi, Krähenbühl, Mitchell or Stenseth.  While they purport to have served UNRWA and Defendants Ellis and Gunnarsdottir, the UN has objected to the attempts to serve Defendants on the grounds that Defendants are immune from service of process and the UN has not waived any such immunity.  *See* Dkt. No. 17-1 at 4; Dkt. No. 17-2 at 2.  Indeed, pursuant to Section 2 of the CPIUN, UNRWA enjoys absolute "immunity from every form of legal process."  CPIUN, art. II, § 2.  The CPIUN further provides that the "premises of the United Nations shall be inviolable" and therefore the premises of UNRWA, as a subsidiary organ of the UN, are equally inviolable.

---

[12] Plaintiffs' reliance on *Mazengo v. Mzengi*, 542 F. Supp. 2d 96 (D.D.C. 2008), is misplaced. That case did not involve the IOIA.  Rather, the defendant sought to vacate a judgment based on an allegation that he was entitled to diplomatic immunity without any corroborating assertion of immunity by the U.S. or any foreign government.

CPIUN, art. II, § 3.  Thus, UNRWA is immune from service of process absent a waiver of such

immunity by the UN.  *See id.*  The Individual Defendants are likewise immune.  Article 18(a) of

the CPIUN provides that UN officials are immune from "legal process" in respect of acts

performed in their official capacity.  CPIUN, art. V, § 18.  As explained above, the Complaint

leaves no doubt that the Individual Defendants are being sued for alleged acts undertaken in their

official capacity and therefore they are immune from service of process.  *See* Section I.D *supra*.[13]

**CONCLUSION**

For the forgoing reasons, the Court should dismiss this action with prejudice.

Dated: New York, New York                    Respectfully submitted,
      December 16, 2024

                                           CURTIS, MALLET-PREVOST,
                                           COLT & MOSLE LLP

                                           By:  */s/ Kevin A. Meehan*
                                           Kevin A. Meehan
                                           Robert Groot
                                           Marwa Farag
                                           101 Park Avenue
                                         New York, New York 10178
                                         Tel.:  (212) 696-6000
                                         Fax:  (212) 697-1559
                                         Email: kmeehan@curtis.com

                                         *Attorneys for Defendants*

---

[13] Defendants Lazzarini and Grandi are entitled to immunity under the VCDR.  *See* Section I.C *supra*.  The VCDR provides that the "person of a diplomatic agent shall be inviolable" and that the "private residence of a diplomatic agent shall enjoy the same inviolability and protection as the premises of the mission."  VCDR, arts. 29, 30(1).  Thus, Defendants Lazzarini and Grandi cannot be served absent a waiver of immunity by the UN.