

Avery Samet
MEMBER NY BAR

212.497.8239
asamet@aminillc.com

January 13, 2025

**VIA ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
United States District Courthouse
500 Pearl Street
New York, NY 10007

**Re:    Estate of Kedem, et al. v. UNRWA, et al., 24-cv-4765 (AT)**

Dear Judge Torres:

Pursuant to III.A. of the Court's Individual Practices, Plaintiffs hereby submit their pre-motion letter in support of their forthcoming motion for an order under Fed. R. Civ. P. 4(f)(3) authorizing alternative service of process on the overseas individual defendants by delivery of the summons and complaint to their New York counsel who have already appeared for them in this action. The issues are sufficiently straightforward that the Court may wish to address them without the need for a separate round of full briefing.

**Current State of Service, Defendants' Retention of Counsel and Appearance in this Action, and Defendants' Position on Service**

The entity defendant ("UNRWA") and the two individual defendants who currently reside in the United States (Ms. Ellis and Ms. Gunnarsdottir) have all been served. Docs. No. 14, 15, 16 (affidavits of service). The remaining five individual defendants are believed to reside presently overseas, as detailed below, and are thus not subject to the time limit for service set forth in Rule 4(m). We sent formal Rule 4(d) requests for waiver of service to the majority of them (see Doc No. 17-2 at 2, in which the UN's in-house lawyer acknowledges receipt by some but not all defendants of such requests), which were uniformly ignored. On November 14, 2024, New-York-based counsel entered appearances on behalf of all eight defendants (Docs. No. #43, 44, 45), even though only two of them (Ms. Ellis and Ms. Gunnarsdottir, who had already been served) had been directed by the Court (Doc. No. 41) to appear by that date. On December 16, 2024, all defendants filed a motion to dismiss (Doc. No. 49) essentially limited to their supposed immunity defenses. In their supporting brief, however, they took the position (Doc. No. 50 at 29-30) that service on the three defendants who had been served was invalid because the same treaty (the "CPIUN," as it is called in the briefing) that they rely on for their substantive immunity defenses also protects them from being served with process.

Two things are thus clear. First, all defendants by now have actual knowledge of this action and the allegations against them, and all have chosen to engage New York counsel to defend them in this Court. Second, any service of process on the remaining overseas defendants, even if carried out with all formalities that the Hague Convention might be interpreted to require, will be likewise claimed to be ineffective due to the Defendants' supposed treaty-based right to be immune from service of process.

**Practical Burdens of Attempting Hague Convention Service**

The citizenship and current whereabouts of the remaining unserved defendants, to the best of the undersigned's current knowledge after investigation, is as follows:

- Mr. Lazzarini is a citizen of Switzerland with a permanent residence in Switzerland but who currently spends most of his time outside Switzerland on UNRWA business, probably in Jordan more than any other single location.
- Mr. Krahenbuhl is a citizen of Switzerland who currently lives and works in Switzerland.
- Mr. Grandi is a citizen of Italy who currently lives and works in Switzerland.
- Ms. Stenseth is a citizen of Norway who currently lives and works in Norway.
- Ms. Mitchell is a citizen of the U.S. married to a citizen of Australia and presently residing in Australia. Public records indicate that the last residential address in the U.S. we could connect her with was sold by her several years ago.

Norway and Switzerland are both parties to the Hague Convention, but both insist on a cumbersome, time-consuming, and expensive process. For example, both have objected to Article 10 of the Hague Convention, and thus do not permit the streamlined approach of service via certified mail. Moreover, both appear to require full translation of the U.S. pleadings into their local languages, which is particularly pointless here where there is no dispute that the defendants are fully fluent in English. *See*, *e.g.*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Norway.html and https://ch.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/living-in-ch/judicial-information/service-process/. Jordan, by contrast, is not a party to the Hague Convention, and the State Department's advice as to how to serve process there in connection with a U.S. lawsuit is limited to a recommendation to consult Jordanian counsel for assistance. https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Jordan.html

In short, Hague Convention service may be achievable on most of the remaining defendants, but only with a level of expense and delay that we respectfully submit is unwarranted under these specific circumstances, where New York counsel represents all defendants in this specific action, and all defendants already have actual knowledge of the action.

**This Court's Authority to Authorize Alternative Service on Defendants' New York Counsel**

"In many instances, courts have authorized service under Rule 4(f)(3) on an unserved party's counsel." *In re GLG Life Tech Corp. Securities Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citing *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565-66 (C.D.Cal.2012), *Arista Records LLC v. Media Servs. LLC*, 2008 WL 563470, at *1-2 (S.D.N.Y. Feb. 25, 2008), *RSM Production Corp. v. Fridman*, 2007 WL 2295907, at *1-3 (S.D.N.Y.2007), and *Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005). More recent cases emphasize the continuation of such authorization. *See United States v. Mrvic*, 652 F.Supp.3d 409, 412 (S.D.N.Y. 2023) (collecting cases and stating that "Courts in this district have generally held that service on a defendant located abroad via U.S.-based counsel is permitted under the text of Rule 4(f)(3)").

Indeed, in *GLG*, *id.* at 267), the court authorized service on a U.S. law firm that did not formally represent the China-based individual defendant, but that had appeared in the action for the corporation of which that individual was CEO, reasoning that serving that firm "was virtually guaranteed to provide notice" to the corporation's CEO. Here, there can be no doubt that service on the counsel the non-served defendants have retained to represent them in this very action will formally provide the "notice" of the action that each such defendant clearly already has.

"There is no hierarchy among the subsections in Rule 4(f)" and thus no requirement "to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Doe v. Hyassat*, 342 F.R.D. 53, 58 (S.D.N.Y. 2022) (citations and quotations omitted). *See also GLG*, 287 F.R.D. at 266 ("nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service"). Moreover, while alternative service under Rule 4(f)(3) must not be via a means that specifically violates the Hague Convention (if the defendant is located in a signatory country), that convention "does not prohibit service through a representative in the United States." *Mrvic*, 652 F. Supp.3d 409 at 413 (authorizing service via U.S.-based lawyers).

**Service on UNRWA**

Defendants have separately argued, Doc. No. 50 at 29-30, that a different CPIUN provision protected UNRWA against service at its rented office space in Washington, D.C., because of protections given to the "premises" of the United Nations. That argument is unsupported by authority and meritless for the reasons shown in the opposition brief we have filed today (CITE), but in the alternative, any such concern could be alleviated by re-serving UNRWA itself via its retained counsel, whose office is clearly not part of any "premises" associated with the UN.

In sum, authorizing such service is well within the court's authority and discretion and is appropriate here, because it will simplify and streamline this case without any prejudice to any legitimate interest of the defendants, including their right to argue that such service on their counsel is ineffective because their supposed treaty-based rights would render any service by any means ineffective.

Respectfully submitted,

/s/ *Avery Samet*

Avery Samet

cc: All Counsel of Record (via ECF)