UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ESTATE OF TAMAR KEDEM SIMAN TOV, et al.,     :
                                                              :
                              Plaintiffs,                     :
                                                              :
              - against -                                    :     **Case No. 1:24-cv-4765-AT**
                                                              :
UNITED NATIONS RELIEF AND WORKS         :
AGENCY, PHILIPPE LAZZARINI, PIERRE       :
KRÄHENBÜHL, FILIPPO GRANDI, LENI         :
STENSETH, SANDRA MITCHELL, MARGOT        :
ELLIS, AND GRETA GUNNARSDOTTIR,          :
                                                              :
                              Defendants.                     :

---------------------------------------------------------------- X


### THE UNITED NATIONS' RESPONSE TO THE THIRD STATEMENT OF INTEREST OF THE UNITED STATES GOVERNMENT


                                   CURTIS, MALLET-PREVOST,
                                   COLT & MOSLE LLP

                                   Kevin A. Meehan
                                   Robert Groot
                                   Marwa Farag
                                   101 Park Avenue
Served: New York, NY               New York, New York 10178
       May 22, 2025                Tel.:  (212) 696-6000
                                   Fax:  (212) 697-1559
                                   Email:  kmeehan@curtis.com

                                   *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** .......................................................................................... 1

**ARGUMENT** ........................................................................................................................ 3

    I.     The Government's Change in Position is Not Entitled to Any Deference ................. 3

    II.    Plaintiffs Bear the Burden of Establishing Subject-Matter Jurisdiction ..................... 4

    III.   Subsidiary Organs of the United Nations are Entitled to Immunity ........................... 5

    IV.   UNRWA is a Subsidiary Organ of the UN and is Thus Immune under the
          CPIUN .......................................................................................................................... 7

          A.     The General Assembly Established UNRWA as a Subsidiary Organ ............. 7

          B.     UNRWA is Not a Specialized Agency ........................................................... 12

          C.     The General Assembly is Not Limited to Establishing Subsidiary
                Organs with Purely "Legislative" Functions ................................................. 14

          D.     The Government's Argument that UNRWA Should be Treated as
                Analogous to an Agency or Instrumentality of a Foreign State is
                Irrelevant ....................................................................................................... 19

    V.     Defendants Grandi and Lazzarini are Entitled to Diplomatic Immunity .................. 24

    VI.    The Remaining Defendants are Entitled to Immunity ............................................... 24

    VII.   The Complaint Must be Dismissed for Lack of Personal Jurisdiction ...................... 25

**CONCLUSION** .................................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*,
  585 U.S. 33 (2018) ................................................................................................ 12

*Belhas v. Ya'Alon*,
  515 F.3d 1279 (D.C. Cir. 2008) ............................................................................ 25

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*,
  533 F.3d 1183 (10th Cir. 2008) .............................................................................. 7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017) .......................................................................................... 4, 19

*Broidy Capital Mgmt. LLC v. Benomar*,
  944 F.3d 436 (2d Cir. 2019) ................................................................................... 5

*Brzak v. UN*,
  551 F. Supp. 2d 313 (S.D.N.Y. 2008) ........................................................ 4, 15, 24

*Deng v. UN*,
  No. 22-CV-5539 (LTS), 2022 U.S. Dist. LEXIS 136501 (S.D.N.Y. July 29, 2022) .............. 24

*El Al Israel Airlines, Ltd. v. Tseng*,
  525 U.S. 155 (1999) ................................................................................................ 4

*EM Ltd. v. Banco Cent. de la República Arg.*,
  800 F.3d 78 (2d Cir. 2015) ................................................................................... 20

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
  462 U.S. 611 (1983) ........................................................................................ 19, 20

*Fontaine v. Permanent Mission of Chile*,
  No. 7 Civ. 10086, 2020 U.S. Dist. LEXIS 149673 (S.D.N.Y. Aug. 18, 2020) .......... 5

*Garb v. Republic of Poland*,
  440 F.3d 579 (2d Cir. 2006) ............................................................................ 21, 22

*Georges v. UN*,
  834 F.3d 88 (2d Cir. 2016) ................................................................................. 3, 6

*Georges v. UN*,
  84 F. Supp. 3d 246 (S.D.N.Y. 2015) .................................................................. 4, 5

*In re Hunter v. UN,*
    800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) ........................................................ 6, 8, 15

*In re Lind,*
    No. M-18-304, 1964 U.S. Dist. LEXIS 8854 (S.D.N.Y. Jan. 2, 1964) .................................... 16

*In re Papandreou,*
    139 F.3d 247 (D.C. Cir. 1998) .................................................................. 4

*Kato v. Ishihara,*
    360 F.3d 106 (2d Cir. 2004) .................................................................... 6

*Laventure v. UN,*
    279 F. Supp. 3d 394 (E.D.N.Y. 2017) ......................................................... 5, 6

*Lempert v. Rice,*
    956 F. Supp. 2d 17 (D.D.C. 2013) ........................................................... 6, 8, 15

*Malewicz v. City of Amsterdam,*
    362 F. Supp. 2d 298 (D.D.C. 2005) ............................................................. 7

*Matar v. Dichter,*
    563 F.3d 9 (2d Cir. 2009) .................................................................... 25

*Missouri v. People's Republic of China,*
    90 F.4th 930 (8th Cir. 2024) ................................................................. 6

*Process & Indus. Devs. v. Federal Republic of Nigeria,*
    962 F.3d 576 (D.C. Cir. 2020) ............................................................... 26

*Republic of Austria v. Altmann,*
    541 U.S. 677 (2004) .......................................................................... 4

*Rong v. Liaoning Province Gov't,*
    452 F.3d 883 (D.C. Cir. 2006) ................................................................ 7

*Rosenberg v. Pasha,*
    577 F. App'x 22 (2d Cir. 2014) ............................................................... 5

*Sadikoğlu v. UN Dev. Programme,*
    No. 11 Civ. 0294, 2011 U.S. Dist. LEXIS 120205 (S.D.N.Y. Oct. 14, 2011) ............... 6, 8, 15

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) .......................................................................... 19

*Sumitomo Shoji Am., Inc. v. Avagliano*,
  457 U.S. 176 (1982) ................................................................ 4

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (1994) ........................................................... 21, 22

*Turkiye Halk Bankasi A.S. v. United States*,
  598 U.S. 264 (2023) ............................................................... 4

**Statutes**

28 U.S.C. § 1603(a) ........................................................... 6, 19

28 U.S.C. § 1603(b) .............................................................. 20

28 U.S.C. § 1604 .............................................................. 6, 19

**Rules**

Restatement (Fourth) of Foreign Relations Law, § 452 cmt. b (2018) ......................... 7

Restatement (Third) of Foreign Relations Law, § 452 cmt. b (1987) ......................... 7

**Treaties**

Agreement between the United Nations and the United Nations Industrial
  Development Organization, Dec. 17, 1985, 1412 UNTS 305 ................................. 14

U.N. Convention on the Jurisdictional Immunities of States and Their Property,
  Dec. 2, 2004 ...................................................................... 7

UN Charter ......................................................... 8, 13, 15, 16

**UN Documents**

Final Rep. for UN Secretary-General, Independent Review of Mechanisms
  and Procedures to Ensure Adherence by UNRWA to the Humanitarian
  Principle of Neutrality (Apr. 20, 2024) ........................................... 11

G.A. Res 2252 (ES-V) (July 4, 1967) ............................................... 22

G.A. Res 36/146 (Dec. 16, 1967) .................................................. 22

G.A. Res. 1018 (XI) (Feb. 28, 1957) ............................................... 9

G.A. Res. 1191 (XII) (Dec. 12, 1957) .............................................. 9

G.A. Res. 1315 (XIII) (Dec. 12, 1958) ...................................................................... 9

G.A. Res. 1456 (XIV) (Dec. 9, 1959) ....................................................................... 9

G.A. Res. 2029 (XX) (Nov. 22, 1965)........................................................................ 8

G.A. Res. 2089 (XX) (Dec. 20, 1965) ..................................................................... 14

G.A. Res. 2152 (Nov. 17, 1966) .............................................................................. 14

G.A. Res. 302 (IV) (Dec. 8, 1949)................................................................... 8, 9, 23

G.A. Res. 319 (IV) (Dec. 3, 1949)............................................................................. 8

G.A. Res. 513 (VI) (Jan. 26, 1952)............................................................................ 9

G.A. Res. 57(I) (Dec. 11, 1946)................................................................................ 8

G.A. Res. 63/93 (Dec. 5, 2008)................................................................................. 9

G.A. Res. 77/123 (Dec. 12, 2022)........................................................................... 22

G.A. Res. 78/254 A-C (Dec. 22, 2023) .................................................................... 23

G.A. Res. 78/73 (Dec. 7, 2023)........................................................................... 9, 22

G.A. Res. 78/74 (Dec. 7, 2023)............................................................................... 22

G.A. Res. ES-10/25 (Dec. 11, 2024) ......................................................................... 9

*Rep. of the Special Political Committee*, UN Doc. A/3562 (1957) ............................ 10

*Rep. of the Special Political Committee*, UN Doc. A/4342 (1959) ............................ 10

UN GAOR, 13th Sess., 125th mtg., UN Doc. A/SPC/SR.125, (Dec. 10, 1958) ......... 10

UN GAOR, 14th Sess., 851st plen. mtg., UN Doc. A/PV.851 (Dec. 9, 1959)............. 10

UN GAOR, 4th Sess., 51st mtg., UN Doc. A/AC.31/SR.51 (Nov. 30, 1949)................ 9

UN GAOR, 4th Sess., 51st mtg., UN Doc. A/AC.31/SR.54 (Dec. 2, 1949) ................. 9

UN GAOR, 6th Sess., 46th mtg. ¶ 1, UN Doc. A/AC.53/SR.46 (Jan. 21, 1952) ........ 10

UNRWA, Annual Rep. of the Commissioner-General to the General Assembly –
   1 January to 31 December 2022, U.N. Doc. A/78/13 (2023) .................................. 23

**Other Authorities**

Application for Review of Judgement No. 158 of the United Nations Administrative
Tribunal, Advisory Opinion, 1973 I.C.J. Rep. 172 (July 12) .................................... 17

Certain expenses of the United Nations (Article 17, paragraph 2, of the Charter),
Advisory Opinion, 1962 I.C.J. Rep. 165 (July 20) ............................................ 16, 17

Dan Sarooshi, *The United Nations and the Development of Collective Security*
89 (2000) .......................................................................................... 22

Daniel-Erasmus Khan, *Article 22*, *in* The Charter of the United Nations: A
Commentary 981 (Bruno Simma et al., 2024) ................................................ 12, 18

Effect of awards of compensation made by the U.N. Administrative Tribunal,
Advisory Opinion, 1954 I.C.J. Rep. 58 (July 13) ....................................... 17

Matthias Lippold & Andreas Paulus, *Article 7*, *in* The Charter of the United Nations:
A Commentary, Volume I 388 (Nikolai Wessendorf et al., 2012) ............................. 12, 14, 18

*Obligations of Israel in relation to the Presence and Activities of the United Nations, Other
International Organizations and Third States in and in relation to the Occupied Palestinian
Territory*, Verbatim Record, (May 1, 2025, 3 p.m.) .................................... 11

*Obligations of Israel in relation to the Presence and Activities of the United Nations,
Other International Organizations and Third States in and in relation to
the Occupied Palestinian Territory: Oral Proceedings*, ICJ .................................... 11

*Obligations of Israel in relation to the Presence and Activities of the United Nations,
Other International Organizations and Third States in and in relation to
the Occupied Palestinian Territory: Written Proceedings*, ICJ .............................. 11

Reparation for Injuries Suffered in the Service of the United Nations,
Advisory Opinion, 1949 I.C.J. Rep. 182 (April 11) .................................... 17

Statement of the State of Israel Pursuant to the Court's Order of
23 December 2024 Relating to the Advisory Proceedings Initiated by
General Assembly Resolution 79/232 (Feb. 28, 2025) .................................... 11

U.S. Amicus Br., Broidy Capital Mgmt. LLC v. Benomar,
944 F.3d 436 (2d Cir. 2019) (No. 19-236) .................................................. 5

U.S. Amicus Br., Georges v. UN,
834 F.3d 88 (2d Cir. 2015) (No. 15-455-cv) .............................................. 16

U.S. Amicus Br., NextEra Energy Global Hldgs. B.V. v. Kingdom of Spain,
    112 F.4th 1088 (D.C. Cir. 2024) (No. 23-7031) ........................................................ 5

U.S. Amicus Br., Republic of Hungary v. Simon,
    145 S. Ct. 480 (2025) (No. 23-867) ......................................................................... 5

William Dale, *UNRWA: Subsidiary Organ of the United Nations*,
    23 Int'l & Comp. L.Q. 576 (1974) ................................................................. passim

Written Statement of the United States of America (Feb. 1962) ................................. 17

Pursuant to the Court's order, dated May 2, 2025, Dkt. No. 61, Defendants respectfully submit this memorandum of law in response to the statement of interest filed by the U.S. Department of Justice on April 24, 2025, Dkt. No. 59 (the "Third Statement of Interest").[1]

## PRELIMINARY STATEMENT

The U.S. Government previously submitted two statements of interest asserting that this case should be dismissed for lack of subject matter jurisdiction on the grounds that Defendants are immune under the CPIUN (the "Prior Submissions"). The Third Statement of Interest does not identify any legal or factual errors in the Prior Submissions. Nevertheless, the Government now reverses itself and asserts that UNRWA and most of the Individual Defendants are not entitled to immunity on the grounds that UNRWA is not a subsidiary organ of the UN. That position is not only inconsistent with its Prior Submissions, it is inconsistent with the positions that the Government has espoused for decades both in U.S. litigations and before the UN General Assembly. The Government's new positions are refuted by the text, structure and purpose of the UN Charter and the CPIUN, and many of its positions are precluded by binding precedent. The Third Statement of Interest is entitled to no deference and should be disregarded.

The Government's argument that UNRWA is not a subsidiary organ is untethered from the UN Charter or the CPIUN. UNRWA's status as a subsidiary organ follows from the UN Charter and the General Assembly's exercise of its authority to establish UNRWA as a subsidiary organ under Article 22 of the Charter. This status is confirmed by decades of General Assembly resolutions that explicitly state that UNRWA is a subsidiary organ entitled to immunity under the CPIUN – including resolutions that were drafted and sponsored by the U.S. Government. Nothing

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in Defendants' pending Motion to Dismiss. Dkt. No. 50.

in the UN Charter or CPIUN authorizes individual UN Member States to unilaterally strip a subsidiary organ of its status and immunities.

The Government nevertheless incorrectly argues that UNRWA should be treated as analogous to a "specialized agency" that is not entitled to immunity under the CPIUN – even though it readily admits that UNRWA is not actually a specialized agency, which are international organizations that are separate from the UN. The Government's proposed analogy is entirely predicated on the argument that only "legislative" bodies can be subsidiary organs of the General Assembly and that entities engaged in "executive" activities, such as UNRWA, are not subsidiary organs. This distinction made by the Government is without legal basis. The UN Charter makes no such distinction. Nor does it limit the General Assembly's authority on this basis. To the contrary, the UN's principal judicial organ, the International Court of Justice ("ICJ"), has broadly construed the General Assembly's authority under the UN Charter to allow the establishment of a wide range of subsidiary organs in line with the purposes of the UN, and without limiting such authority to the establishment of "legislative" bodies. Furthermore, the General Assembly, with the support of the U.S., has established numerous subsidiary organs with functions that the Government would deem "executive," yet the Second Circuit and other courts have uniformly held that these organs are immune under the CPIUN. The Government ignores this overwhelming case law.

Unable to find any support in the text of the UN Charter, the CPIUN, the case law or state practice, the Government points to the statutory distinction between a "foreign state" and an "agency or instrumentality of a foreign state" under the FSIA and argues that UNRWA should be treated as analogous to an agency or instrumentality. The Government offers no support for this analogy. The FSIA does not govern this case, and the statutory distinction between states and their

- 2 -

agencies and instrumentalities is irrelevant.  This case is governed by the CPIUN, which accords UNRWA and other subsidiary organs of the UN absolute immunity from the jurisdiction of U.S. courts.  In any event, the Government's proposed analogy is incorrect because the FSIA explicitly defines "foreign state" to include any "agency or instrumentality" and accords any such agency or instrumentality with immunity from the jurisdiction of U.S. courts.

Accordingly, this Court should disregard the Third Statement of Interest and grant the Defendants' pending Motion to Dismiss for lack of subject matter and personal jurisdiction.

## <u>ARGUMENT</u>

## I.    The Government's Change in Position is Not Entitled to Any Deference

The interpretation of treaty obligations under the UN Charter and the CPIUN are questions of law that must be decided by courts.  *Georges v. UN*, 834 F.3d 88, 93 (2d Cir. 2016).  While the Government's interpretation of a treaty is ordinarily entitled to deference, the Parties here agree that the "Government is entitled to no deference when its current litigation position contradicts its earlier positions."  Dkt. No. 25 at 27; Dkt. No. 53 at 15.  The Government's Third Statement of Interest is not only inconsistent with its two Prior Submissions, it is also inconsistent with the Government's submissions in other cases as well as the positions that the Government has taken before the UN.  As explained below, the U.S. Government was heavily involved in drafting, sponsoring and otherwise supporting General Assembly resolutions stating that UNRWA is a subsidiary organ of the UN entitled to immunity under the CPIUN.  The Government's change in position is not based on any objective application of the law and does not identify any supposed legal or factual errors in the Prior Submissions.  In fact, many of the Government's current positions must be rejected as irreconcilable with binding precedent.  As also explained below, the Government's current positions are inconsistent with the text, structure and purpose of the UN

- 3 -

Charter and the CPIUN.  Thus, under these circumstances, the Third Statement of Interest is entitled to no deference.  *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168-69 (1999); *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982); *see also Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 286 (2023) (Gorsuch, J., concurring) ("deference to the Executive's immunity decision[] risks relegating courts to the status of potted plants, inconsistent with their duty to say what the law is in the cases that come before them").[2]

## II.    Plaintiffs Bear the Burden of Establishing Subject-Matter Jurisdiction

While the Government previously argued that Plaintiffs have the burden of overcoming Defendants' immunity and establishing subject matter jurisdiction, Dkt. No. 17 at 5; Dkt. No. 38 at 2 n.2, it now argues that Defendants have the burden of establishing immunity as an affirmative defense.  Dkt. 59 at 7.  That argument is foreclosed by binding precedent.  It is well established that jurisdictional immunity is a question of subject matter jurisdiction and not an affirmative defense on the merits.  *See Georges v. UN*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016); *Brzak v. UN*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 110 (2d Cir. 2010); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* 581 U.S. 170, 174, 187 (2017) (holding that jurisdictional immunity is a threshold question that must be decided before reaching the merits); *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Sovereign immunity is an immunity from trial and the attendant burdens of litigation, and

---

[2] In view of Congress's ratification of the CPIUN and the enactment of the IOIA, the Parties agree that Government's politically driven views do not govern.  *See* Dkt. No. 42 at 11 ("The pre-FSIA regime in which the courts deferred to the Government's politically-driven views, varying case to case, as to which defendants should or should not receive immunity cannot be the law when, as here, there is a statute or treaty to provide this Court with the rule of decision."); *see also Republic of Austria v. Altmann*, 541 U.S. 677, 690-91 (2004) (explaining that Congress enacted the FSIA, in part, to eliminate politically driven immunity decisions by the Executive Branch by delegating such immunity decisions to the courts).

not just a defense to liability on the merits."). The Second Circuit has consistently held that the plaintiff bears the burden of establishing subject matter jurisdiction by demonstrating that a defendant lacks immunity. *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019); *Rosenberg v. Pasha*, 577 F. App'x 22, 23 (2d Cir. 2014); *Laventure v. UN*, 279 F. Supp. 3d 394, 398 (E.D.N.Y. 2017), *aff'd*, 746 F. App'x 80 (2d Cir. 2018); *see also Georges*, 84 F. Supp. 3d at 248; *Fontaine v. Permanent Mission of Chile*, No. 7 Civ. 10086, 2020 U.S. Dist. LEXIS 149673, at *6 (S.D.N.Y. Aug. 18, 2020).

The Government does not address this overwhelming case law. Instead, the Government points to case law applying a burden-shifting analysis under the FSIA. Dkt. No. 59 at 7. However, the Second Circuit in *Broidy* held that this burden-shifting analysis is unique to the FSIA and refused to apply it to claims of treaty-based immunity. *See* 944 F.3d at 443-44. Thus, the FSIA's burden-shifting framework is not applicable here.[3]

## III.    Subsidiary Organs of the United Nations are Entitled to Immunity

The Government's Prior Submissions explained that the CPIUN confers immunity on subsidiary organs of the UN. Dkt. No. 17 at 3-5; Dkt. No. 38 at 1-4. While the Government does not seek to change its position in this regard, it does suggest in a footnote in its Third Statement of Interest that it "is not a given" that the CPIUN covers subsidiary organs of the UN. Dkt. No. 59 at 3, n.2. However, that is wrong. As an integral part of the United Nations, subsidiary organs are entitled to the protections provided under the CPIUN. The Second Circuit and other courts have

---

[3] The Government has consistently argued that the burden-shifting analysis was wrongly adopted in FSIA cases. *See, e.g.*, U.S. Amicus Br. at *47-48, Republic of Hungary v. Simon, 145 S. Ct. 480 (2025) (No. 23-867); U.S. Amicus Br. at 9-10 n.2, NextEra Energy Global Hldgs. B.V. v. Kingdom of Spain, 112 F.4th 1088 (D.C. Cir. 2024) (No. 23-7031); U.S. Amicus Br. at 16-17, Broidy Capital Mgmt. LLC v. Benomar, 944 F.3d 436 (2d Cir. 2019) (No. 19-236).

consistently dismissed cases against the UN's subsidiary organs on the grounds that such organs are entitled to immunity under the CPIUN. *See Georges*, 834 F.3d at 91; *see also Laventure*, 279 F. Supp. 3d at 400; *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013); *Sadikoğlu v. UN Dev. Programme*, No. 11 Civ. 0294, 2011 U.S. Dist. LEXIS 120205, at *9 (S.D.N.Y. Oct. 14, 2011); *In re Hunter v. UN*, 800 N.Y.S.2d 347, 347 (N.Y. Sup. Ct. 2004).

The Government's Third Statement of Interest does not address the Second Circuit's binding decisions in *Georges* or *Laventure* or any of the other cases that have uniformly dismissed claims against subsidiary organs of the UN on immunity grounds under the CPIUN. Instead, the Government suggests without any support that subsidiary organs of the UN should be treated as analogous to "political subdivisions" of foreign states (such as "cities, towns and counties"), which the Government claims are "not entitled to sovereign immunity." Dkt. No. 59 at 3, n.2. This analogy should be rejected because the UN is not a foreign state and its immunity is not governed by the FSIA or international law on state immunity. There is no basis for the Government to import supposed distinctions under the law of state immunity. Rather, the immunity of the UN and its subsidiary organs is governed by the CPIUN – a treaty ratified by and binding on the U.S. that accords the UN and its subsidiary organs absolute immunity from the jurisdiction of U.S. courts absent an express waiver by the UN Secretary-General.

In any event, the Government's assertion that a "political subdivision" is not entitled to immunity is wrong on the law. The FSIA defines "foreign state" expressly to <u>include</u> "political subdivisions" and provides political subdivisions with the same immunity as the state itself. *See* 28 U.S.C. §§ 1603(a), 1604; *see also Kato v. Ishihara*, 360 F.3d 106, 110, 114 (2d Cir. 2004) (holding Tokyo's municipal government immune under the FSIA); *Missouri v. People's Republic of China*, 90 F.4th 930, 935-36 (8th Cir. 2024) (finding that provincial and municipal governments

are entitled to immunity); *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1189 (10th Cir. 2008) (finding that "political subdivisions of foreign states are 'foreign states' within the meaning of the FSIA."); *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 885 (D.C. Cir. 2006) (provincial government immune); *Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 306 (D.D.C. 2005) (finding that a municipal government is a "foreign state" within the meaning of the FSIA).[4]

## IV.    UNRWA is a Subsidiary Organ of the UN and is Thus Immune under the CPIUN

Despite having argued that UNRWA is entitled to immunity as a subsidiary organ of the UN in its Prior Submissions, the Government now seeks to change its position and argues that UNRWA is not entitled to immunity under the CPIUN and IOIA because it is not a subsidiary organ of the UN.  Dkt. No. 59 at 3.  As explained above, the Government's current views are not entitled to any deference and should be rejected.  *See supra* Section I.  And, as explained below, the Government's arguments in favor of its currently held position are unfounded.

### A.    The General Assembly Established UNRWA as a Subsidiary Organ

The Government now argues that UNRWA cannot be characterized as a subsidiary organ of the UN and asserts that the UN "ignore[ed] legal formalities" when creating UNRWA.  Dkt. No. 59 at 5 n.4, 9.  That is a curious argument given the fact that the U.S. Government was deeply involved in UNRWA's creation.  In any event, as already demonstrated, UNRWA was created as a subsidiary organ pursuant to the provisions of the UN Charter.  Dkt. No. 50 at 12-14.

---

[4] While the Government relies on the Restatement (Third) of Foreign Relations Law, that Restatement and the supervening Fourth Restatement recognize that political subdivisions are entitled to immunity.  *See* Restatement (Third) of Foreign Relations Law, § 452 cmt. b (1987); Restatement (Fourth) of Foreign Relations Law, § 452 cmt. b (2018); *see also* U.N. Convention on the Jurisdictional Immunities of States and Their Property art. 2, Dec. 2, 2004.

The only appropriate legal framework for determining whether an entity is a subsidiary organ is the "constitution" of the Organization – the Charter of the United Nations. The UN Charter provides for the "Organs" of the UN to include the six "principal organs" as well as "subsidiary organs." UN Charter art. 7. Article 22 of the UN Charter grants the General Assembly the power to establish "subsidiary organs as it deems necessary for the performance of its functions." It requires no other preconditions. Nor does Article 22 require any formalities, such as use of the specific term "subsidiary organ." When the General Assembly establishes an entity by resolution, it is a subsidiary organ of the General Assembly and, more broadly, of the UN, and is therefore an integral part of the UN. Thus, UNRWA's status as a subsidiary organ follows directly from its establishment by resolution of the General Assembly pursuant to Article 22. *See* William Dale, *UNRWA: Subsidiary Organ of the United Nations*, 23 Int'l & Comp. L.Q. 576, 578 (1974) (subsidiary organs are "founded by mere resolution of a principal organ").

The Government now argues that UNRWA should not be treated as a subsidiary organ because General Assembly Resolution 302 (IV) establishing UNRWA does not explicitly use the phrase "subsidiary organ." Dkt. No. 59 at 7 (discussing G.A. Res. 302 (IV) (Dec. 8, 1949)). But again, the Charter does not require the General Assembly to invoke this specific term when establishing a subsidiary organ. Nor is it the norm for the General Assembly to do so. Numerous subsidiary organs of the UN were created by General Assembly resolutions that do not use the phrase "subsidiary organ." *See*, *e.g.*, G.A. Res. 57(I) (Dec. 11, 1946) (establishing UNICEF); G.A. Res. 319 (IV) (Dec. 3, 1949) (establishing UNHCR); G.A. Res. 2029 (XX) (Nov. 22, 1965) (establishing UNDP). Courts have uniformly recognized these entities as subsidiary organs of the UN and accorded them immunity under the CPIUN. *See*, *e.g.*, *Lempert*, 956 F. Supp. 2d at 24; *Sadikoğlu*, 2011 U.S. Dist. LEXIS 120205, at *2, *9; *In re Hunter*, 800 N.Y.S.2d at 347.

Resolution 302(IV) establishing UNRWA also "calls upon the Governments concerned to accord" UNRWA the immunities and privileges necessary for its functions. G.A. Res. 302 (IV). The Government now contends that, if UNRWA is a subsidiary organ, such a reference to immunity would be unnecessary because UNRWA would already be entitled to immunity under the CPIUN. Dkt. No. 59 at 7. There is no merit to this argument. It ignores the fact that Resolution 302 (IV) was passed in 1949 when many UN Member States – including the U.S. – had not yet ratified the CPIUN. When viewed in this historical context, the call for States to accord immunity to UNRWA in Resolution 302 (IV) is in no way inconsistent with recognizing UNRWA's entitlement to immunity under the CPIUN. Furthermore, the U.S. Government co-submitted the draft and co-sponsored Resolution 302 (IV). *See* UN GAOR, 4th Sess., 51st mtg. ¶¶ 19-35, UN Doc. A/AC.31/SR.51 (Nov. 30, 1949); UN GAOR, 4th Sess., 51st mtg. ¶ 1, UN Doc. A/AC.31/SR.54 (Dec. 2, 1949); *see also* Dale, *supra*, at 579. In doing so, the U.S. recognized that UNRWA was entitled to immunity and admonished other nations to likewise accord immunity to UNRWA, in accordance with its status as a subsidiary organ.

Numerous subsequent General Assembly resolutions explicitly confirm that UNRWA is a subsidiary organ and that it is entitled to immunity. *See*, *e.g.*, G.A. Res. 513 (VI), ¶ 3 (Jan. 26, 1952); G.A. Res. 1018 (XI), at 6-7 (Feb. 28, 1957); G.A. Res. 1191 (XII), at 8-9 (Dec. 12, 1957); G.A. Res. 1315 (XIII), at 9 (Dec. 12, 1958); G.A. Res. 1456 (XIV), at 8 (Dec. 9, 1959); G.A. Res. 63/93, ¶ 12 (Dec. 5, 2008); G.A. Res. 78/73, ¶ 39 (Dec. 7, 2023); G.A. Res. ES-10/25, at ¶¶ 2, 10, 12, 14 (Dec. 11, 2024). The U.S. Government was the drafter and/or co-sponsor of many of these resolutions. For example, the U.S. was the drafter and co-sponsor of General Assembly Resolution 1315 (XIII), which explicitly states that UNRWA is a "subsidiary organ of the United Nations." G.A. Res. 1315 (XIII). When introducing this Resolution, the U.S. explained that this language

had been included to confirm "the character of the Agency as a subsidiary organ of the United Nations." UN GAOR, 13th Sess., 125th mtg. ¶ 1, UN Doc. A/SPC/SR.125, (Dec. 10, 1958). The U.S. was also a drafter and sponsor of General Assembly Resolution 513 (VI), which states that UNRWA is a subsidiary organ of the UN, and General Assembly Resolution 1018 (XI), which confirms that UNRWA is entitled to immunity under the CPIUN. UN GAOR, 6th Sess., 46th mtg. ¶ 1, UN Doc. A/AC.53/SR.46 (Jan. 21, 1952); *Rep. of the Special Political Committee*, ¶¶ 8-10, UN Doc. A/3562 (1957). The U.S. also supported General Assembly Resolution 1456 (XIV), which explicitly states that UNRWA is "a subsidiary organ of the United Nations, [and] enjoys the benefits of the [CPIUN]." *Rep. of the Special Political Committee*, at 5, UN Doc. A/4342 (1959); UN GAOR, 14th Sess., 851st plen. mtg. ¶ 90, UN Doc. A/PV.851 (Dec. 9, 1959). Accordingly, given the fact that the U.S. Government has repeatedly taken the position before the UN that UNRWA is a subsidiary organ entitled to immunity under the CPIUN, it should be estopped from arguing that UNRWA is not immune under the CPIUN.

Other UN Member States have likewise recognized that UNRWA is a subsidiary organ entitled to immunity under the CPIUN through the adoption of these resolutions. In addition, in an ongoing ICJ proceeding concerning the "Obligations of Israel in relation to the Presence and Activities of the United Nations, Other International Organizations and Third States in and in relation to the Occupied Palestinian Territory," the vast majority of submissions by UN Member States explicitly recognized that UNRWA is entitled to immunity under the CPIUN as a subsidiary organ of the UN, including, but not limited to, Belgium (¶ 68), Brazil (¶ 80), Chile (¶¶ 37, 42), China (¶¶ 88, 93), Colombia (¶¶ 4.73-75), France (¶ 27), Kuwait (¶ 15), Malaysia (¶¶ 22, 56, 67), Mexico (¶¶ 28, 86), Norway (¶¶ 74, 102), Russia (¶¶ 11, 44), Spain (¶ 35), Saudi

Arabia (¶ 52), and Turkey (¶ 15).[5]  Israel acknowledges in its written submission that it is "indisputable" that UNRWA is a "subsidiary organ of the General Assembly," and that Israel has upheld "UNRWA's immunities under international law before domestic authorities."  Statement of the State of Israel Pursuant to the Court's Order of 23 December 2024 Relating to the Advisory Proceedings Initiated by General Assembly Resolution 79/232, ¶¶ 12, 16 (Feb. 28, 2025), https://www.icj-cij.org/sites/default/files/case-related/196/196-20250228-wri-22-00-en.pdf.[6]  Israel's written submission is consistent with its prior statements recognizing that the CPIUN covers UNRWA.  *See* Final Rep. for UN Secretary-General, Independent Review of Mechanisms and Procedures to Ensure Adherence by UNRWA to the Humanitarian Principle of Neutrality, at 21-22 (Apr. 20, 2024), https://www.un.org/unispal/document/report-independent-review-group-on-unrwa-22april2024/.

UNRWA's status as a subsidiary organ of the UN entitled to immunity under the CPIUN is further confirmed by other UN legal documents.  *See* Dkt. No. 50 at 12-13 (collecting authorities).  Commentators, including those cited by the Government, widely agree with this

---

[5] The written submissions are available at *Obligations of Israel in relation to the Presence and Activities of the United Nations, Other International Organizations and Third States in and in relation to the Occupied Palestinian Territory: Written Proceedings*, ICJ, https://www.icj-cij.org/case/196/written-proceedings (last visited May 21, 2025). In addition to the written submissions, during oral proceedings, additional Member States refer to UNRWA as a subsidiary organ of the UN, including the UK. *Obligations of Israel in relation to the Presence and Activities of the United Nations, Other International Organizations and Third States in and in relation to the Occupied Palestinian Territory*, Verbatim Record, at 59 ¶ 10 (May 1, 2025, 3 p.m.), https://www.icj-cij.org/sites/default/files/case-related/196/196-20250501-ora-02-00-bi.pdf.  The oral proceedings are available at *Obligations of Israel in relation to the Presence and Activities of the United Nations, Other International Organizations and Third States in and in relation to the Occupied Palestinian Territory: Oral Proceedings*, ICJ, https://www.icj-cij.org/case/196/oral-proceedings (last visited May 22, 2025)

[6] The U.S. Government also submitted a statement in these proceedings, which does not challenge UNRWA's status as a subsidiary organ or otherwise argue that the CPIUN does not cover UNRWA.

conclusion. *See* Dale, *supra*, at 590; Daniel-Erasmus Khan, *Article 22*, *in* The Charter of the United Nations: A Commentary 981, 995 (Bruno Simma et al., 2024); Matthias Lippold & Andreas Paulus, *Article 7*, *in* The Charter of the United Nations: A Commentary, Volume I 388, 408 (Nikolai Wessendorf et al., 2012).

The Government argues that none of the General Assembly resolutions or other UN documents that were issued subsequent to Resolution 302 (IV) in 1949 are entitled to controlling weight under *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 585 U.S. 33 (2018) ("*Animal Science*"). Dkt. No. 59 at 7. *Animal Science* held that a foreign state's interpretation of its own laws submitted in a U.S. litigation is entitled to respectful consideration but is not dispositive. *Id.* at 36. Thus, applying *Animal Science* here would require giving significant weight to the UN's own interpretations of the CPIUN and UN Charter.[7] That analysis is also not relevant to this case, where the United States, as a Member State of the UN and a Member of the General Assembly, clearly and actively confirmed UNRWA's status as a subsidiary organ and recognized the immunities attached to that status.

### B.    UNRWA is Not a Specialized Agency

The Government argues that UNRWA is "better analogized" for immunity purposes to a "specialized agency" under Article 57 of the UN Charter. Dkt. No. 59 at 6. This argument is without legal basis. The UN Charter defines "specialized agencies" as entities "established by

---

[7] The Government also vaguely accuses the UN of using "poor recordkeeping" to somehow "expand" its immunity. Dkt. No. 59 at 7. The Government does not actually point to any alleged "poor recordkeeping." The argument, instead, appears to concern one commentator who refers to a lack of "uniformity in the terminology used for denomination purposes," but he does so only to propose terminology intended to classify different sub-types of subsidiary organs. Khan, *supra*, at 982. These proposed classifications are not legally distinct for immunity purposes. Nor do they call into question UNRWA's status as a subsidiary organ, which the commentator acknowledges. *Id.* at 995.

intergovernmental agreement" and "brought into relationship" with the UN through an "agreement" with the Economic and Social Council "subject to approval by the General Assembly." UN Charter, arts. 57, 63. *See also* Dale, *supra*, at 576-78. As explained above, UNRWA was established by resolution of the General Assembly. It was not established by separate intergovernmental agreement, nor later brought into relationship with the UN through an agreement. Therefore, UNRWA is not a specialized agency and cannot be legally equated with one for immunity purposes.[8]

The Government concedes that UNRWA is not actually a specialized agency because it was not created as a separate organization and subsequently brought into relationship with the UN through an agreement under Article 63 of the UN Charter. Dkt. No. 59 at 5 n.4. Instead, the Government asserts that, despite lacking the elements of a specialized agency under Articles 57 and 63, UNRWA is somehow analogous to a specialized agency and therefore should not be accorded immunity under the CPIUN as a subsidiary organ. However, neither the UN Charter nor the CPIUN authorize individual Member States to unilaterally strip a subsidiary organ of its status as a subsidiary organ under the UN Charter or its immunity under the CPIUN. Nor is there any authority for individual Member States to create entirely new categories of entities beyond those set forth in the UN Charter (i.e., principal organs, subsidiary organs and specialized agencies). Thus, given the Government's admission that UNRWA was not established in accordance with Article 57, the Government has no consistent grounds to deny that UNRWA is a subsidiary organ of the UN entitled to immunity under the CPIUN.

---

[8] The Government argues that specialized agencies are only entitled to immunity under CPISA, which has not been ratified by the U.S. But UNRWA is not a specialized agency, and is not listed as one in CPISA.

The Government argues that the UN does not always abide by the formal requirements of Article 57 when creating specialized agencies and points to the UN Industrial Development Organization ("UNIDO").  The Government asserts that UNIDO is a specialized agency even though it was created as an organ of the UN pursuant to a General Assembly resolution.  Dkt. No. 59 at 5 n.4 (citing G.A. Res. 2152 (Nov. 17, 1966)).  However, that argument leaves out a critical part of UNIDO's history.  UNIDO was initially established by the General Assembly as a subsidiary organ.  *See* G.A. Res. 2089 (XX) (Dec. 20, 1965).  Thereafter, UNIDO was converted to a specialized agency by intergovernmental agreement and brought into relationship with the UN by agreement pursuant to Articles 57 and 63 of the UN Charter.  *See* Agreement between the United Nations and the United Nations Industrial Development Organization art. I, Dec. 17, 1985, 1412 UNTS 305.  As one of the Government's own authorities explains, "UNIDO has been converted into a separate international organization, related to the UN as a specialized agency under Art. 57 of the Charter . . . and has consequently ceased to be a subsidiary organ of the GA." Lippold & Paulus, *supra*, at 409.  Thus, UNIDO was made a separate international organization by its constituent agreement agreed to by its member states and brought into a relationship with the UN as a specialized agency through all of the formalities and requirements of Articles 57 and 63.  Its example bears no relevance whatsoever to UNRWA's status, privileges, and immunities.

### C.    The General Assembly is Not Limited to Establishing Subsidiary Organs with Purely "Legislative" Functions

The Government argues that UNRWA should not be treated as a subsidiary organ because it supposedly does not function as an organ of the General Assembly.  Dkt. No. 59 at 5.  It argues that subsidiary organs can only engage in the "'functions and powers' of the General Assembly" and that the General Assembly is limited to "legislative" functions.  *Id.*  The Government contends that UNRWA engages in supposed "executive" functions by conducting operational activities,

such as running schools and hospitals.  *Id.*  This argument based on the supposed distinction between legislative and executive functions should be rejected because it is contrary to binding caselaw and finds no support in the text or purpose of the UN Charter or, for that matter, in the history of the involvement of the United States in the General Assembly.

As an initial matter, courts have upheld the immunity of other UN subsidiary organs that engage in supposed executive functions, including UNICEF, which has over 17,000 personnel[9] who administer humanitarian aid to children around the world, *see In re Hunter*, 800 N.Y.S.2d at 347; UNHCR, which has over 18,000 personnel[10] who administer aid to refugees around the world, *see Brzak*, 551 F. Supp. 2d at 313; and UNDP, which has 23,000 personnel[11] working on eliminating poverty.  *See Sadikoğlu*, 2011 U.S. Dist. LEXIS 120205, at *1-2; *Lempert*, 956 F. Supp. 2d at 24.  The U.S. Government intervened in nearly all of these cases and consistently supported dismissal on the grounds that these operational organs of the UN were entitled to immunity.  The Third Statement of Interest does not address this caselaw and cites none to the contrary.

The Government's argument that a subsidiary organ of the UN can be stripped of its immunity based on whether it performs "legislative" or "executive" functions is also contrary to the text of the UN Charter.  Article 22 of the UN Charter grants the General Assembly unrestricted powers to "establish such subsidiary organs as it deems necessary for the performance of its functions."  UN Charter art. 22.  This determination of whether an organ is "necessary" is solely at the discretion of the General Assembly.  *See In re Lind*, No. M-18-304, 1964 U.S. Dist. LEXIS

---

[9] *See 2023 in Review*, UNICEF, https://www.unicef.org/reports/unicef-annual-report-2023/ED-letter (last visited May 19, 2025).

[10] *See About UNHCR*, UNHCR, https://www.unhcr.org/about-unhcr/overview/figures-glance (last visited May 19, 2025).

[11] *See Annual Report 2024*, UNDP, https://annualreport.undp.org/ (last visited May 20, 2025).

8854, at *8 (S.D.N.Y. Jan. 2, 1964) (finding statutory language "as it deems necessary" was "very broad" and left the determination of what steps were "necessary" to agency's discretion).  Thus, by establishing a subsidiary organ by resolution, the General Assembly conclusively "deems" that the organ is necessary for its functions.  No Member State may thereafter unilaterally alter the legal status of a subsidiary organ or deny them immunity under the CPIUN.

The Government's argument would also frustrate the purpose of the CPIUN.  As the Government itself has explained, the purpose of the CPIUN is to "confer[] absolute immunity on the UN to allow it to perform its vital missions without facing the threat of lawsuits in multiple countries, contradictory court orders issued by tribunals around the world, judicial intervention in sensitive policy and operational matters, and the diversion of resources (provided by the Member States) to the burdens and expenses of litigation."  U.S. Amicus Br. at 2, *Georges v. UN*, 834 F.3d 88 (2d Cir. 2015) (No. 15-455-cv).  The Third Statement of Interest invites the very sort of "judicial intervention" into "operational matters" that the CPIUN was intended to prevent and would thereby frustrate the UN's ability "to perform its vital missions."  *Id.*  That ill-considered position would largely render the CPIUN a nullity and should be rejected

Furthermore, the central premise of the Government's argument – that the General Assembly is limited to legislative functions – has long been rejected by the ICJ, which under the UN Charter is responsible for authoritatively assessing the powers of the other principal organs. UN Charter art. 96.  In 1962, the ICJ issued a decision confirming that the General Assembly had the power under Article 11(2) of the UN Charter to establish as a subsidiary organ a military and peacekeeping force called "United Nations Emergency Force," which was organized to secure and supervise the cessation of hostilities during the Suez Crisis.  Certain expenses of the United Nations (Article 17, paragraph 2, of the Charter), Advisory Opinion, 1962 I.C.J. Rep. 165 (July 20).  The

ICJ expressly refused to limit the General Assembly to "discussion, consideration, the initiation of studies and the making of recommendations," and, instead, recognized that the General Assembly could take actions with "dispositive force and effect" concerning "international peace and security." *Id.* at 163. This demonstrates that the General Assembly may establish subsidiary organs that exercise supposed "executive" functions through operational activities.[12]

The ICJ has further emphasized that the powers of the principal organs are to be construed broadly, even when not expressly provided for in the Charter, to accomplish the purposes of the UN. *See* Application for Review of Judgement No. 158 of the United Nations Administrative Tribunal, Advisory Opinion, 1973 I.C.J. Rep. 172, ¶ 16 (July 12) (holding that "to place a restrictive interpretation on the power of the General Assembly to establish subsidiary organs would run contrary to the clear intention of the Charter."); Reparation for Injuries Suffered in the Service of the United Nations, Advisory Opinion, 1949 I.C.J. Rep. 182 (April 11) ("Under international law, the Organization must be deemed to have those powers which, though not expressly provided in the Charter, are conferred upon it by necessary implication as being essential to the performance of its duties."). These broad powers allow the General Assembly to establish subsidiary organs to which it does not delegate strictly its own functions under the Charter, but rather that perform different functions such as exercising binding judicial power. *See* Effect of awards of compensation made by the U.N. Administrative Tribunal, Advisory Opinion, 1954 I.C.J. Rep. 58, 60-61 (July 13).

---

[12] The U.S. Government took the position that the establishment of UNEF as a subsidiary organ was authorized by Article 22 of the Charter. *See* Written Statement of the United States of America, at 205 (Feb. 1962), https://www.icj-cij.org/case/49/written-proceedings.

In the face of this overwhelming authority, the Government relies heavily on selective quotes from commentators purporting to question the General Assembly's authority to create subsidiary organs that engage in operational activities. Dkt. No. 59 at 4-5. When read in their entirety, those authorities actually undermine the Government's position. For example, it relies on William Dale's article entitled *UNRWA – A Subsidiary Organ of the United Nations*, which unsurprisingly concludes that UNRWA is a subsidiary organ of the UN entitled to immunity under the CPIUN. *See* Dale, *supra*, at 576-77. Dale's analysis is directly contrary to the Government's position and expressly states that the General Assembly may establish subsidiary organs with a broad range of operational functions such "as administering relief, rehabilitation and assistance programmes . . . truce supervision and peace-keeping, of reconstruction after fighting, of promoting international trade and industrial development, and of a world food programme." *See*, *e.g.*, Dale, *supra*, at p. 577; *see also* Khan, *supra*, at 996 (stating that the General Assembly has "the competence to transfer specific operational activities to subsidiary organs."); Lippold & Paulus, *supra*, at 401 ("UN practice shows that a principal organ may create subsidiary organs without delegating its own power; consequently the powers of the subsidiary organ may differ from those of the principal organ").

Finally, the Government asserts that the U.S. Senate would not have understood the term subsidiary organ to encompass entities engaged in operational activities at the time the CPIUN was ratified in 1970. Dkt. No. 59 at 5. This unsupported assertion ignores the fact that the U.S. was instrumental in the creation of UNRWA and other operational subsidiary organs and was supportive of their operational activities. In fact, as explained above, the U.S. drafted, sponsored and supported General Assembly resolutions that explicitly stated that UNRWA is a subsidiary organ of the UN that is entitled to immunity under the CPIUN. *See supra* Section IV.A. The

Senate was obviously aware of this history when it ratified the CPIUN, and, thereafter, the Government has consistently asserted that operational subsidiary organs were entitled to immunity under the CPIUN.

> **D.    The Government's Argument that UNRWA Should be Treated as Analogous to an Agency or Instrumentality of a Foreign State is Irrelevant**

The Government now argues that UNRWA should be treated as separate from the UN in the same way an "agency or instrumentality of a foreign state" is treated as separate from a "foreign state" under the FSIA.  Dkt. No. 59 at 5.  However, there is no basis for this proposed analogy.  The UN is not a foreign state and any statutory distinctions between a foreign state and its agencies or instrumentalities under the FSIA are completely irrelevant.  Rather, the immunity analysis in this case is governed by the CPIUN, which accords absolute immunity to the UN and its subsidiary organs, including UNRWA.

In any event, the Government's argument seems to be predicated on the assumption that agencies and instrumentalities of a foreign state are not entitled to immunity.  That is false.  The FSIA explicitly defines "foreign state" to include any "agency or instrumentality of a foreign state" and provides that any such agency or instrumentality is immune from the jurisdiction of U.S. courts.  *See* 28 U.S.C. §§ 1603(a), 1604; *see also Helmerich & Payne,* 581 U.S. at 174 (holding that Venezuelan state-owned company, PDVSA, was entitled to immunity); *Saudi Arabia v. Nelson*, 507 U.S. 349, 356, 363 (1993) (holding that Saudi state-owned hospital was entitled to immunity).  Therefore, even if the Government's analogy were accepted, it would only confirm UNRWA's immunity.

The Government does not address the binding authority according jurisdictional immunity to agencies or instrumentalities of a foreign state.  Instead, the Government relies on *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983) ("<u>Bancec</u>").  That

- 19 -

case has nothing to do with the UN or its immunities under the CPIUN.  In fact, it has nothing to do with immunity at all because it was undisputed that Cuba, the plaintiff, waived its immunity and that the FSIA's counterclaim exception conferred jurisdiction over Citibank's setoff claims. *See Bancec,* 462 U.S. at 630, 633.  *Bancec* held that a corporate instrumentality of a foreign state possessing separate legal personality should ordinarily be treated as separate from the state itself for purposes of liability.  *See id.* at 626-27.  But *Bancec* does not alter the fact that both foreign states and their agencies and instrumentalities are entitled to immunity.  While the FSIA expressly defines agencies and instrumentalities as being separate from the state itself, it also accords these separate agencies and instrumentalities immunity and thus agencies and instrumentalities are entitled to immunity from the jurisdiction of U.S. courts regardless of whether they are separate from the state under *Bancec*.  *See* 28 U.S.C. § 1603(b); *see also EM Ltd. v. Banco Cent. de la República Arg.*, 800 F.3d 78, 90-91 (2d Cir. 2015) (holding that Argentine bank was separate from the Argentina State under *Bancec* and ordering dismissal of the bank on immunity grounds).  The Government's reliance on *Bancec* is a red herring.[13]

The Government also relies on the so-called "core functions test," which applies to determine whether a foreign sovereign defendant should be characterized as a foreign state or an agency or instrumentality under the FSIA.  Dkt. No. 59 at 5-6.  The core functions test is completely irrelevant.  Again, the UN is not a foreign state and the FSIA's statutory distinctions have no application here.  Furthermore, as explained above, both foreign states and their agencies and instrumentalities are entitled to immunity under the FSIA and therefore the core functions test is irrelevant to whether a foreign sovereign defendant can invoke immunity.  Nothing in the limited

---

[13] *Bancec*'s holding was based on the corporate law principle that corporations are generally treated as separate from their shareholders.  *See id.* at 630.  Given the fact that UNRWA is not a corporation and does not have shareholders, it is unclear that *Bancec* has any relevance here.

cases applying the core functions test supports the Government's argument that the test should be applied to strip a defendant of their right to invoke immunity.

In any event, the core functions test asks whether a foreign sovereign defendant's functions are predominantly governmental in nature, in which case the entity is deemed a foreign state, or whether the functions are predominantly commercial in nature, in which case the entity is deemed an agency or instrumentality of a foreign state. *See Garb v. Republic of Poland*, 440 F.3d 579, 591-92 (2d Cir. 2006); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (1994).[14] The Government repeatedly states that UNRWA is engaged in conduct that is governmental in nature. Dkt. No. 59 at 5, 9. Thus, even assuming *arguendo* that the core functions test has any relevance here, which it does not, that test does not support the Government's assertion that UNRWA is somehow analogous to an agency or instrumentality under the FSIA.

No doubt aware that the core functions test does not advance its position, the Government invents a new test that it claims as the core functions test. It asserts that courts consider four factors relating to an entity's organizational structure in applying the core functions test. Dkt. No. 59 at 6. But none of the cases cited by the Government applies such a four-factor test. In fact, those cases do not consider any of the factors recited by the Government except one – an entity's ability to contract in its own name. While the Government asserts that this factor weighs in favor of finding that an entity is separate from the state under the core functions test, the Second Circuit rejected this argument in *Garb*, explaining that "any nation may well find it convenient (as does ours) to give powers of contract and litigation to entities that on any reasonable view must count

---

[14] The core functions test is designed to aid the interpretation of terms of art under the FSIA and derives from the legislative history and policy considerations reflected in that statute. *See Garb*, 440 F.3d at 591-92; *Transaero*, 30 F.3d at 151-53. The governmental versus commercial distinction does not have any similar relevance under the CPIUN.

as part of the state itself." *See Garb*, 440 F.3d at 595 (quoting *Transaero*, 30 F.3d at 152). *Garb* further explains that entities that are separate and independent from the central government, such as local municipal governments, will qualify as foreign states, and not agencies or instrumentalities, under the core functions test. *See id.* at 596. Thus, *Garb* makes clear that the core functions test does not turn on the supposed independence of the foreign sovereign defendant.

Even putting aside the fact that the three remaining "factors" identified in the Third Statement of Interest are not part of the core functions test, those supposed "factors" do not support the Government's position that UNRWA should be stripped of its status as a subsidiary organ of the UN and its immunity under the CPIUN. Rather, UNRWA's status as a subsidiary organ follows from its establishment by resolution of the General Assembly. It does not depend on arbitrary "factors" that have no basis in the UN Charter, but are instead created without any foundation by the Government. Therefore, none of the Government's assertions concerning UNRWA's organizational structure are relevant to its status as a subsidiary organ.

First, the Government asserts that the General Assembly does not exercise sufficient control over UNRWA because "it does not control UNRWA's day-to-day activities." Dkt. No. 59 at 3. But the UN Charter does not require the General Assembly to exercise any specific level of control. Regardless, controlling UNRWA's "day-to-day" activities would be impractical and would defeat the purpose of establishing a subsidiary organ. *See* Dan Sarooshi, *The United Nations and the Development of Collective Security* 89 (2000) ("the subsidiary organ necessarily possesses a certain degree of independence from its principal organ."). Therefore, the General Assembly exercises a more appropriate level of control by, for example, defining UNRWA's mandate through resolutions, *see*, *e.g.*, G.A. Res. 78/74 (Dec. 7, 2023); G.A. Res. 78/73; G.A. Res. 77/123, ¶ 6 (Dec. 12, 2022); G.A. Res 2252 (ES-V) (July 4, 1967); G.A. Res 36/146 (Dec. 16, 1967),

- 22 -

approving UNRWA's budget, *see, e.g.*, G.A. Res. 78/254 A-C, § 26 (Dec. 22, 2023), and requiring regular reports from UNRWA's Commissioner-General.  *See, e.g.*, UNRWA, Annual Rep. of the Commissioner-General to the General Assembly – 1 January to 31 December 2022, U.N. Doc. A/78/13 (2023).  Also, at the request of the General Assembly, the UN Secretary-General appoints UNRWA's Commissioner-General (*see* G.A. Res. 302 (IV), ¶ 9 (Dec. 8, 1949)) and approves UNRWA's staff regulations and rules.  G.A. Res. 302 (IV).  The General Assembly ultimately retains full power to modify UNRWA's mandate, composition, and structure or to discontinue it entirely.

Second, the Government argues that UNRWA receives "over 90%" of its funding from voluntary contributions, rather than from the UN's regular budget.  Dkt. No. 59 at 6.  But the Charter does not require that subsidiary organs receive any specific percentage of their funding from the UN's general budget.  Regardless, UNRWA receives a higher percentage of its funding from this budget than similar subsidiary organs with operational functions.  For example, UNICEF and UNDP are funded entirely by governments and private donors,[15] while UNHCR receives only 1% of its funding from the regular UN budget.[16]

Third, the Government argues that UNRWA's employees are subject to separate staff rules from the UN Secretariat's staff rules.  Dkt. No. 59 at 8.  Again, the Charter does not require that staff rules be uniform across all principal and subsidiary organs.  Regardless, the General Assembly specifically directed UNRWA to develop separate staff rules by agreement with the Secretary-General.  G.A. Res. 302 (IV), ¶ 9(b).  These separate staff rules (which are in any case

---

[15] *See Funding to UNICEF*, UNICEF, https://www.unicef.org/partnerships/funding (last visited May 16, 2025); *UNDP Funding*, UNDP, https://www.undp.org/funding (last visited May 16, 2025).

[16] *See Global Report 2023 – Income*, UNHCR, https://reporting.unhcr.org/global-report-2023/income (last visited May 16, 2025).

modeled on the Secretariat's staff rules) are not UNRWA's independent creation, but were rather established in accordance with the General Assembly's directive and the Secretary-General's agreement.

## V.    Defendants Grandi and Lazzarini are Entitled to Diplomatic Immunity

As previously established, Defendants Grandi and Lazzarini hold the rank of Under-Secretary-General of the United Nations and are thus entitled to diplomatic immunity. Dkt. No. 17-1 at 3; Dkt. No. 50 at 19. The Government does not dispute that Mr. Grandi is entitled to diplomatic immunity. Dkt. No. 59 at 9. Thus, Mr. Grandi should be dismissed.

The Government nevertheless argues that Mr. Lazzarini is not entitled to diplomatic immunity by virtue of his role as Commissioner General of UNRWA because UNRWA is not a subsidiary organ of the UN. This argument is not only wrong for the reasons discussed above, but it also evades the real issue. Mr. Lazzarini is entitled to diplomatic immunity because he holds the rank of Under-Secretary-General of the *United Nations*. The Government has previously acknowledged the fact that Mr. Lazzarini holds the rank of Under-Secretary-General of the United Nations and does not dispute this fact now. Dkt. No. 17 at 6. The Third Statement of Interest does not dispute that a person holding the rank of Under-Secretary-General of the United Nations is entitled to diplomatic immunity. Nor could it. *See* CPIUN, art. V, § 19; *see also Brzak*, 597 F.3d at 113; *Deng v. UN*, No. 22-CV-5539, 2022 U.S. Dist. LEXIS 136501, at *6 (S.D.N.Y. July 29, 2022) ("Senior executives of the UN – including … Under Secretaries-General … enjoy full diplomatic immunity"). Accordingly, Mr. Lazzarini must be dismissed.

## VI.    The Remaining Defendants are Entitled to Immunity

The Government argues that the remaining Individual Defendants are UNRWA officials and are not entitled to immunity under the CPIUN on the grounds that UNRWA itself is not entitled

to immunity.  However, as explained above, that argument is incorrect.  *See supra* Section IV.  The Individual Defendants are entitled to immunity for their official acts – which covers all of the actions alleged in the Complaint.  Thus, the Individual Defendants must be dismissed.

The Government states that it "does continue to agree [with its supposed prior position] that any official-act immunity would not protect any person who was complicit in the October 7 terrorist attacks by Hamas."  Dkt. No. 59 at 10.  However, the Government never took this position in its Prior Submissions, but rather stated that the Individual Defendants, as UN officials, were immune from claims "relating to acts performed by them in their official capacity and falling within their functions as . . . officers or employees" of the UN.  Dkt. No. 17 at 7.  Furthermore, there is no allegation that any of the Individual Defendants were complicit in the October 7 attacks perpetrated by Hamas.  The Complaint's allegations concerning the Individual Defendants are exceedingly thin.  They are, at most, alleged to have attended UN conferences and participated in the solicitation of funding from UN Member States.  Compl. ¶¶ 619, 622-27, 630.  As confirmed by determination of the Secretary General, Dkt. No. 17-1 at 3, such alleged acts are clearly within the scope of the Individual Defendants' duties as UNRWA officials.  None are private acts, and none have anything to do with the October 7 attacks or Hamas.[17]

## VII.    The Complaint Must be Dismissed for Lack of Personal Jurisdiction

The Government does not address Defendants' personal jurisdiction arguments.  While the Government argues that the CPIUN does not apply to any Defendant, it nevertheless does not

---

[17] The Government previously took the position that there was *no jus cogens* exception to official acts immunity.  Dkt. No. 38 at 8-9.  That position is consistent with binding precedent.  *See, e.g., Matar v. Dichter,* 563 F.3d 9, 14-15 (2d Cir. 2009) (refusing to adopt a *jus cogens* exception to abrogate Israeli military officials' immunity in action brought by Palestinian survivors of an Israeli airstrike); *Belhas v. Ya'Alon,* 515 F.3d 1279, 1288 (D.C. Cir. 2008) (Israeli general immune from claims of *jus cogens* violations).  The Government does not appear to have changed its position to advocate for overturning *Matar* and adopting a *jus cogens* exception to immunity.

- 25 -

challenge Defendants' position that the CPIUN would render Defendants immune from service of process to the extent that the CPIUN applies. Defendants therefore affirm their primary position that all Defendants are immune from service of process under the CPIUN.

Furthermore, despite the fact that this case was commenced almost a year ago, Plaintiffs have not even attempted to serve Defendants Lazzarini, Grandi, Krähenbühl, Mitchell or Stenseth. Thus, even disregarding *arguendo* their immunity from service of process under the CPIUN, the Court clearly lacks personal jurisdiction over these Defendants.

## <u>CONCLUSION</u>

The Court should dismiss this action. Defendants reserve all rights and defenses.[18]

Dated: New York, New York
      May 22, 2025

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:  */s/ Kevin A. Meehan*
Kevin A. Meehan
Robert Groot
Marwa Farag
101 Park Avenue
New York, New York 10178
Tel.:  (212) 696-6000
Fax:  (212) 697-1559
Email: kmeehan@curtis.com

*Attorneys for Defendants*

---

[18] Defendants are entitled to a determination of their immunity before litigating any other issues. *See Process & Indus. Devs. v. Federal Republic of Nigeria.*, 962 F.3d 576, 584 (D.C. Cir. 2020).

- 26 -

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(c) of the Rules of this District and Rule III.D of the Rules of this Court, I hereby certify that the accompanying Response to the Government's Third Statement of Interest contains 8,557 words, excluding the parts of the document that are exempted by Rule 7.1(c). This certificate was prepared in reliance on the word-count function of Microsoft Word.

Dated: New York, New York
   May 22, 2025

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:  _/s/ Kevin A. Meehan_
Kevin A. Meehan
101 Park Avenue
New York, New York 10178
Tel.:  (212) 696-6000
Fax:  (212) 697-1559
Email: kmeehan@curtis.com

_Attorney for Defendants_

- 27 -