# Exhibit T

ST/LEG/SER.C/38

# UNITED NATIONS JURIDICAL YEARBOOK
## 2000



UNITED NATIONS • NEW YORK, 2007

8. As far as the proposal for UNHCR to participate as a member on the Technical Committee relating to the trusteeship, we recognize the value that UNHCR would bring to the Committee, as discussed by the Branch Office. However, we believe that such participation poses a risk of subjecting UNHCR and/or its staff to the national laws and authorities as well as potential liability arising out of the activities of the trusteeship. We also continue to believe that there is a risk that UNHCR and/or its staff could be placed in conflict with policies of the Organization, as a result of participating in the affairs and decision-making of the trusteeship. As discussed below, rather than being a member on the Technical Committee, UNHCR could provide assistance to the Technical Committee, e.g. by providing advisory services to the Committee.

9. Taking into account the above and consistent with the long-standing practice in these matters, we believe that authorization from the General Assembly or other appropriate legislative body would be required in order for UNHCR to participate as the founder of the trusteeship and a member of its Technical Committee. We consider that the best course of action would be for the Government to remain as founder of the trusteeship and for UNHCR to cooperate with the Government and provide assistance in support of the trusteeship. In such case, UNHCR could conclude a cooperation agreement with the Government setting out the manner in which it would cooperate with the Government and provide assistance for the activities of the trusteeship.

23 March 2000

11. DEFINITION OF "UNITED NATIONS AFFILIATED BODIES" IN RELATION TO THE STATUTE OF THE JOINT INSPECTION UNIT—UNITED NATIONS SUBSIDIARY ORGANS AND BODIES—QUESTION WHETHER SUCH BODIES MUST ABIDE BY THE PROVISIONS OF THE STATUTE

*Memorandum to the Executive Secretary, Joint Inspection Unit*

*Introduction*

This is in response to your memorandum of 14 March 2000, in which you seek the opinion of this Office with regard to the following three questions:

(*a*) In the light of the provisions of paragraph 2 of article 1 of the statute of the Joint Inspection Unit (JIU), what is the meaning of the term "United Nations affiliated bodies" used in the latest report of JIU?

(*b*) Did the General Assembly by adopting the JIU statute commit all "United Nations affiliated bodies" to abide by the provision of the Statute?

(*c*) Is the JIU list of "United Nations affiliated bodies" comprehensive?

The JIU statute was approved by the General Assembly in its resolution 31/192 of 22 December 1976. Paragraph 2 of article 1 of the statute, which defines the authority of JIU vis-à-vis the organizations of the United Nations system, states that:

"2. The Unit shall perform its functions in respect of and shall be responsible to the General Assembly and similarly to the competent legislative organs of those specialized agencies and other international organizations within the United Nations system which accept the present statute (all of which shall hereinafter be referred to as the organizations). The Unit shall be a subsidiary organ of the legislative bodies of the organizations."

The latest report of JIU, submitted to the General Assembly at its fifty-fourth session,[6] in chapter II entitled "Participating organizations", states that the organizations which "*have accepted* the statute of the Joint Inspection Unit" (emphasis added) encompass the United Nations, including its affiliated bodies, ILO, FAO, UNESCO, ICAO, WHO, UPU, ITU, WMO, IMO, WIPO, UNIDO and IAEA. The report further clarifies in a footnote to the term "affiliated bodies" that such bodies include UNICEF, UNCTAD, UNDP, UNEP, UNFPA, UNDCP, WFP, UNRWA, Habitat and UNHCR.

*The United Nations and its subsidiary organs are not required to adopt a special decision accepting the statute of JIU*

First, we would like to observe that the introductory wording of chapter II does not quite adequately reflect what transpires from paragraph 2 of article 1 of the JIU statute. Under that paragraph, JIU is, first of all, responsible to the General Assembly, which is the organ of the United Nations that established JIU by resolution 31/192 and can either amend its statute, or, if necessary, dissolve JIU. Under paragraph 2 of article 1 of the statute, in addition, JIU is authorized by the General Assembly to perform its functions in respect of and be responsible to the competent legislative organs of those specialized agencies and other organizations within the United Nations system which accept its statute.

The term "the United Nations" is defined by the Charter of the United Nations, the preamble to which states that the respective Governments "do hereby establish an international organization to be known as the United Nations". Thus, the term "the United Nations" refers to the international organization established by the Charter, including all the principal and subsidiary organs provided for by the Charter or established on the basis of the authority conferred by the Charter. This term excludes organizations established by other intergovernmental agreements as separate entities with their own legal personality. The term "the United Nations system", although it has no definition based on a formal legal source, is usually understood to encompass the United Nations, its specialized agencies and other related organizations. The term "the organizations within the United Nations system", which is used in resolutions of United Nations organs and other official documents as an addressee, does not include the United Nations proper as an organization.

It follows from the foregoing that, strictly legally speaking, the United Nations should not be listed as an organization which has accepted the statute of JIU in accordance with its provisions. The United Nations and its subsidiary organs are bound by the statute of JIU through General Assembly resolution 31/192 which approved the statute and established JIU. Unlike specialized agencies and other intergovernmental organizations, the United Nations and its subsidiary organs are not, therefore, required to adopt any additional decisions stipulating that they accept the JIU statute. For the reasons explained below, we suggest that the introductory phrase of chapter II of JIU reports in the future be revised to read as follows: "In accordance with its statute, the Joint Inspection Unit performs its functions with respect to the United Nations, including its programmes, funds and offices, and with respect to the following organizations which have accepted its statute in accordance with its provisions".

*United Nations subsidiary organs and bodies*

We do not have any information in our files as to why JIU in its reports uses the term "United Nations affiliated bodies" with reference to entities which are "sub-

sidiary bodies of the United Nations". Article 7 of the Charter, which establishes the six principal organs of the United Nations, in paragraph 2 grants general authority to establish subsidiary organs. The paragraph provides that "such subsidiary organs as may be found necessary may be established in accordance with the present Charter". In Article 22, the Charter gives the General Assembly specific authority to set up "such subsidiary organs as it deems necessary for the performance of its functions". Article 29 of the Charter stipulates that the Security Council may establish such subsidiary organs as it deems necessary for the performance of its functions.

Although the term "subsidiary body" is not defined in the Charter or in General Assembly or Security Council resolutions or their rules of procedure, it has always been understood in United Nations practice—and this Office has always advised to that effect—that one body is a "subsidiary" of another if it has in fact been established by the other body. As noted in the *Repertory of Practice of United Nations Organs* (1955, vol. I, Article 7, para. 9), in the practice of the United Nations such expressions as "Commissions", "Committees", "subsidiary organs", "subsidiary bodies" and "subordinate bodies" have been used interchangeably. However, for the purposes of the *Repertory*, all such bodies are treated as falling within the scope of the term "subsidiary organs", which is used in Article 7 of the Charter.

As pointed out in the *Repertory*, subsidiary organs of the United Nations vary widely with respect to their membership, structure, scope of activity, powers, method of reporting and duration. Subsidiary organs are most frequently composed of States. Their membership may include all Member States, as in UNCTAD, or a number of specified Member States, as in the case of UNDP or UNICEF. Some subsidiary organs are composed of individuals, appointed in their individual capacity, for example, the Investment Committee, the Advisory Committee on Administrative and Budgetary Questions or JIU. In some instances, as in the case of the Administrative Committee on Coordination, a subsidiary organ is composed of the executive heads of all organizations of the United Nations system as well as the executive heads of United Nations programmes, funds and offices. There are also subsidiary organs which are judicial bodies and as such have substantial independence within the scope of their responsibilities. One example is the United Nations Administrative Tribunal, established by the General Assembly. Other examples are the two International Tribunals, for the former Yugoslavia and for Rwanda, established by the Security Council. Basic information about United Nations subsidiary organs may be found in chapter III of the *Repertory* which relates to Article 7 of the Charter and contains the analytical summary of practice concerning subsidiary organs. Additional information about subsidiary organs may be found in volume I of Supplements 1 to 5 to the *Repertory*. Volume I of *Supplement 6* has not been published yet. Volume I of the *Repertory* and of its Supplements also contains information regarding Article 22 of the Charter, which gives the General Assembly the authority to establish subsidiary organs. This information includes lists of the subsidiary organs established by the General Assembly.

*What is the meaning of the term "United Nations affiliated bodies"?*

With reference to your first question, we would like to point out that, with the exception of the World Food Programme, all entities listed in the report of JIU as "United Nations affiliated bodies" are subsidiary bodies of the United Nations. WFP was established by resolutions of the General Assembly and the FAO Conference. Therefore, it is a joint subsidiary body of both the United Nations and FAO. Unlike

other subsidiary organs of the United Nations, the entities listed in the JIU report belong to the category of United Nations subsidiary bodies which enjoy a considerable degree of autonomy from their parent organ or, in the case of WFP, organs. Although these subsidiary bodies are still not completely independent, since their parent organ or organs can always change their structure or even terminate their activities (for example, by resolution 48/162 of 20 December 1993, the General Assembly decided that the then governing organs of UNDP, UNICEF and WFP, subject to the agreement of the FAO Conference, should be transformed into Executive Boards and should have 36 members each), they have substantial operational independence in the areas of their mandated activities and in financial matters since most of them are financed through voluntary contributions. Since these subsidiary bodies carry out much of their substantive work in the limited area of their mandated activities, such as caring for refugees (UNHCR and UNRWA), nurturing children (UNICEF) etc., their activities closely resemble those of specialized agencies. There is no official definition of this type of United Nations subsidiary body which would formally distinguish them from other United Nations subsidiary organs. However, because of their special nature these subsidiary bodies have always been treated differently within the United Nations, which is reflected by the fact that the executive heads of special secretariats of these bodies are invited to participate in the work of the Administrative Committee on Coordination. In United Nations practice these subsidiary bodies are usually referred to as "United Nations programmes, funds and offices". Therefore, if for any particular reason JIU in its reports wants to single out the United Nations subsidiary organs which have substantial operational autonomy, we suggest that the term "United Nations affiliated bodies" be replaced with "United Nations programmes, funds and offices".

*Should "United Nations affiliated bodies" abide by the provisions of the JIU statute?*

Since, pursuant to paragraph 2 of article 1 of its statute, JIU is entrusted with the authority to perform its functions in respect of the General Assembly, the Unit, undoubtedly, also has the authority to perform its functions in respect of the subsidiary organs of the Assembly, as well as with regard to such other subsidiary bodies of the United Nations, whose scope of activities falls within the purview of the power of the General Assembly as it is defined in Chapter IV of the Charter. The statute, thus, is binding on all United Nations subsidiary bodies, without distinction between the various types, in respect of which the General Assembly may exercise its authority. Consequently, United Nations programmes, funds and offices must abide by the provisions of the JIU statute. Acceptance of the statute, as a condition for the exercise by JIU of its authority, under the statute is only required in the case of specialized agencies and other international organizations within the United Nations system. This condition does not apply to United Nations programmes, funds and offices despite their substantial operational autonomy from the General Assembly.

*Is the JIU list of "United Nations affiliated bodies" comprehensive?*

We would like first to reiterate our observation that the use of the term "United Nations affiliated bodies" in JIU reports is not correct because the entities listed under this term cannot be called affiliated bodies. As to the question whether the JIU list is comprehensive on the basis of other criteria, we are not in a position to answer this question, since JIU does not specify in its request the criteria on the basis

of which the composition of the list of a special group of United Nations subsidiary bodies is be determined. Should JIU consider it advisable to include in the list only the United Nations subsidiary bodies that have substantial operational autonomy, it may wish to place on the list the United Nations programmes, funds and offices that are invited to participate in the work of the Administrative Committee on Coordination.

5 April 2000

12. AUTHORITY OF THE SECRETARY-GENERAL IN AMENDING THE UNITAR STATUTE—QUESTION WHETHER FULL-TIME UNITAR SENIOR FELLOWS CAN BE GRANTED THE STATUS OF UNITED NATIONS OFFICIALS

*Letter to the Executive Director of UNITAR, Geneva*

In your letter of 13 March 2000 concerning amendments to the UNITAR statute, you refer to the fact that the General Assembly in its resolution 43/201 of 20 December 1988 takes note of the report of the Secretary-General contained in document A/43/697/Add.l, but does not explicitly endorse the amendments to the UNITAR statute proposed in that report. As also noted in your letter, the same resolution introduced an additional provision which grants the full-time UNITAR senior fellows the status of officials of the United Nations. Following the adoption of the resolution this provision became article VI, paragraph 2, of the UNITAR statute. In the light of the foregoing, you inquire whether, in the absence of any formal acceptance by the Assembly of the amendments to the UNITAR statute set forth in the Secretary-General's report, it may be taken for granted that these amendments should be incorporated in the statute.

With reference to your inquiry, please be advised as follows.

UNITAR was established by the Secretary-General following the adoption on 11 December 1963 by the General Assembly of its resolution 1934 (XVIII). By paragraph 2 of that resolution, the Assembly requested the Secretary-General to take the necessary steps to establish the Institute, taking account of its frame of reference, as defined in paragraph 3 of General Assembly resolution 1827 (XVII) of 18 December 1962 and of the views expressed at the eighteenth session of the Assembly and at the thirty-sixth session of the Economic and Social Council. Thus, the General Assembly vested the Secretary-General with the authority to establish the Institute. In pursuance of that authority the Secretary-General approved the statute of UNITAR and, as provided for in article XI of the statute, may amend it after consultations with the Board of the Institute.

By resolution 42/197 of 11 December 1987, the General Assembly, without undermining the authority of the Secretary-General to amend the statute, requested the Secretary-General to restructure the Institute as specified in paragraph 4 of the resolution. This request was implemented by the Secretary-General through the adoption of a set of amendments to the UNITAR statute which were brought to the attention of the General Assembly at its forty-third session in the Secretary-General's report on the subject. As pointed out in the report, the amendments to the statute adopted by the Secretary-General incorporated the proposals of the Board of Trustees of the Institute, which had been consulted on the amendments. It appears that the Assembly was satisfied with the implementation of its request, because in