# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ESTATE OF TAMAR KEDEM SIMAN TOV, BY HEIR-AT-LAW GAD KEDEM, ET AL., <br><br> Plaintiffs, <br> v. <br><br> UNITED NATIONS RELIEF AND WORKS AGENCY ("UNRWA"), ET AL., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. <br> <u>24 Civ. 4765 (AT)</u> |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO THE APRIL 24, 2025 <br> LETTER SUBMITTED BY THE UNITED STATES GOVERNMENT

AMINI LLC
Bijan Amini
Avery Samet
John W. Brewer
131 West 35th Street, 12th Floor
New York, New York 10001
Tel. (212) 490-4700

MM~LAW LLC
Gavriel Mairone (admitted to S.D.N.Y. Bar)
 Ariel Mairone (N.Y. state bar # 4993259,
 pro hac vice application to be filed)
Jonathan Goldberg (pro hac vice application
to be filed)
Tayla Woolf (pro hac vice application
to be filed)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Tel. (312) 253-7444

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................. 5

I.    DEFENDANTS BEAR THE BURDEN OF SHOWING THAT UNRWA IS "THE
      UNITED NATIONS" FOR PURPOSES OF CPIUN IMMUNITY ................................ 5

II.   DEFENDANTS CANNOT ESTABLISH THAT UNRWA IS "THE UNITED NATIONS"
      FOR PURPOSES OF CPIUN IMMUNITY ................................................................... 7

   a.  This Court Should Give the Government's Views Such Weight as They Are Due Based
       on Their Persuasiveness ........................................................................................... 7

   b.  There Is No Legal Presumption That Immunity Extends to All of an Immune Entity's
       Affiliates, Agencies, and Instrumentalities ............................................................. 8

   c.  Establishing that UNRWA Is Not a "Specialized Agency" Does Nothing to Establish
       That It Is Therefore Entitled to CPIUN Immunity ..................................................11

   d.  There Is No Basis for the Argument That Absolutely Any Entity the General Assembly
       Creates Is Entitled to Absolute Immunity ............................................................. 13

   e.  The Alleged Views of Other Countries Are Both Irrelevant and Are Misstated By
       Defendants .............................................................................................................. 18

   f.  The Court Should Reject the Defendants' Immunity Arguments Based On Their Failure
       to Establish that UNRWA  Is "the United Nations" ............................................... 19

III.  DEFENDANTS LAZZARINI AND GRANDI HAVE STILL NOT SHOWN THEY ARE
      ENTITLED TO DIPLOMATIC IMMUNITY ............................................................. 19

IV.   DEFENDANTS' "PERSONAL JURISDICTIONAL" ARGUMENTS HAVE NOTHING
      TO DO WITH THE GOVERNMENT'S ARGUMENTS AND ARE MERITLESS ....... 20

CONCLUSION ........................................................................................................... 21

CERTIFICATE OF WORD COUNT ........................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*,
   585 U.S. 33 (2017) ....................................................................................................... 17

*Arbaugh v. United States*,
   546 U.S. 500 (2006) ........................................................................................................ 5

*Bolivarian Republic of Venezuela v. Helmerich* & Payne Int'l Drilling Co.,
   581 U.S. 170 (2017) ........................................................................................................ 9

*Broidy Capital Mgt. v. LLC v. Benomar*,
   944 F.3d 436 (2d Cir. 2019) ........................................................................................... 6

*Ex parte Republic of Peru*,
   318 U.S. 578 (1943) ........................................................................................................ 5

*Filus v. LOT Polish Airlines*,
   907 F.2d 1328 (2d Cir. 1990) ......................................................................................... 9

*Flores v. Southern Peru Copper Corp.*,
   414 F.3d 233 (2d Cir. 2003) ......................................................................................... 17

*Friends of the East Hampton Airport, Inc. v. Town of East Hampton*,
   841 F.3d 133 (2d Cir. 2016) ......................................................................................... 14

*Georges v United Nations*,
   834 F.3d 88 (2d Cir. 2016) ........................................................................................... 15

*Hennessey v. University of Kansas Hospital Authority*,
   53 F.4th 516 (10th Cir. 2022) ....................................................................................... 16

*Ocean Line Holdings Ltd. v. China National Chartering Corp.*,
   578 F. Supp. 2d 621 (S.D.N.Y. 2008) ............................................................................ 6

*Pablo Star Ltd. v. Welsh Government*,
   961 F.3d 555 (2d Cir. 2020) ........................................................................................... 6

*Rodriguez v. Pan Am. Health Org.*,
   29 F.4th 706 (D.C. Cir. 2022) ................................................................................... 9, 11

*Shamsee v. Shamsee*,
   74 A.D.2d 357 (2d Dep't 1980) ................................................................................... 15

*Turkiye Halk Bankasi A.S. v. United States*,
    598 U.S. 264 (2023) ................................................................................ 5

*United States v. Norman*,
    935 F.3d 232 (4th Cir. 2019) ............................................................ 14-15

*United States v. Turkiye Halk Bankasi A.S.*,
    120 F.4th 41 (2d Cir. 2024) ...................................................................... 8

**Statutes**

22 U.S.C § 288 ............................................................................................ 10

28 U.S.C. §§ 1331 ........................................................................................ 5

28 U.S.C. §§ 1350 ........................................................................................ 5

28 U.S.C. §§ 1367 ........................................................................................ 5

28 U.S.C. §§ 1603(a) .................................................................................... 8

28 U.S.C. §§ 1604 ........................................................................................ 8

**Rules**

Fed. R. Civ. P. 4(f)(3) ............................................................................... 21

**Treaties**

Convention on the Privileges and Immunities of the United States,
    Feb. 13, 1946, 21 U.S.T. 1422 ...................................................... passim

UN Charter,
    59 Stat. 1031 ................................................................................. passim

**UN Resolutions**

G.A. Res. 302(IV) (Dec. 8, 1949) ......................................................... 17-18

UN Security Council Resolution 1542,
    S/RES/1542 (2004) .................................................................................. 15

**Executive Orders**

Exec. Order No. 10399, 17 Fed. Reg. 8648 (Sep. 29, 1952) .....................................................9-10

Plaintiffs respectfully submit this response to the Defendants' latest filing (Doc. No 62, "D. Resp. to Gov't") responding to the letter submitted to the Court on behalf of the U.S. Government ("Government") on April 24, 2025 (Doc. No. 59, the "2025 Gov't Statement") addressing Defendants' immunity defense.[1]

## PRELIMINARY STATEMENT

In their initial motion papers, Defendants prominently and repeatedly argued this Court needed to defer to the Government's views and not examine the legal principles for itself. (Doc. No. 50 at 10, 11, 19, 20, 22, 27 and 28; Doc. No. 55 at 3-4).  Now that the Government has reconsidered its views, Defendants have reversed themselves and claim that the Government is entitled to "no deference" whatsoever (Doc. No. 62 at 9, 15).  The only consistent thread in the Defendants' arguments is their desire to be unaccountable for knowingly providing material assistance to a designated terrorist organization.

Importantly, Defendants' latest brief is directed to just one of the many issues at stake in this immunity briefing, albeit a threshold one:  whether UNRWA should be considered "the United Nations" for purposes of the CPIUN.  To decide this question, this Court must resolve doubts against Defendants and in Plaintiffs' favor.  That is because direct Supreme Court and Second Circuit precedent instruct that immunity is an affirmative defense which Defendants bear the burden of proving by a preponderance of the evidence.

Second, it remains Plaintiffs' position that this Court should evaluate Defendants' affirmative defense based on ordinary principles of civil procedure and statutory interpretation, without deference to political actors.  Treaties and statutes should be interpreted first, on their face, and then, if ambiguous, based upon legislative history and historical context.  Record evidence

---

[1] All defined terms used herein have the same meanings as in Doc. No. 53.

should be submitted to back up factual claims.  While the well-reasoned views of the Government may be important – particularly as to the history of the executive branch's dealings under a treaty – a Court must determine the meanings of treaties and statutes.  In no event, however, is this Court required to defer to the purported views of foreign governments or the UN itself, much less the Defendants.

Third, despite the voluminous number of pages now devoted to this topic, it remains *undisputed* that no treaty, statute or precedential decision expressly grants UNRWA immunity from suit in the United States.  Instead, Defendants argue that the CPIUN implicitly grants immunity to the "subsidiary organs" of the United Nations and that UNRWA is such a "subsidiary organ."  But the CPIUN does *not* grant immunity to "subsidiary organs."  And, historically, the United States has treated agencies and instrumentalities of international states and organizations separately from the state or organization with immunity, including other UN agencies.

Fourth, UNRWA is not a "subsidiary organ" entitled to immunity.  When created, UNRWA was not designated as such an organ, nor has the United Nations uniformly characterized UNRWA as such, including in this very lawsuit, nor can Defendants point to an official definition of the phrase "subsidiary organ," whether in the United Nations Charter or otherwise.  The evidence on this motion, previously submitted by Plaintiffs and not controverted by Defendants, shows that UNRWA functions as a separate entity from the United Nations:  it is financed separately from the United Nations, its sets policy separately from the United Nations, it enters into its own separate agreements with the United Nations, its employees are not treated as staff of the United Nations and it does not function in any way like the principal organs of the United Nations which are specifically identified in the United Nations' charter.  (*See* Doc. No. 25 at 14-16).  The Government's letter provides additional facts concerning that separateness and analogizes

2

UNRWA to a UN "specialized agency" – which does not enjoy immunity under the CPIUN – in both form and function. As discussed below, UN lawyers have previously agreed with this analogy.

Fifth, Defendants have not controverted the legislative record concerning the Senate's ratification of the CPIUN. The Senate was concerned that the immunity granted by the CPIUN be limited only to specified organizations and to a discrete set of officials; in response the administration assured the Senate that CPIUN would not expand the protections of the existing IOIA and would not cover other United Nations agencies. (Doc. No. 25 at 8-10). Indeed, the evidence shows that the same Congress that asked these questions and received these answers was also concerned about UNRWA and its activities. (Doc. No. 25 at 10 n. 5). The Government's April Letter adduces additional facts concerning the ratification history, which again UNRWA does not address.

Instead, Defendants make the remarkable argument that any organization created by the United Nations General Assembly must be considered a "subsidiary organ" entitled to absolute immunity and, further, that no state, including the United States can ever have anything to say about it. (Doc. No. 62 at 16 and 24). According to Defendants, Congress effectively handed the General Assembly a blank check to "deem" (Doc. No. 62 at 24) by resolution any organization it chooses to "establish" immune from the laws of the United States, regardless of the purpose, size, powers, functions of the organization, even if, like UNRWA, the organization finances and operates itself separately from the United Nations. That is a far-reaching proposition with unsettling consequences, especially considering the tens of thousands of people employed by UNRWA and the hundreds of thousands employed by the myriad UN-related agencies which today constitute the "UN System." That the Generally Assembly could grant absolute immunity from U.S. law and

judicial jurisdiction to such a wide-range of persons would contradict the advice given to the Senate during ratification. Nothing in the text, purpose or history of the CPIUN supports that proposition.

Finally, it bears repeating that Defendants' response brief does not address certain important questions bearing on immunity. Most importantly, Defendants do not address Plaintiffs' jus cogens arguments: that under United States treaties, international law, as well as binding and non-binding United Nations resolutions, any provision of a treaty or resolution that conflicts with jus cogens norms is invalid. The implication of Defendants' argument is that the General Assembly, by a simple majority vote, could create an organization that has absolute immunity from jus cogens norms, without even the approval of the U.S Government, and merely by implication. That simply cannot be reconciled with governing law and would provide UNRWA with more expansive immunity to participate in atrocities then even nation states and governmental officials.

No person or entity should have absolute impunity for actions in support of genocide, mass rape or ethnic cleansing, let alone an international organization and its officers. It is for this reason that the *actual* United Nations, through its governing bodies and official resolutions has prohibited the acts which Defendants engaged in and has declared them fundamentally contrary to its purposes. Defendants did not undertake those acts at the direction of the United Nations. In fact, they ignored warnings from the Security Council and other UN bodies that Defendants' actions were affirmatively supporting Hamas. (Cmplt. ¶¶ 558-59, 563-65, 576, 593). Defendants' hyper-technical argument that the CPIUN implicitly handed the General Assembly a blank check to establish organizations with absolute immunity to commit atrocities, even contrary to the goals of the United Nations, should be rejected.

The Plaintiffs, who were systematically murdered, tortured, kidnapped and sexually assaulted as a result of the support provided by Defendants to Hamas deserve a chance to prove

their well-pleaded allegations in Court and obtain some measure of justice.  The Court should deny Defendants' motion to dismiss and order this case to proceed to discovery.

## ARGUMENT

**I.    DEFENDANTS BEAR THE BURDEN OF SHOWING THAT UNRWA IS "THE UNITED NATIONS" FOR PURPOSES OF CPIUN IMMUNITY**

Defendants (D. Resp. to Gov't at 4-5) assert that "jurisdictional immunity is a question of subject matter jurisdiction," citing various Southern District cases, and claim that the Government is wrong to suggest otherwise.  But the Supreme Court has expressly rejected the Defendants' assertion, holding for example in *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 270-71 (2023) (citation and quotation omitted), that in a case not covered by the FSIA, common-law sovereign immunity "is a rule of substantive law governing the exercise of the jurisdiction of the courts, not an exception to a general statutory grant of subject matter jurisdiction."    The Court noted (*ibid.*) that some of its prior cases had loosely spoken about "jurisdiction" but that it was a misinterpretation to think that immunity claims were therefore a threshold subject-matter jurisdiction issue.  *See also Arbaugh v. United States*, 546 U.S. 500, 510 (2006) (quotation omitted) ("[j]urisdiction … is a word of many, too many, meanings").  There was nothing novel about the statement in *Turkiye Halk Bankasi*; it followed directly from older cases like *Ex parte Republic of Peru*, 318 U.S. 578, 588 (1943), in which it was held that "the question … is not whether there was jurisdiction in the district court" pursuant to the usual rules for admiralty in rem jurisdiction, "but whether the jurisdiction which the court had already acquired … should have been relinquished in conformity to an overriding principle of substantive law," i.e. the Peruvian government's claim of sovereign immunity regarding a ship it owned.  Here, Plaintiffs have met their own burden of showing subject-matter jurisdiction by alleging causes of action that are within this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350 & 1367.  Cmplt. ¶¶ 10-11.  That is all that

the law requires, and Defendants have not disputed that these properly-invoked jurisdictional statutes, if not overridden by their immunity claims, would give this Court subject-matter jurisdiction.

Defendants likewise misstate the holding of the sole Second Circuit authority they invoke (D. Resp. to Gov't at 5) on the burden question. *Broidy Capital Mgt. v. LLC v. Benomar*, 944 F.3d 436, 440 (2d Cir. 2019), holds that (emphasis added) "*where a defendant has demonstrated diplomatic status*, plaintiffs bear the burden of proving by a preponderance of the evidence that an *exception* to diplomatic immunity applies," thus confirming that the *defendant* bears the initial burden of showing that he or she is, in fact, a diplomat.[2]    Similarly, *Pablo Star Ltd. v. Welsh Government*, 961 F.3d 555, 559-60 (2d Cir. 2020), expressly holds that a defendant claiming FSIA immunity "bears the burden of establishing a prima facie case that it is a foreign sovereign" before the potential applicability of any of the statutory exceptions to FSIA immunity would even need to be addressed. *See also Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621, 622-28 (S.D.N.Y. 2008) (immunity defense rejected when Chinese corporation failed to show that it was agency or instrumentality of Chinese government).[3]

---

[2] We previously pointed out this misstatement of *Broidy* with this same quotation, Doc. No. 53 at 5, but Defendants have persisted with this error.

[3] Defendants irrelevantly mention (D. Resp. to Gov't at 5 n. 3) that the Government has previously disagreed with the Second Circuit on which side bears the burden to prove the applicability of an exception in an FSIA case, but that has nothing to do with the clearly-established rule that the defendant bears the initial burden, whether to show that it is a "foreign state" in the FSIA context, or to show that it is "the United Nations" here.

## II.    DEFENDANTS CANNOT ESTABLISH THAT UNRWA IS "THE UNITED NATIONS" FOR PURPOSES OF CPIUN IMMUNITY

### a.    This Court Should Give the Government's Views Such Weight as They Are Due Based on Their Persuasiveness

Defendants now claim that all parties to this lawsuit agree that the views of the Government are entitled to no deference, which is true now that Defendants have reversed themselves. Defendants, however, are wrong to suggest that the *reason* deference is not due is because it has changed a long-held position. D. Resp. to Gov't at 3-4. There is no long-standing United States Government position that UNRWA and its executives are entitled to immunity under the CPIUN or otherwise. In the Government's original filings in this action (the "2024 Government Filings"), it did not cite a previous interpretation of UNRWA's immunity, and indeed, the Government clarified its initial position on its subsequent brief.

Moreover, as Plaintiffs previously argued, the 2024 Government's Filings were themselves inconsistent with the Government's previous interpretations of the CPIUN when presenting the treaty for ratification and in subsequent litigation. Doc. No. 25 at 27-8; 53 at 15-16; Doc. No. 42 at 6-7.

Plaintiffs continue to maintain that the Court should rule on these matters without deference to the Government position simply because it is the Government who expresses them. Rather, like any amicus submission, the Government's submission should be taken into account by the Court to the extent it is thoughtful, thorough, and persuasive. We believe the 2025 Gov't Statement meets those criteria and on its face reflects a holistic analysis that was absent from the 2024 Government Filings.[4]

---

[4] We disagree with Defendants' contention that the 2025 Government Statement is "political" while the 2024 Government Filings were supposedly not. As stated in the Government's initial filing, their amicus position resulted from a request from the United Nations to the United States

   *b.   There Is No Legal Presumption That Immunity Extends to All of an Immune
        Entity's Affiliates, Agencies, and Instrumentalities*

The Defendants respond to the Government's showing (2025 Gov't Statement at 3) that

UNRWA is best understood as an "affiliate or instrumentality" of the UN rather than an integral

part of the UN itself by claiming that it doesn't matter because the FSIA includes agencies and

instrumentalities of foreign states within its definition of "foreign state."  D. Resp. to Gov't at 19

(citing 28 U.S.C. §§ 1603(a), 1604).

      But this is a red herring.  The CPIUN is not the FSIA, and the UN is not a "foreign state"

within the definition of the FSIA.  Moreover, FSIA represented a change from preexisting law that

distinguished for immunity purposes between foreign states themselves, on the one hand, and their

agencies and instrumentalities on the other.  That was a clearly-understood distinction at the time

the CPIUN was first proposed in 1946.  Against that pre-FSIA background, the CPIUN's failure to

specify that agencies and instrumentalities are also entitled to section 2 immunity, the way the

FSIA's text explicitly so specifies, is a clear textual sign that the UN's own immunity does not

cover them because they are legally distinct from the UN itself.

      Just last year, the Second Circuit reaffirmed the ongoing importance of this distinction (in

situations not governed by the FSIA) in *United States v. Turkiye Halk Bankasi A.S.*, 120 F.4th 41

(2d Cir. 2024).  The defendant bank was owned by the Republic of Turkey and was thus, as an

agency or instrumentality, clearly a "foreign state" for FSIA purposes, but the Supreme Court had

held that the FSIA has no application to criminal matters and accordingly remanded for the Second

Circuit to consider the defendant's claim of common-law sovereign immunity.  It was undisputed

(*id*. at 52) that "the United States would not subject Turkey – a state qua state – to criminal

---

Ambassador to the United Nations for the United States.  *See* Doc. No. 17-1 (initial UN letter
making that request).  That is certainly not an apolitical act.

prosecution," but the court explicitly rejected the defendant's argument (*ibid.*) "that the common law extends absolute immunity from prosecution not only to foreign sovereigns but also to any entity owned and controlled by a foreign state" and thus rejected the defendant's claim of immunity. The same result should obtain here for the same reasons.

Indeed, the FSIA's inclusion of agencies and instrumentalities of foreign governments within its definition of "foreign state" is carefully balanced out by the FSIA's various explicit exceptions to immunity – exceptions which the CPIUN does not contain. It is only the "commercial activities" exception, in particular, that makes it workable policy for FSIA immunity to be extended, subject to that exception, to a wide variety of agencies and instrumentalities such as the government-owned bank in *Turkiye Halk Bankasi*, or the government-owned oil company in *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170 (2017) (cited by Defendants), or the government-owned airline in *Filus v. LOT Polish Airlines*, 907 F.2d 1328 (2d Cir. 1990). But Defendants' argument requires this Court to accept that if the UN were to decide to operate a commercial bank or an oil company or an airline as a so-called "subsidiary organ," that subsidiary automatically would have absolute immunity under the CPIUN, and could thus commit with impunity ordinary torts and breaches of contract that no such entity owned by a foreign government would have immunity for.

Including "agencies and instrumentalities" of immune entities within that entity's own immunity would also be contrary to the historical practice under the IOIA. In particular, the D.C. Circuit noted in *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 712 (D.C. Cir. 2022), that PAHO was entitled to IOIA immunity (subject to exceptions found applicable in that particular lawsuit) because it had been separately designated by President Eisenhower in 1960. But PAHO had since

1949[5] been the Western Hemisphere affiliate or instrumentality of the World Health Organization, which had itself been designated for IOIA protection by President Truman (Exec. Order No. 10399, 17 Fed. Reg. 8648 (September 29, 1952)) shortly after its founding in 1948.  In other words, the later specific designation of PAHO for IOIA protection shows that the earlier designation of the WHO itself did not extend to its affiliates such as PAHO.   This is underscored by the text of the IOIA, which in sharp contrast to that of the FSIA does not extend immunity protection to affiliates or instrumentalities in its definition of "international organization."  22 U.S.C § 288.  It is undisputed that UNRWA has never been designated by Executive Order as an "international organization" entitled to IOIA protection, even though President Truman, President Eisenhower, or any of their successors could have elected to do so.

This background interpretative principle is crucial to the immunity analysis here. Defendants cannot and do not dispute that as a factual matter UNRWA is an agency or instrumentality that is distinct from the UN itself.  They wrongly claim that this is legally irrelevant because they know that they cannot support their immunity claims under any factual inquiry into the actual function and role of UNRWA and how it relates to the core functions of the UN itself. Doc. No. 53 at 7-8; Doc. No. 25 at 14-16.  The 2025 Gov't Statement engages in exactly that analysis, consistent with Plaintiffs' prior submissions on immunity, and thus shows why UNRWA cannot be considered indistinguishable from the UN itself for immunity purposes.  2025 Gov't Statement at 9.

---

[5] "In 1949, PAHO Director Dr. Fred Soper signs an agreement with the World Health Organization (WHO) making PAHO the Regional Office of the America of WHO." https://www.paho.org/en/who-we-are/history-paho/century-public-health-americas-paho-family-album

The CPIUN could have, but did not, say that section 2 immunity extended to "the United Nations and its subsidiary organs" or that section 18 immunity extended to officials of "the United Nations and its subsidiary organs." The drafters of the CPIUN knew how to reference subsidiary organs when they wanted to. For example, sections 11, 12 and 13 of the CPIUN provide for certain privileges and immunities for "the representatives of Members to the principal and subsidiary organs of the United Nations." The purpose of this language is to ensure that, for example, the representative of Finland to a subsidiary organ (such as the International Law Commission) is given the same protections as Finland's ambassador to the UN itself, and thus reflects an obvious concern that the phrase "representatives of Members to the United Nations" would only include the latter and not cover the former.

c. *Establishing that UNRWA Is Not a "Specialized Agency" Does Nothing to Establish That It Is Therefore Entitled to CPIUN Immunity*

Given the difficulties characterizing UNRWA within the UN System, the Government argues that for immunity purposes UNRWA is "better analogized" to a "specialized agency" based upon (1) structure and function, (2) exemption from UN rules, (3) separate financing from the UN and (4) legal independence. 2025 Gov't Statement at 6. Ignoring the analogy altogether, Defendants instead argue that UNRWA is not technically such a specialized agency under the UN Charter. D. Resp. to Govt at 12-13. This is a non sequitur, because the Government's argument is that UNRWA is functionally *analogous* to a specialized agency, not a technical one, for immunity purposes. This analogy is important because the UN's "specialized agencies" are not within the scope of the immunity provided to the UN itself under Article 5 of the CPIUN. Similarly, the U.S. has never ratified the separate treaty that would grant immunity to such agencies. *See Rodriguez* at 719. This is so well-established that Defendants cannot deny it, just as they do not dispute the

11

factual showing that UNRWA is indeed functionally analogous to the specialized agencies regardless of how it may be labeled.

But Defendants are entirely unable to explain *why* UNRWA should be deemed part of the "United Nations" for CPIUN purposes when the specialized agencies such as the WHO are concededly not. They simply proclaim that the phrase "the United Nations" in the CPIUN somehow includes all affiliated entities whose relationship to the UN is governed by Article 22 of the UN Charter while simultaneously excluding all affiliated entities whose relationship to the UN is governed by Articles 57 or 63. No textual, structural, or historical justification is offered for this assertion, which is clearly yet another ad hoc one that has been concocted solely for purposes of this litigation. All of Defendants' sweeping arguments about why section 2 CPIUN immunity should extend to each and every supposed "subsidiary organ" of the UN would be equally applicable to claiming immunity for the specialized agencies, but no such claim is made, because Defendants cannot dispute that the law is otherwise.

Again, we have put in the record the evidence that, during the ratification process, the Senate asked the State Department's senior lawyer about whether the CPIUN would apply to other agencies and was told that it would not. Doc. No. 25 at 2-3; Doc. 24-1 at 6 and 37. It is undisputed that no one told the Senate that while CPIUN would *not* apply to UN-affiliated agencies that were "specialized agencies" within the highly technical meaning of Articles 57 and 65, it *would* nonetheless apply to any UN-affiliated agency that was instead governed by Article 22. Given multiple opportunities to address the ratification history, Defendants have consistently refused to do so, thereby conceding that they cannot respond to it.

Indeed, this very analogy of UNRWA to a specialized agency, was drawn within the UN itself, in a memorandum published in the United Nations Juridical Yearbook for 2000 (Exh. T to

the new Declaration of John W. Brewer submitted herewith), at 354-58, addressing the nature and status of a group of UN affiliates including UNRWA that had come to be referred to for internal administrative purposes within the UN system as "affiliated bodies." That memorandum noted (at 356) that a variety of different terms other than "subsidiary organs" were used interchangeably and/or inconsistently for various entities, and that "subsidiary organs" in the broadest possible sense "var[ied] widely with respect to their membership, structure, scope of activity, powers, method of reporting and duration." It further noted (357) that entities like UNRWA are "[u]nlike other subsidiary organs" because they "enjoy a considerable degree of autonomy," "have substantial operational independence" as well as independence "in financial matters since most of them are financed through voluntary contributions," and that "their activities closely resemble those of specialized agencies." For these reasons, "because of their special nature these subsidiary bodies" such as UNRWA "have always been treated differently within the United Nations." This analysis cannot be reconciled with the litigation position that all "subsidiary organs" must be treated alike for immunity purposes and treated identically with the UN itself for immunity purposes, rather than be treated analogously to the specialized agencies that they closely resemble.

   d. *There Is No Basis for the Argument That Absolutely Any Entity the General Assembly Creates Is Entitled to Absolute Immunity*

  As already explained, Defendants cannot prevail under any analysis that requires consideration of the actual facts of UNRWA's structure, activities, or relationship with the UN proper. This is why they argue for an extreme interpretation of the CPIUN that makes the facts irrelevant, namely that any "subsidiary organ" is by definition indistinguishable from the UN itself for CPIUN purposes, and that UNRWA is such a "subsidiary organ" regardless of the fact that, for example, the UN's own official organizational chart (Doc. No. 24-4) says that it is not a subsidiary organ.

This "subsidiary organ" theory of immunity appears to have been concocted in the middle of this litigation.  The initial June 2024 letter from the UN itself to the Government lobbying the Government to support the Defendant's immunity claims (Doc. No. 17-1) nowhere mentions the phrase "subsidiary organ," arguing instead (id. at 2) that UNRWA is protected by the CPIUN because it is an "integral part" of the UN.  The second UN letter to the Government (Doc. No. 17-2) likewise does not make any claim that "subsidiary organ" status is relevant to immunity, much less dispositive, and the Government's initial now-withdrawn letter endorsing the immunity claims (Doc. No. 17) likewise echoed (at 4) the UN's own "integral part" assertion.  It was only after Plaintiffs first demonstrated (Doc. No. 25 at 13-16) the overwhelming evidence that UNRWA is *not* an "integral part" of the UN that the "integral part" argument was quietly abandoned and replaced by the "subsidiary organ" argument.  Indeed, Defendants' own opening brief (Doc. No. 50), filed after Plaintiffs had already made that showing in response to the 2024 Government Filings, carefully avoids using the phrase "integral part."

As Plaintiffs have previously demonstrated (Doc. No. 25 at 11-12; Doc. No. 42 at 6-8; Doc. No. 53 at 7-11) the case law Defendants invoke for this "subsidiary organ" theory does not support the sweeping theory they now rely on.  *See* D. Resp. to Gov't at 8.  But even more importantly, the underlying record of those cases shows that the prior courts assumed rather than decided that the UN's own CPIUN immunity extended to whatever UN-affiliated agency was claiming immunity, because the plaintiffs in those cases had not challenged that threshold assertion but instead relied on other arguments against immunity.  It is well-established that a "sub silentio holding" on an issue not actually disputed by the parties to the case "is not binding precedent" in later cases because the earlier court "did not independently analyze" the issue's merits.  *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 153 (2d Cir. 2016).  *See also United*

*States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019) (declining to give weight to statement of law in prior opinion that had not been disputed by parties in that case: "[U]nder our adversarial system of justice, an unchallenged and untested assumption is simply not a holding that binds future courts.").

The only case Defendants cite that could have potentially been binding precedent on this Court illustrates this. *Georges v United Nations*, 834 F.3d 88 (2d Cir. 2016), was a lawsuit against the UN itself and MINUSTAH, a temporary multinational military force that was established in 2004 by UN Security Council Resolution 1542 (S/RES/1542 (2004)) to maintain order in Haiti after a coup and the accompanying political instability had created a power vacuum there threatening broader regional security. But as we have already shown[6], nowhere in either the district court or Second Circuit briefing did the plaintiffs challenge the claim that MINUSTAH had the same entitlement to immunity under CPIUN as the UN itself. Moreover, MINUSTAH's purpose and role were very different from those of UNRWA and under the "core public functions" analysis supported by the Government here (2025 Gov't Statement at 6) it is entirely plausible that MINUSTAH would have been correctly held to share the UN's own CPIUN immunity if the plaintiffs had actually disputed that issue. *Georges* does not control UNRWA's entitlement to immunity in this case.

Other prior cases finding immunity for UN-affiliated defendants have likewise engaged in the sort of case-specific and agency-specific inquiry that the Defendants desperately wish to avoid in this case. For example, *Shamsee v. Shamsee*, 74 A.D.2d 357 (2d Dep't 1980), which held that a divorced wife with a judgment against her ex-husband could not execute against his interest in

---

[6] Doc. No. 25 at 11-13

the United Nations Joint Staff Pension Fund, focused on the fact that all of the assets held by that fund were the result of funding provided by the UN itself, so the assets were "property of the United Nations" protected by the CPIUN without needing to determine separately whether or not the fund itself was "the United Nations."  By contrast, it is undisputed that UNRWA receives the overwhelming majority of its funding not from the UN but from its own independent solicitation of donations.  Cmplt. ¶¶ 6(b), 617-631 and Doc. No. 42 at 3.  That same careful entity-by-entity analysis is required as a matter of U.S. constitutional law, as the Government showed in its citation (2025 Gov't Statement at 7) of *Hennessey v. University of Kansas Hospital Authority*, 53 F.4th 516 (10th Cir. 2022), in which the court held that the creation of the defendant entity by the Kansas legislature was not by itself enough to make that entity "the State of Kansas" for purposes of Eleventh Amendment sovereign immunity, but that a much more detailed analysis was required to see how distinct the entity was or was not from the state itself.

Defendants now cite a random assemblage of documents from various contexts referring to UNRWA as a subsidiary organ.  All of these newly-cited items, if relevant, could and should have been raised earlier, since the Government has made no relevant point that the Plaintiffs had not already made earlier in the litigation.  Defendants cannot explain away the numerous other documents already in the record that characterize UNRWA as something other than a "subsidiary organ."  Doc. No. 42 at 7 n. 6 and 11; Doc. No. 53 at 7-8; Doc. No. 24-4 and Doc. No. 52-1.  Nor, beyond quibbling about labels rather than substance, can they respond to the undisputed facts that make no sense if UNRWA is a mere creature of the General Assembly's will, such as the need for the negotiation of an arms-length agreement between the head of UNRWA and the Secretary-General in order for the United Nations Appeals Tribunal to have any jurisdiction over UNRWA employee disputes.  2025 Gov't Statement at 8-9.  Doc. No. 25 at 15.  Similarly, Defendants'

reference to Article 22 of the UN Charter (D. Resp. to Gov't at 16-17) is irrelevant.  It is a single sentence authorizing the General Assembly to create subsidiary organs "for the performance of its functions."  No one argues that UNRWA performs the functions of the General Assembly, and the Resolution establishing UNRWA does not reference Article 22.

As noted above, the extreme position that any entity established by the General Assembly is a subsidiary organ would give the General Assembly carte blanche to bestow absolute immunity upon commercial banks, oil companies, and airlines, regardless of their function and purpose and distance from the UN's core functions as understood at the time the CPIUN was drafted and then ratified by the Senate.

As the Supreme Court has held, a foreign government's characterization of its own law offered (whether as an amicus or otherwise) in a federal court proceeding cannot be binding on the U.S. courts, which must remain free to decide disputed legal questions for themselves.  *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co*., 585 U.S. 33 (2017).  That rule applies even more strongly here where the UN cannot claim with a straight face to be a disinterested party.  Moreover, the Defendants' claim is essentially that the UN Charter empowers the General Assembly to control the scope of immunity conferred by the CPIUN, but as the Government has pointed out (2025 Gov't Statement at 2) it is well-established that the Charter is not "self-executing" and thus does not provide any rules that can be enforced as governing law in federal court unless and to the extent Congressional legislation implements such rules.  *See also Flores v. Southern Peru Copper Corp*., 414 F.3d 233, 250 n. 24 (2d Cir. 2003) (noting that UN Charter is not self-executing and collecting prior Circuit precedent so holding).

And in any event, the best evidence of the General Assembly's understanding as to UNRWA's status for immunity purposes is found in the very General Assembly document that

created it – Resolution 302 (IV) (17) from 1949.  Doc. No. 24-5.  That resolution requested that the UN's Member States accord UNRWA "the privileges, immunities, exemptions and facilities which have been granted to the United Nations Relief for Palestine Refugees," a previous ad hoc entity which had been dealing with the same issues.  As both the Government and Plaintiffs have explained (Doc. No. 25 at 12-13; 2025 Gov't Statement at 7), this request is fundamentally irreconcilable with any argument that UNRWA is "the United Nations" for immunity purposes.  Defendants have no coherent response to offer.  They point out that as of 1949 (D. Resp. to Gov't at 9) many countries had not yet ratified the CPIUN, but that deliberately misses the point.  The resolution does *not* ask Member States, whether or not they had ratified the CPIUN, to give UNRWA the same privileges and immunities given to the UN itself and its core headquarters staff – i.e. the privileges and immunities which as of 1949 in the U.S., for example, were governed by the IOIA and President Truman's specific designation of the UN as a qualifying "international organization."  Asking only for UNRWA to be given the privileges and immunities given previously to the "Relief for Palestine Refugees" group makes sense only if those privileges and immunities were understood as distinct and different from those of the UN itself.

     e. *The Alleged Views of Other Countries Are Both Irrelevant and Are Misstated By Defendants*

Simultaneously with telling this Court it should disregard the views of the United States Government on the immunity issues actually presented in this case, the Defendants now argue for the first time (D. Resp. to Gov't at 10-11) that this Court should instead be influenced by the views of, for example, the government of Belgium, expressed in an entirely different context.  Defendants do not cite Belgian case law regarding whether or not the CPIUN is interpreted to give UNRWA immunity to civil lawsuits in Belgium when it would otherwise lack immunity under Belgian law.  Rather, they cite Belgium's views as to what the Israeli government's obligations allegedly are to

a wide variety of relief organizations operating in Gaza or the West Bank (not limited to UNRWA) under a wide variety of treaties (not limited to the CPIUN).

      f.   *The Court Should Reject the Defendants' Immunity Arguments Based On Their Failure to Establish that UNRWA Is "the United Nations"*

While not directly implicated by this round of briefing, we remind the Court that even if UNRWA was granted immunity by implication under the CPIUN, the Court would still need to reach the question of whether these Defendants are entitled to absolute immunity for violations of jus cogens norms. In previous briefs, Plaintiffs referred this Court to the Appellate decisions, treaties, restatements, United Nations' resolutions and legal guidance, and Nuremberg Principle, all of which govern the interpretation of treaties like the CPIUN and resolutions of the United Nations. Doc No. 25 at 16-20, 22-24; Doc No. 53 at 12-15 and 21-23. The Court should keep these background principles in mind when adjudicating Defendants' interpretation of the CPIUN. In sum, Defendants have failed to demonstrate that UNRWA is "the United Nations" for either CPIUN or IOIA purposes, and their immunity defenses thus fail without any need for the Court to consider the numerous other arguments raised in the prior briefing as to why they would not be entitled to immunity even if they had met their initial burden to make that showing.

## III.   DEFENDANTS LAZZARINI AND GRANDI HAVE STILL NOT SHOWN THEY ARE ENTITLED TO DIPLOMATIC IMMUNITY

The 2025 Gov't Statement does not directly address the separate claim advanced on behalf of Defendants Lazzarini and Grandi that their supposed status of "Under-Secretary-General" of the UN itself entitles them to diplomatic immunity under section 19 of the CPIUN.[7] It is thus

---

[7] The Government does not take a position on whether Defendant Grandi's current post-UNRWA position at another UN affiliate makes him an "official of the United Nations" for purposes of section 18 immunity. 2025 Gov't Statement at 9 n. 7. The Court need not address that issue, however, because Plaintiffs are not suing him for any official acts taken in that capacity but only for his acts and omissions during his tenure with UNRWA. Cmplt. at ¶ 516.

unclear what basis Defendants have to reargue this point (D. Resp. to Gov't at 24) in what purports to be a response to the 2025 Gov't Statement. There is no basis for them to argue for an inference from silence that, unless the Government expressly addresses the issue, it must somehow secretly still adhere to views previously expressed in the 2024 Government Statements that have now been withdrawn. Moreover, given that Defendants now belatedly agree that no deference is due to the views of the Government, the Government's *prior* position would be irrelevant.

In any event the Defendants have never responded to the fatal flaws in this argument that the Plaintiffs have already briefed. Doc. No. 53 at 25-27; Doc. No. 25 at 26. Once more they claim only (D. Resp. at 24, emphasis added) that "Grandi and Lazzarini hold the *rank* of Under-Secretary-General," a claim that itself has never actually been established by any record evidence. They do not claim, nor could they claim, that either man serves in the actual *role* of Under-Secretary-General or carries out the actual job responsibilities associated with that title. Rather, their alleged "rank" appears at best to be an honorary status, perhaps relevant to internal precedence and protocol at UN events. At worst, it is an attempt to defraud third parties such as this Court, by again claiming that the US has surrendered to the UN boundless and unreviewable discretion to dole out absolute immunity to whoever it wants, for whatever reasons it wants. As we have already shown, Doc. No. 53 at 26, this cannot be reconciled with the CPIUN's ratification history and the assurances made to the Senate about the limited scope of the heightened immunity provided by Section 19.

## IV. DEFENDANTS' "PERSONAL JURISDICTIONAL" ARGUMENTS HAVE NOTHING TO DO WITH THE GOVERNMENT'S ARGUMENTS AND ARE MERITLESS

As Defendants concede (D. Resp. to Gov't at 25), the 2025 Gov't Statement "does not address Defendants' personal jurisdiction arguments," which are really mislabeled arguments

about service of process.  There is therefore no justification for them to seek to reargue those points, which Plaintiffs have already responded to.  Doc. No. 53 at 28-30.

The Defendants complain that "Plaintiffs have not even attempted" to serve the Individual Defendants located outside the United States, but fail to acknowledge that Plaintiffs applied to this Court (in January) via pre-motion letter for an order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing alternative means of service.  Doc. No. 54.  The Court has not yet acted on that application, and Plaintiffs understand that the Court may wish to defer consideration of it until it has adjudicated the immunity issues.  But Plaintiffs are ready to move forward with any further briefing or argument on that issue on whatever schedule the Court may direct, and to proceed to accomplish service after the Court has ruled on that application.

## CONCLUSION

For all the foregoing reasons, as well as all of those previously briefed, the Defendants' Motion to Dismiss should be denied in its entirety.

Dated: New York, New York
June 13, 2025

AMINI LLC

By _____/s/ Avery Samet_____
    Bijan Amini
    Avery Samet
    John W. Brewer
131 West 35th Street, 12th Floor
New York, New York 10001
Tel. (212) 490-4700
bamini@aminillc.com
asamet@aminillc.com
jbrewer@aminillc.com

21

MM~Law LLC

By ___/s/ Gavriel Mairone_____
   Gavriel Mairone (admitted to S.D.N.Y. Bar)
   Ariel Mairone (N.Y. state bar # 4993259,
   pro hac vice application to be filed)
   Jonathan Goldberg (pro hac vice application to be
   filed)
   Tayla Woolf (pro hac vice application to be filed)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Tel. (312) 253-7444

*Attorneys for Plaintiffs*

Of Counsel:
Mark Sunshine, Esq.
Thomas Berner, Esq.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.1(c) of the Rules of this District and Rule III.D of the

Rules of this Court, I hereby certify that the accompanying Plaintiffs' Reply to Defendants'

Response to the Third Statement of Interest of the United States Government contains 6,673

words, excluding the parts of the document that are exempted by Rule 7.1(c). This certificate was

prepared in reliance on the word-count function of Microsoft Word.

Dated:  New York, New York
　　　　June 13, 2025

By ____*/s/ Avery Samet*_____