UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                │
│ DATE FILED: _9/30/2025__             │
└─────────────────────────────────────┘
```

ESTATE OF TAMAR KEDEM SIMAN TOV,
BY HEIR-AT-LAW GAD KEDEM, ESTATE
OF O. S. T., BY HEIR-AT-LAW GAD KEDEM,
GAD KEDEM, INDIVIDUALLY, REUMA
KEDEM, TALIA BINER, ESTHER BINER,
DITZA HEIMAN, NETA HEIMAN MINA,
DAFNA SHAY HEIMAN, GIDEON HEIMAN
GLATT, YASMIN BEN GIGI, MAAYAN
ELIAZ, INDIVIDUALLY, ESTATE OF DIKLA
ARAVA ELIAZ, BY HEIR-AT-LAWS ODIN
ELIAZ AND STAV ELIAZ, ESTATE OF T.E.,
MINOR CHILD, BY HEIR-AT-LAW
MAAYAN ELIAZ, ODIN ELIAZ,
INDIVIDUALLY, STAV ARAVA ELIAZ,
INDIVIDUALLY, DOV ELIAZ, YIFAT
TANAMI, SAGI ARAVA, ALON ARAVA,
HADAR BEN DAVID, LIAT KOPERSTEIN,
YALI KOPERSTEIN, ZIV KOPERSTEIN,
NAAMA KOPERSTEIN, GONI KOPERSTEIN
AVNI, RAN AHARON AVNI, MAAYAN ZIN,
INDIVIDUALLY, D.E., MINOR CHILD, BY
LEGAL GUARDIAN MAAYAN ZIN, E.E.,
MINOR CHILD, BY LEGAL GUARDIAN
MAAYAN ZIN, MERAV TAL (TAL ALFASI),
RACHEL ALFENDRI, TOMER TAL ALFASI,
ORI TAL ALFASI, KEREN BLANK, SIGALIT
SHARABI, VIKTOR RAHMILOV, GALINA
RAHMILOV, INDIVIDUALLY, SOFIA
HODEDATOV, SIGAL BENBENISTE,
NATALI RAHMILOV, E.L.R, MINOR CHILD,
BY LEGAL GUARDIAN GALINA
RAHMILOV, TAMIR HODEDATOV,
HANANEL BENBENISTE, EFIM
SOLOMONOV, ESTATE OF YUVAL BAR-
ON, BY HEIRS-AT-LAW ORIT BAR-ON AND
ITZHAK BAR-ON, ORIT BAR-ON,
INDIVIDUALLY, ITZHAK BAR-ON,
INDIVIDUALLY, ESTATE OF MOSHE
SHUVA, BY HEIR-AT-LAW YOSSEF
SHUVA, YOSSEF SHUVA, INDIVIDUALLY,
SONIA SHUVA, MAAYAN DEVIKO,
SHIMON SHUVA, ESTATE OF DROR
KAPLUN, BY HEIRS-AT-LAW NOAM
KAPLUN, MAAYAN KAPLUN KEIDAR,

MORAN KAPLUN (TARASOV), NOAM
KAPLUN, INDIVIDUALLY, MAAYAN
KAPLUN KEIDAR, INDIVIDUALLY,
MORAN KAPLUN (TARASOV),
INDIVIDUALLY, ESTATE OF MARCEL
FRAILICH, BY HEIRS-AT-LAW MOR FRIDA
STRIKOVKI, ZIV FRAILICH, AMIT
FRAILICH, MOR FRIDA STRIKOVSKI,
INDIVIDUALLY, ZIV FRAILICH,
INDIVIDUALLY, AMIT FRAILICH,
INDIVIDUALLY, SHARON CASPI, AMIT
CASPI, INDIVIDUALLY, NIV CASPI, MAY
CASPI, S. C., MINOR CHILD, BY LEGAL
GUARDIAN AMIT CASPI, ESTATE OF
VARDA HARAMATY, BY HEIR-AT-LAW
AYELET HARAMATI MIZRAHI, AYELET
HARAMATI MIZRAHI, INDIVIDUALLY,
AVRAHAM MIZRAHI, ITAMAR MIZRAHI,
TOMER MIZRAHI, EDITH HYAMS, ASHER
SABAG, MICHAL SABAG, DOR MICHAEL
SABAG, DANNY OFER VAGE,
INDIVIDUALLY, GAT VAGE, H. V., MINOR
CHILD, BY LEGAL GUARDIAN DANNY
OFER VAGE, S. V., MINOR CHILD, BY
LEGAL GUARDIAN DANNY OFER VAGE,
ESTATE OF MARK SHINDEL, BY HEIR-AT-
LAW JULIA SHINDEL, JULIA SHINDEL,
INDIVIDUALLY, IGOR SHINDEL, GUY
SHINDEL, B. S., MINOR CHILD, BY LEGAL
GUARDIAN JULIA SHINDEL, ESTATE OF
YUVAL SALOMON, BY HEIR-AT-LAW
DORON SALOMON, DORON SALOMON,
INDIVIDUALLY, ESTATE OF GAYA
HALIFA, BY HEIR-AT-LAW AVRAHAM
HALIFA, AVRAHAM HALIFA,
INDIVIDUALLY, SIGAL HALIFA, NOGA
HALIFA, IDO HALIFA, IRIT LAHAV,
TAMAR LAHAV, ELIYAHU HANAN BUCH,
NITZAN LAHAV-PASTER, YAARA
SZATMARI, ILAN LAHAV, GALIT LAHAV,
INDIVIDUALLY, GUI LAHAV, R. L., MINOR
CHILD, BY LEGAL GUARDIAN GALIT
LAHAV, AND OMER LAHAV,

                    Plaintiffs,

2

|  |  |
|---|---|
| -against- | 24 Civ. 4765 (AT) |
| UNITED NATIONS RELIEF AND WORKS AGENCY ("UNRWA"), PHILIPPE LAZZARINI, PIERRE KRÄHENBÜHL, FILIPPO GRANDI, LENI STENSETH, SANDRA MITCHELL, MARGOT ELLIS, AND GRETA GUNNARSDOTTIR, | **OPINION** <br> **AND** <br> **ORDER** |
| Defendants. | |

ANALISA TORRES, District Judge:

Plaintiffs, groups of foreign national families and estates, bring this action under the Alien Tort Statute, 28 U.S.C. § 1350, against Defendant, United Nations Relief and Works Agency ("UNRWA"), and individual Defendants, Philippe Lazzarini, Pierre Krähenbühl, Filippo Grandi, Leni Stenseth, Sandra Mitchell, Margot Ellis, and Greta Gunnarsdottir ("Individual Defendants"), alleging, among other claims, that UNRWA and the Individual Defendants knowingly aided and abetted torts committed by Hamas, a terrorist organization, on October 7, 2023 (the "October 7 Attack"), in violation of the law of nations and the treaties of the United States. *See generally* Compl., ECF No. 1. Certain Plaintiffs also claim that the Individual Defendants' actions to aid and abet Hamas resulted in extrajudicial killing or torture in violation of the Torture Victim Protection Act of 1991, Pub. L. 102–256, 106 Stat. 73. Compl. ¶¶ 10, 654–59. Defendants move to dismiss the complaint for lack of subject matter jurisdiction on the grounds of immunity and lack of personal jurisdiction. *See* Mot., ECF No. 49; Mem., ECF No. 50. For the reasons stated below, Defendants' motion is granted with prejudice.

## BACKGROUND

As part of a nearly century-long conflict between the Israeli and Palestinian people, on October 7, 2023, Hamas launched an attack in Gaza, killing approximately 1,200 individuals and taking about 250 hostages. Compl. ¶ 566. Plaintiffs have suffered extensively from the attack

3

and the ensuing conflict, including from the killing of family members, *see e.g.*, *id.* ¶¶ 20, 28, 124, from torture, *see e.g.*, *id.* ¶¶ 1, 166, from kidnapping, *see e.g.*, *id.* ¶¶ 69, 151, 155–56, 199, and from damaged homes, *see e.g.*, *id.* ¶¶ 20, 30.  Nearly two years later, the conflict continues to take a humanitarian toll; according to some sources, including UNRWA, over 160,000 people have been injured in Gaza and the West Bank, and over 60,000 Palestinians have been killed. *See* UNRWA, Situation Rep. #188 on the Humanitarian Crisis in the Gaza Strip and the Occupied West Bank, Including East Jerusalem (Sept. 12, 2025), https://www.unrwa.org/resources/reports/unrwa-situation-report-188-situation-gaza-strip-and-west-bank-including-east-jerusalem.

Established in 1949 by the United Nations ("U.N.") General Assembly, UNRWA "provides education, health care (including mental health care), relief and social services, emergency assistance and microcredit to approximately five million Palestinians located in Gaza, the West Bank, Jordan, Lebanon, and Syria" and, accordingly, provided such relief following the October 7 Attack.  Compl. ¶ 540; *see also* Mem. at 3, 12.  Plaintiffs allege that, through these relief efforts, UNRWA and the Individual Defendants "systematically and deliberately aided and abetted" Hamas' terrorist activity.  Compl. ¶ 543.  Specifically, Plaintiffs claim that UNRWA knowingly facilitated and permitted the use of its facilities, such as schools, medical clinics, offices, and warehouses, for military and terrorist purposes, including the construction of Hamas command and control centers, attack tunnels, underground bunkers, weapons storage and deployment centers, and the installation of rocket launching platforms and terrorist firing positions.  *Id.* ¶¶ 543, 545–62.  Plaintiffs allege that despite public concern and internal U.N. objections, UNRWA continued to provide material assistance to Hamas by employing Hamas "operatives" in "influential positions" and "adopting" educational curricula that "incite[d]

antisemitism" and "indoctrinate[ed] . . . Palestinian children to support and participate in Hamas' jihadi culture," including "[t]he indoctrination of hatred of Jews and Israel."  *Id.* ¶¶ 563–65, 572–86, 588–616.  Plaintiffs also claim that UNRWA staff included Hamas members, some of whom participated in the October 7 Attack and in the holding and torture of hostages.  *Id.* ¶¶ 566–71; *see also id.* ¶ 587 (claiming that Individual Defendants "knew Hamas controlled UNRWA's staff union in Gaza" since 2009) (capitalization altered).  According to Plaintiffs, "[e]ach of the Individual Defendants, during their respective employment with UNRWA, directed and approved of these acts and omissions by UNRWA, while well aware of Hamas' intention to use its terror infrastructure to commit genocide and other crimes against humanity against Israeli civilians."  *Id.* ¶ 544.

Plaintiffs filed this action on June 24, 2024.  *See generally id.*  On July 30, 2024, at the request of the U.N. and "in accordance with the United States' treaty obligations," the United States Government filed a statement of interest asking the Court to respect the immunities of the U.N. and its officials under 28 U.S.C. § 517.  Govt. Ltr. I, ECF No. 17.  The Government argued that "because the [U.N.] has not waived its immunity in this case, its subsidiary organ, UNRWA, continues to enjoy absolute immunity from suit, and this action should be dismissed as against . . . UNRWA for lack of subject matter jurisdiction."  *Id.* at 6; *see also* U.N. Ltr. I, ECF No. 17-1 (June 26, 2024, U.N. letter invoking Defendants' immunity); U.N. Ltr. II, ECF No. 17-2 (July 17, 2025, U.N. letter further invoking Defendants' immunity).  The Government also contended that "Lazzarini and Grandi enjoy diplomatic immunity" under the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, *entered into force with respect to the United States* Dec. 13, 1972, 23 U.S.T. 3227, and that the Individual Defendants "enjoy immunity for their official acts" under the International Organizations Immunity Act, 22 U.S.C. § 288d(b).  Govt. Ltr. I at

6–7 (capitalization altered).  The Government has since changed its position, and now argues in its April 24, 2025 statement of interest that UNRWA is not an organ of the U.N. and thus not immune from suit, and, as a result, neither are the Individual Defendants who might be afforded official-act immunity.  Govt. Ltr. II at 3, 9, ECF No. 59.

The Court has also received two amicus briefs on the issue of Defendants' immunity. The first brief was submitted by the StandWithUs Saidoff Legal Department, a division of StandWithUs ("StandWithUs"); the Raoul Wallenberg Centre for Human Rights; the Endowment for Middle East Truth; the National Jewish Advocacy Center, Inc.; and the Temple Beth El of Boca Raton.  *See* StandWithUs Br., ECF No. 35.  The second brief was submitted by Advancing American Freedom ("AAF"), Keith Alexander, Victoria Coates, Bonnie Glick, Mark Goldfeder, Eugene Kontorovich, Michael Mukasey, Jeremy Rabkin, and Kevin Roberts.  *See* AAF Br., ECF No. 37-1; *see also* ECF No. 39.

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint on the ground that Defendants are immune from suit.  Mot.; *see also* Mem.; Opp., ECF No. 53; Reply, ECF No. 55; Def. Imm. Ltr., ECF No. 46 (Nov. 14, 2024 letter invoking Defendants' immunity).

## DISCUSSION

I.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), an action must be dismissed when the Court lacks subject matter jurisdiction—that is, the statutory or constitutional power to adjudicate the case.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  The Court must resolve subject matter jurisdiction as a "threshold matter" before reaching the merits of the case.  *Chau v. Sec. & Exch. Comm'n*, 665 F. App'x 67, 70 (2d Cir. 2016); *see also Bolivarian Rep. of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017).  A plaintiff must "affirmatively

demonstrate [subject matter jurisdiction] by a preponderance of the evidence." *Chau*, 665 F. App'x at 70. Although the Court must "take all facts alleged in the complaint as true and draw all reasonable inferences" in a plaintiff's favor, *id.*, a sufficient basis for jurisdiction still "must be shown affirmatively," and that showing cannot be made solely by asking the Court to draw inferences from the pleadings. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Additionally, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

II.    UNRWA's Immunity

Defendants argue that UNRWA is entitled to "absolute immunity from the jurisdiction of U.S. courts" under the Convention on the Privileges and Immunities of the United Nations ("CPIUN") and the International Organizations Immunities Act ("IOIA"). Mem. at 9, 16. The Government, in its first statement of interest, agreed with Defendants. *See generally* Govt. Ltr. I. Plaintiffs contend that UNRWA is not immune from suit—neither under the CPIUN nor IOIA. Opp. at 6-16. Both the Government, in its second statement of interest, Gov. Ltr. II, and amici agree with Plaintiffs. *See* AAF Br.; StandWithUs Br. The Court first addresses the issue of immunity under the CPIUN.

A.   The Convention on the Privileges and Immunities of the United Nations

1.   Legal Standard

The scope of immunity afforded to the U.N. and its subsidiary bodies comes from two multilateral agreements to which the United States is a party: the Charter of the United Nations ("U.N. Charter") and the CPIUN, Feb. 13, 1946, *entered into force with respect to the United States*, Apr. 29, 1970, 21 U.S.T. 1418. Under Article 105 of the U.N. Charter, the U.N., and by

extension, the "[r]epresentatives of the Members of the United Nations and officials of the [U.N.,] . . . shall enjoy such privileges and immunities as are necessary for the fulfillment of [the U.N.'s] purposes."  U.N. Charter art. 105, paras. 1–2 (June 26, 1945).  Article 22 of the U.N. Charter authorizes the General Assembly to "establish such subsidiary organs as it deems necessary for the performance of its functions."  *Id.* art. 22.

The CPIUN further articulates the U.N.'s privileges and immunities, providing that "[t]he [U.N.], its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."  CPIUN art. II, § 2.  Because the CPIUN is a "self-executing" treaty, it "applies in American courts without implementing legislation" and is "binding on the United States as a matter of international law."  *See Brzak v. United Nations*, 597 F.3d 107, 111–12 (2d Cir. 2010).  Accordingly, unless immunity is expressly waived, the CPIUN affords absolute immunity to the U.N., and a "district court's decision to dismiss the claims against the [U.N.]" absent a waiver of immunity is "correct."  *Brzak*, 597 F.3d at 112.

The CPIUN extends its grant of absolute immunity to "subsidiary organs of the [U.N.]." *See* CPIUN art. IV, § 11 ("[S]ubsidiary organs of the [U.N.] . . . shall, while exercising their functions . . . enjoy . . . in respect of words spoken or written and all acts done by them in their capacity as representatives, immunity from legal process of every kind.").  The Court, therefore, lacks subject matter jurisdiction over subsidiary bodies of the U.N., as they are "also immune from suit."  *Georges v. United Nations*, 84 F. Supp. 3d 246, 249 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016).

When the Government, through the Department of Justice, submits a statement of interest in a case involving an international treaty, "[r]espect is ordinarily due the reasonable views of the

Executive Branch." *Georges*, 84 F. Supp. 3d at 250 (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168 (1999) (alterations in original)); *see also* 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."). But the Government's views "concerning the meaning of an international treaty" are "not conclusive," and a Court must still evaluate whether they are "faithful to the [treaty's] text, purpose, and overall structure." *El Al Israel Airlines, Ltd.*, 525 U.S. at 168–169 (citing *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184–185 (1982)). Ultimately, the "plain and unambiguous text of the CPIUN," which "grants the U.N. [and its subsidiaries] absolutely immunity 'from every form of legal process' unless it has so waived," controls. *Sadikoglu v. United Nations Dev. Programme*, No. 11 Civ. 294, 2011 WL 4953994, at *3 (S.D.N.Y. Oct. 14, 2011); *see also Medellin v. Texas*, 552 U.S. 491, 506 (2008) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text."); *Devi v. Silva*, 861 F. Supp. 2d 135, 140–141 (S.D.N.Y. 2012) ("At least where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity by the United States.").[1]

### 2. Burden of Proof

Who bears the burden of proving UNRWA's immunity under the CPIUN? Defendants argue that the burden lies with Plaintiffs because the issue of immunity relates to subject matter jurisdiction, which Plaintiffs must ultimately prove by a preponderance of the evidence, especially when, as here, the U.N. has not waived immunity for itself, its subsidiary organs, or its

---

[1] Accordingly, the Court considers amicus briefs as only "persuasive authority." *Commodity Futures Trading Comm'n v. Archegos Cap. Mgmt. LP*, No. 22 Civ. 3401, 2023 WL 6123102, at *3 n.5 (S.D.N.Y. Sept. 19, 2023).

officials.  *See* Mem. at 7–8; Reply at 2–3.  Plaintiffs contend that when statute-based immunity is

not involved under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*,

common law sovereign immunity governs the exercise of the Court's subject matter jurisdiction.

Pl. Resp. Ltr. II at 5–6, ECF No. 67 (quoting *Turkiye Halk Bankasi A.S. v. United States*, 598

U.S. 264, 271 (2023)).  Plaintiffs argue, therefore, that Defendants bear the ultimate burden of

proving UNRWA's immunity.  Pl. Resp. Ltr. II at 6.

Immunity under the CPIUN is treaty-based, binding international law on the courts; it is

not based on common law.  *See Brzak*, 597 F.3d at 111–12.  Common law immunity is

"immunity that foreign states enjoyed prior to the enactment of the FSIA," *Havlish v. Taliban*,

No. 23 Civ. 258, 2025 WL 2447193, at *23 (2d Cir. Aug. 26, 2025), and does not bear on the

CPIUN's grant of absolute immunity to the U.N. and its subsidiaries, *Brzak*, 597 F.3d at 111–12.

Accordingly, UNRWA's CPIUN-based immunity presents a first-order question of the Court's

subject matter jurisdiction, and Plaintiffs bear the burden of proving that it exists.

### 3.  UNRWA as a Subsidiary Organ

Defendants contend that UNRWA is a subsidiary organ of the U.N. General Assembly,

one of the U.N.'s six principal organs, and therefore enjoys immunity under the CPIUN.  Mem.

at 10–11.  Defendants rely on the Government's first statement of interest and the letters

submitted by the U.N. to support their argument, *see* Mem. at 11–12; *see also* Govt. Ltr. I at 4–6;

U.N. Ltr. I at 2–3; U.N. Ltr. II at 2; Govt. Reply Ltr. I  at 2–4, and various U.N. documents,

including General Assembly Resolutions and the U.N.'s Repertory of Practice of United Nations

Organs, which describe "UNRWA's status as a subsidiary organ," *see* Mem. at 12.  Defendants

further rely on a legal opinion of the U.N. Office of Legal Affairs, which "confirm[s] that UNRWA is entitled to immunity under the CPIUN." *Id.* at 13.

Plaintiffs and StandWithUs amici argue that UNRWA is not a subsidiary organ but is only "affiliated" with the U.N.—an insufficient basis for treaty-based immunity. *See* Pl. Resp. Ltr. I at 2–3, 8, 11–14; Compl. ¶ 507; *see also* Brewer Decl. Ex. E ¶ 17, ECF No. 24-5; StandWithUs Br. at 5–6. In support, Plaintiffs cite the formation history of the CPIUN—noting that a separate treaty, the Convention on the Privileges and Immunities of the Specialized Agencies ("CPISA"), which Plaintiffs contend would have provided immunity to U.N.-affiliated entities, was never ratified by the United States. Plaintiffs also argue that the fact that the 1949 resolution establishing UNRWA asked the world's governments to grant UNRWA immunity suggests "that UNRWA did not have immunity under the CPIUN." Pl. Resp. Ltr. I at 9; *see also* Opp. at 8; Pl. Resp. Ltr. II at 17–18.

Plaintiffs point to various U.N. documents and a U.N. website to claim that UNRWA is not a subsidiary organ of the U.N. but is instead a "specialized agency." Pl. Resp. Ltr. I at 10. These include: (1) "the official organizational chart of the entire 'United Nations System'" from the U.N.'s website that "lists a number of entities as 'subsidiary organs' but does not include UNRWA in that category, instead listing UNRWA in a separate miscellaneous category of 'Other Entities,'" Pl. Resp. Ltr. I at 11; Opp. at 8; Brewer Decl. Ex. D, ECF No. 24-4; (2) a "seemingly comprehensive list of 'Subsidiary Organs of the General Assembly'" from the U.N. website, Opp. at 8; Brewer Decl. II, Ex. S, ECF No. 52-1; and (3) the U.N. Juridical Yearbook for 2000, (the "Yearbook"), which states that because certain "subsidiary bodies [such as UNRWA] carry out much of their substantive work in the limited area of their mandated

activities, . . . their activities closely resemble those of specialized agencies," Brewer Decl. Ex. T, ECF No. 66-1, at 354–58; Pl. Resp. Ltr. II at 12–13.

Plaintiffs also state that the U.N.'s letter inviting the Government to file a statement of interest concerning its immunity does not explicitly characterize UNRWA as a subsidiary organ. Opp. at 7; Pl. Resp. Ltr. I at 11. Finally, Plaintiffs claim that the Court should not consider UNRWA as a subsidiary organ because UNRWA raises its own money and is not funded by U.N. general revenues, Pl. Resp. Ltr. I at 14, Brewer Decl. Ex. F at 1.34, ECF No. 24-6; does not take policy direction from the General Assembly or Secretary-General but relies on its own advisory commission, Pl. Resp. Ltr. I at 15, Brewer Decl. Ex. E ¶ 8, ECF No. 24-4; its staff does "not participate in the same pay and benefits system as the personnel of the U.N. itself," Pl. Resp. Ltr. I at 15–16, Brewer Decl. Ex. I at ¶ 28, ECF No. 24-9; and "[f]unctionally, UNRWA's work looks nothing like that of the [U.N.]'s 'principal organs' such as the General Assembly and Security Council," Pl. Resp. Ltr. I at 16.

Defendants are correct that UNRWA is a subsidiary organ of the [U.N.], and Plaintiffs do not affirmatively demonstrate otherwise.

First, in light of the other evidence in the record, Plaintiffs' argument regarding the history of the formation of the CPIUN is not persuasive. The fact that the 1949 General Assembly resolution creating UNRWA asks world governments to grant UNRWA immunity is not tantamount to a declaration that UNRWA is not a subsidiary organ of the General Assembly, especially given that, in subsequent resolutions, the General Assembly has so designated UNRWA. *See* Mem. at 12–13; Reply at 4–5; *see also* G.A. Res. 6/513 ¶ 3 (Jan. 26, 1952) (stating UNRWA is a "subsidiary organ established by the General Assembly"); G.A. Res. 13/1315 (Dec. 12, 1958) ("Recalling that the Agency is a subsidiary organ of the United

12

Nations."). Moreover, the United States did not ratify CPISA because the immunity CPISA would have granted was duplicative of the immunity that IOIA granted to international organizations; CPIUN, however, "expanded IOIA immunity." *See Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 719 (D.C. Cir. 2022) ("[T]he Senate Report indicates that the political branches had not ratified treaties like the CPISA because they thought that the IOIA itself provided sufficient immunity to international organizations.")

Second, Plaintiffs' argument with respect to the U.N. organization chart and the U.N. website is equally unpersuasive. The chart explicitly notes its limitations, stating that it "is a reflection of the functional organization of the United Nations System and for informational purposes only" and "does not include all offices or entities of the United Nations System." *See* Brewer Decl. Ex. D. The March 2025 version of the chart explains that "[t]he relevant rules of the organization concerned should be consulted in order to establish the legal status, functions and reporting lines of each entity shown in [the] [c]hart," and includes UNRWA as a subsidiary organ of the General Assembly by grouping all previous entities of the General Assembly that were present in the July 2023 chart under one encompassing category of "Subsidiary Organs." *See* The United Nations System, Mar. 2025, available at https://www.un.org/en/delegate/page/un-system-chart. Additionally, the Second Circuit has held that the officials of another subsidiary organ listed in the "Other Entities" category of the chart, specifically, the UNHCR, are immune from suit under the CPIUN. *See Brzak*, 597 F.3d at 110; *see also* Def. Resp. Ltr. at 15, ECF No. 62; Def. Reply Ltr. at 7, ECF No. 68. Moreover, there is no basis to conclude that the roster of subsidiary organs listed on the U.N. website is exhaustive, considering differing evidence in the record of the General Assembly, *see, e.g.*, G.A. Res. 6/513 ¶ 3 (Jan. 26, 1952) (calling UNRWA a "subsidiary organ established by the General Assembly").

Third, the Court rejects Plaintiffs' interpretation of the General Assembly resolutions. *See* Pl. Sur-Reply at 7 n.6, ECF No. 42. These resolutions are either irrelevant to UNRWA's status as a subsidiary organ or constitute further evidence that it is. Mem. at 12–13. The resolutions do not relate to UNRWA at all, *see, e.g.*, G.A. Res. 78/78 (Nov. 16, 2023) (concerning "Israeli practices and settlement activities affecting the rights of the Palestinian people and other Arabs of the occupied territories," and nowhere mentioning UNRWA); relate to extending UNRWA's mandate and are silent on the status of UNRWA's immunity, *see, e.g.*, G.A. Res. 19/2002 (Feb. 10, 1965); G.A. Res. 35/13 (Nov. 3, 1980); or "call upon Israel to abide by Article[] . . . 105 of the [U.N.] Charter . . .with regard to" UNRWA, *see, e.g.*, G.A. Res. 50/28 (Dec. 6, 1995); *see also* U.N. Charter art. 105 ("The Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes."). Moreover, the resolutions that Defendants cite (discussed *supra*), along with the legal opinion from the U.N. Office of Legal Affairs, expressly describe UNRWA as a subsidiary organ of the General Assembly and invoke its immunity under the CPIUN. *See* Mem. at 12–13; *see also Memorandum to the Legal Adviser, United Nations Relief and Works Agency for Palestine Refugees in the Near East*, 1984 U.N. Jurid. Y.B. 157, 188–89, U.N. Doc. ST/LEG/SER.C/22 (noting that UNRWA is "absolutely immune" from legal process under the CPIUN).

Fourth, the Court also rejects Plaintiffs' argument that UNRWA should be considered a specialized agency or analogous to a specialized agency. *See* Pl. Resp. Ltr. II at 12–13. UNRWA was established by the General Assembly under G.A. Res. 4/302 (IV) (Dec. 8, 1949) pursuant to the General Assembly's powers under Article 22 of the U.N. Charter; it was not created by "inter-governmental agreement" and "brought into relationship with the United

Nations in accordance with the provisions of Article 63"—the process that creates specialized agencies.  U.N. Charter art. 57, ¶ 1.

Plaintiffs point to the Yearbook, which is published by the Codification Division of the General Assembly's Office of Legal Affairs, Ex. T, to argue that the U.N. considers UNRWA to be analogous to a specialized agency.  Pl. Resp. Ltr. II at 12–13.  Specifically, according to Plaintiffs, UNRWA cannot be characterized as a subsidiary body because the Yearbook: (1) states that UNRWA has been referred to internally as part of a group of "affiliated bodies;" (2) inconsistently and interchangeably uses the term subsidiary organs as it refers to various agencies; (3) states that entities like UNRWA are unlike other subsidiary organs because they "enjoy a considerable degree of autonomy," "have substantial operational independence" as well as independence "in financial matters since most of them are financed through voluntary contributions," and that "their activities closely resemble those of specialized agencies;" and (4) notes that "because of their special nature these subsidiary bodies" such as UNRWA "have always been treated differently within the [U.N.]."  Pl. Resp. Ltr. II at 12–13; Yearbook at 354–58.  Plaintiffs' interpretation of the Yearbook entries is incorrect.  The Yearbook, in answering a question about why a report authored by the U.N.'s Joint Inspection Unit ("JIU") calls certain organizations, including UNRWA, "affiliated bodies," states that the Office of Legal Affairs "do[es] not have any information in [its] files as to why JIU in its reports uses the term 'United Nations affiliated bodies' with reference to entities which are 'subsidiary bodies of the United Nations."  Yearbook at 355–356.  The Yearbook explains that any "affiliated body" that the JIU report mentions, with the exception of the World Food Programme, is a "subsidiary bod[y]" of the United Nations."  *Id.* at 356.  It notes that although certain subsidiary organs of the U.N., like UNRWA, enjoy a considerable amount of autonomy, "these subsidiary bodies are still not

completely independent, since their parent organ or organs can always change their structure or even terminate their activities." *Id.* at 357. Further, the Yearbook clarifies the JIU report's designation of UNRWA, and other subsidiary organs which have substantial operational autonomy, as "affiliated bod[ies]," by recommending that, instead, such subsidiary organs should be called "United Nations programmes, funds and offices." *Id.* Finally, the document does not say that subsidiary organs, which enjoy substantial operational autonomy, should not be immune from suit.[2] For that same reason, the Court rejects Plaintiffs' contention that UNRWA's operational structure should abrogate its absolute immunity under CPIUN.

Accordingly, the Court finds that UNRWA is a subsidiary organ of the U.N. and concludes, based on the "plain and unambiguous text of the CPIUN," *Sadikoglu*, 2011 WL 4953994, at *3, that UNRWA enjoys absolute immunity.

### 4. Government Statements of Interest

Although the Government has submitted two opposing sets of letters of interest, the Court need not consider the Government's changed position on UNRWA's immunity where the "plain and unambiguous text of the CPIUN grants the U.N. [and its subsidiary organs] absolute immunity." *Sadikoglu*, 2011 WL 4953994, at *3.

Both parties correctly recognize that the Court is not obligated to afford controlling authority to the Government's statement of interest, even if the Court ordinarily gives the Government's reasonable interpretations significant weight. They instead ask the Court to accord no deference to the Government's statements. *See* Opp. at 15–16; Pl. Resp. Ltr. II at 7; Def. Resp. Ltr. at 3–4. Also, Plaintiffs argued, before the filing of the Government's second

---

[2] The Court declines to consider Plaintiffs' other arguments that the Court should find CPIUN immunity does not extend to U.N.-affiliated bodies, Pl. Resp. Ltr. II at 15–16, because, as stated above, the Court finds that UNRWA is a subsidiary organ with immunity under the CPIUN.

letter, that the Government is "certainly entitled to no deference when its current litigation position contradicts its earlier positions," referencing statements made by the Senate when the CPIUN was being ratified.  Opp. at 15.

"Courts have assigned varying weight to statements of interest by the United States Government according to the circumstances."  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, No. 01 Civ. 9882, 2005 WL 2082846, at *3 (S.D.N.Y. Aug. 30, 2005).  A question of interpretation, for example, involving "statutory or treaty interpretation, is a matter 'well within the province of the Judiciary. . . [and the Government's statements of interest] 'merit no special deference.'"  *Freund v. Republic of France*, 592 F. Supp. 2d 540, 567 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) (citing *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004)).  Because the text of the CPIUN unambiguously grants immunity to UNRWA as a subsidiary organ of the U.N., and, as explained below, to the Individual Defendants, the Court need not assign controlling weight to the Government's letters of interest.

B.  *Jus Cogens* Waiver

Plaintiffs and StandWithUs amici contend that even if immunity were accorded to UNRWA under the CPIUN, no immunity can be provided for violations of *jus cogens* norms, or "peremptory norms of international law which enjoy the highest status in international law and prevail over both customary international law and treaties."  *Devi*, 861 F. Supp. 2d at 142 (citation omitted); *see also* Pl. Resp. Ltr. I at 16; Opp. at 12–14; StandWithUs Br. at 6–9.  These norms prohibit violations of human rights norms, including, for example, genocide, torture, prolonged arbitrary detention, and a consistent pattern of gross violations of internationally recognized human rights.  Restatement (Third) of Foreign Relations Law § 702, cmt. n (1987)

("[A]n international agreement that violates [*jus cogens* norms] is void.").  Plaintiffs argue that because Defendants have allegedly violated *jus cognes* norms "by aiding and abetting Hamas," no immunity should extend to UNRWA.  Pl. Resp. Ltr. I at 17–19; Opp. 13–14.

The plain text of the CPIUN indicates that the U.N. and its subsidiary organs enjoy absolute immunity from suit unless expressly waived.  *See* CPIUN, art. II, § 2; art. IV, § 11.  The CPIUN does not provide for any implied waiver exception to UNRWA's absolute immunity, including a *jus cogens* implied waiver.  Where the U.N. has not expressly waived its immunity, which it has not done here, *see generally* U.N. Ltr. I; U.N. Ltr. II, this Court will not read in a waiver of immunity; the Second Circuit has explained that doing so "would read the word 'expressly' out of the CPIUN."  *Brzak*, 597 F.3d at 112 (refusing to imply waiver of immunity from Plaintiffs' arguments that "purported inadequacies with the United Nations' internal dispute resolution mechanism indicate[d] a waiver of immunity," because the U.N. "ha[d] not waived its immunity"); *see also Sadikoglu*, 2011 WL 4953994, at *3 ("The plain and unambiguous text of the CPIUN grants the U.N. absolute immunity 'from every form of legal process' unless it has so waived.  Accordingly, because . . . a subsidiary program of the U.N. that reports directly to the General Assembly . . . has not waived its immunity, 'the CPIUN mandates dismissal of Plaintiff[s'] claims against the United Nations for lack of subject matter jurisdiction.'" (cleaned up)).

Additionally, as discussed below, the Second Circuit has rejected the contention that a *jus cogens* theory of implied waiver can apply to the FSIA, which applies to international organizations through the IOIA and provides a narrower grant of immunity as compared to the CPIUN.

C.  The Foreign Sovereign Immunities Act and International Organizations
     Immunities Act

Defendants argue that UNRWA is also afforded immunity under the IOIA because, in

1946, President Harry Truman designated the U.N. as an international organization under the

IOIA, and UNRWA, as a subsidiary organ, is entitled to that same immunity.  Mem. at 16–17.

Defendants maintain, however, that any immunity afforded under the CPIUN is given "without

regard for whatever immunities may be conferred under the IOIA."  *Id.* at 17.  Plaintiffs contend

that because UNRWA has not been specifically designated by the President by Executive Order,

it is not entitled to immunity under the statute.  Opp. at 10; Pl. Sur-Reply at 5–7, ECF No. 42; Pl.

Resp. Ltr. II at 8–10.  Plaintiffs further argue that the implicit waiver and commercial activity

statutory exceptions to immunity, under 28 U.S.C. § 1605(a)(1)–(2), and a *jus cogens* violation

exception to immunity, should also apply to any immunity under the IOIA.  Pl. Sur-Reply at 2–5.

The FSIA, 28 U.S.C. § 1602 *et seq.*, establishes that "a foreign state shall be immune

from the jurisdiction of the courts of the United States and of the States" subject to the statute's

exceptions to such immunity.  *Id.* § 1604.  It is the "only source of subject matter jurisdiction

over a foreign sovereign or its instrumentalities in the courts of the United States."  *Blue Ridge*

*Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 83 (2d Cir. 2013); *see also Argentine*

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  The IOIA grants

international organizations expressly designated by the President of the United States "the same

immunity from suit and every form of judicial process as is enjoyed by foreign governments,

except to the extent that such organizations may expressly waive their immunity for the purpose

of any proceedings or by terms of any contract."  22 U.S.C. § 288a(b).  "Today, that means that

the [FSIA] governs the immunity of international organizations."  *Jam v. Int'l Fin. Corp.*, 586

U.S. 199, 215 (2019).  President Truman designated the U.N. as an international organization

subject to the IOIA in 1946.  *See* Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).[3]
Under the FSIA, "once a defendant presents a *prima facie* case that it is a foreign sovereign, the
plaintiff has the burden of going forward with evidence showing that, under exceptions to the
FSIA, immunity should not be granted."  *Blue Ridge*, 735 F.3d at 83 (internal quotation marks
omitted).  "[T]he ultimate burden of persuasion remains with the alleged foreign sovereign."  *Id.*

Because the Court has already determined UNRWA enjoys immunity under the CPIUN,
it need not address here whether UNRWA has immunity under the IOIA.  "[W]hatever
immunities are possessed by other international organizations," including under the IOIA, "the
CPIUN unequivocally grants the [U.N.] absolute immunity without exception."  *Brzak*, 597 F.3d
at 112.  "[T]he privileges and immunities accorded by the IOIA are only default rules," and so
"the organization's charter can always specify a different level of immunity.  The charters of
many international organizations do just that."  *Jam*, 586 U.S. 199, 214 (2019) (citing CPIUN,
Art. II § 2).  "[T]o the extent there exists any conflict between the CPIUN and the FSIA as it
relates to [a subsidiary body of the U.N.'s] immunity, the CPIUN would control."  *Sadikoglu*,
2011 WL 4953994, at *5 (finding that the United Nations Development Programme is immune
from suit as a subsidiary body of the U.N.).

Further, the Court need not address Plaintiffs' arguments about the implicit or
commercial activity FSIA statutory exceptions as they relate to UNRWA because they are
otherwise irrelevant to UNRWA's immunity under the CPIUN.  *See e.g.*, *Sadikoglu,* 2011 WL
4953994, at *4 (finding a subsidiary organ "enjoys absolute immunity from the present suit

---

[3] In its second statement of interest, the Government notes that on February 4, 2025, President Donald Trump
withdrew United States funding from UNRWA and argues that the Court should view this withdrawal as an
abrogation of UNRWA's immunity under the IOIA.  *See* Govt. Ltr. II at 3 n.1; Exec. Order No. 14199, 90 Fed. Reg.
9275 (Feb. 4, 2025).  Because the Court finds UNRWA immune from suit under the CPIUN, it makes no finding as
to whether this withdrawal of funding constitutes an abrogation of any immunity UNRWA is afforded under the
IOIA.

notwithstanding plaintiff's contention that [the] FSIA, as applied to international organizations through the IOIA, denies [that organ] immunity for disputes arising out of private commercial transactions"). Further, "there is no general *jus cogens* exception to FSIA immunity." *Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010) (per curiam) (citing *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009)).

Accordingly, because UNRWA is immune under the CPIUN and has not waived that immunity, its immunity stands, and the Court need not address alternative grants of immunity to UNRWA under the IOIA, "which grants international organizations the 'same immunity' from suit 'as is enjoyed by foreign governments' under the FOIA," *see Jam*, 586 U.S. at 215 (citation omitted).

III.    Individual Defendants' Immunity

The Individual Defendants also argue that they are immune from suit. Specifically, Lazzarini and Grandi claim they each currently hold the rank of U.N. Under-Secretary-General, and that they, therefore, should be accorded diplomatic immunity, under the CPIUN and the Vienna Convention on Diplomatic Relations ("VCDR"), because immunity has not been waived. Mem. at 19–21. All Individual Defendants contend that they are entitled to immunity under the CPIUN and IOIA, as current and former U.N. officials being sued for acts alleged to have been committed in their official capacity, and that they have not waived that immunity. Mem. at 21–29. Plaintiffs argue that none of the Individual Defendants are entitled to immunity because UNRWA is "not the same entity as the [U.N.] itself," and any immunity has been waived through a *jus cogens* exception or through statutory exceptions under the FSIA. Pl. Resp. Ltr. I at 20–26; Opp. 19–27.

A.  Legal Standard

Under the Diplomatic Relations Act of 1978, 22 U.S.C. § 254a *et seq.*, "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the [VCDR] . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed." 22 U.S.C. § 254d. This includes immunity granted under the CPIUN. *Brzak*, 597 F.3d at 113 (citing 22 U.S.C. § 254d).

Under the VCDR, "[a] diplomatic agent shall enjoy immunity from . . . civil and administrative jurisdiction." VCDR art. 31. The VCDR provides three exceptions to this immunity: where the action relates to (1) "private immovable property;" (2) succession, where the diplomat is an executor; and (3) professional or commercial activity exercised by the diplomatic agent "in the receiving State outside of his official functions." *Id.* art. 31 ¶ 1(a)–(c). The VCDR extends immunity to former diplomats only "with respect to acts performed by such a person in the exercise of his functions" as a diplomat. *Id.* art. 39, ¶ 2.

Under the CPIUN, "[t]he Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." CPIUN, art. V, § 19. U.N. officials are "immune from legal process in respect of words spoken or written and all acts performed by them in their official capacity." *Id.* art. V, §§ 17–18. Because the CPIUN's immunity for U.N. officials is "in the interests of the [U.N.] and not for the personal benefit of the individuals themselves, . . . [t]he Secretary-General shall have the right and the duty to waive the immunity of any official in any case where, in his opinion, the immunity would impede the course of justice and can be waived without prejudice to the interests of the [U.N.]." *Id.* art. V, § 20. The immunity afforded to U.N. officials from the CPIUN and VCDR also applies to former U.N. officials for acts that were done within their

22

functions as diplomats.  *See Brzak*, 597 F.3d at 113; *Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d Cir. 2009).

Finally, the IOIA provides international organizations, including the U.N., the "same immunity from suit and every form of judicial process as is enjoyed by foreign governments." 22 U.S.C. § 288a(b); *Brzak*, 597 F.3d at 112; Exec. Order No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946).  According to the FSIA, that is "immun[ity] from the jurisdiction of the courts of the United States and of the States" subject to the statute's exceptions to such immunity.  28 U.S.C. § 1604.

"When a court attempts to determine whether a defendant is seeking immunity 'with respect to acts performed by such a person in the exercise of his functions' . . . the court must do so without judging whether the underlying conduct actually occurred, or whether it was wrongful." *Brzak*, 597 F.3d at 113 (citing VCDR art. 39 ¶ 2).  The Court, therefore, looks to the allegations in the complaint and determines whether those actions were alleged to have been "performed in exercise of their official functions."  *Id*.

B.  Burden of Proof

Who bears the burden of proving the Individual Defendants' immunity?  Defendants argue, for the same reasons articulated with respect to UNRWA, that the burden lies with Plaintiffs.  *See* Mem. at 7–8.  Plaintiffs contend that Defendants must first make an initial showing of diplomatic immunity, and then the burden shifts to Plaintiffs to show that an exception to that immunity applies.  Pl. Resp. Ltr. II at 5–6.  As stated above, the FSIA contains a burden-shifting framework that requires the foreign sovereign to first make a *prima facie* showing of immunity.  Under the VCDR, however, "[r]egardless of whether the burden-shifting approach is appropriate as applied to the FSIA, there is no justification for extending it to VCDR

immunity." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019). "Accordingly, where a defendant has demonstrated diplomatic status, . . . plaintiffs bear the burden of proving by a preponderance of the evidence that an exception to diplomatic immunity applies and that jurisdiction therefore exists." *Id.* That is, "Plaintiffs bear the burden of establishing jurisdiction." *Id.* As stated above, with regard to CPIUN immunity, Plaintiffs also bear the burden of proving that that immunity does not exist and that this Court has subject matter jurisdiction.

### C. Defendants Lazzarini and Grandi

The Court agrees that because Lazzarini and Grandi both hold the rank of U.N. Under-Secretary-General, and held that rank for the time periods alleged in the complaint, they are entitled to diplomatic immunity under the CPIUN. *See* Compl. ¶¶ 508, 510; Mem. at 19–20; Reply at 7 n.5; U.N. Ltr. I at 3; *see also Kaambo v. Off. of U.S. Sec'y-Gen.*, No. 22 Civ. 9447, 2023 WL 2216254, at *2 (S.D.N.Y. Feb. 21, 2023) ("[S]enior executives of the [U.N.]— including the Secretary General of the [U.N.], Under Secretaries-General and Assistant Secretaries-General of the [U.N.]—enjoy full diplomatic immunity . . . .").

Lazzarini and Grandi are also immune under the VCDR because Plaintiffs' allegations concern acts effectuated only in their official capacities. *See* Compl. ¶ 515 ("Each of the Individual Defendants, during their respective time in UNRWA's senior management, directed, ratified, and/or otherwise facilitated the wrongful policies and actions of UNRWA complained of herein.").

Plaintiffs cannot meet their burden of showing that any of the exceptions to the VCDR apply to Lazzarini or Grandi because their conduct "was carried out in their 'professional'

capacity during their respective tenures directing UNRWA." Pl. Resp. Ltr. I at 26.[4] The commercial activity exception does not apply here. That exception permits a diplomat to be sued in "[a]n action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." VCDR art. 31(1)(c); *see also Broidy*, 944 F.3d at 436. The exception "is broadly understood to refer to trade or business activity engaged in for personal profit." *Broidy*, 944 F.3d at 445. The complaint contains allegations relating to Lazzarini and Grandi's work "during their respective time in UNRWA's senior management," *see, e.g.*, Compl. ¶ 515, not allegations relating to commercial activity.

Plaintiffs ask the Court to find a *jus cogens* exception to immunity under either the CPIUN or VCDR with respect to Lazzarini and Grandi. *See* Pl. Resp. Ltr. I at 23–25; Pl. Sur-Reply at 9–10. As this Court has held in the CPIUN and VCDR context, "[n]o United States court has recognized a *jus cogens* exception to diplomatic immunity from its civil jurisdiction, and this Court declines to do so." *Devi*, 861 F. Supp. 2d at 142; *see also Rosenberg v. Pasha*, 577 F. App'x 22, 24 (2d Cir. 2014) (rejecting a *jus cogens* exception in the common law immunity context); *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) (rejecting *jus cogens*

---

[4] Plaintiffs and AAF amici claim that the Individual Defendants, including Lazzarini and Grandi, are not actually Under-Secretaries-Generals or officials of the U.N., and the U.N. has failed to specify which categories of officials the Individual Defendants might fall under. *See* Pl. Resp. Ltr. I at 20, 26; Pl. Sur-Reply at 8–9; Pl. Resp. Ltr. II at 1920; AAF Br. at 7–8. Not so. The record, including allegations in the complaint, clearly supports the current and former rank and position claimed by the Individual Defendants. *See* Compl. ¶¶ 508–514; Govt. Ltr. I at 78; ECF No. 17-2 at 3; Govt Reply Ltr. I at 9; Reply at 7 n.5 (citing a United Nations webpage listing senior officials of the U.N., defined as "Under-Secretaries-General and Assistant Secretaries-General," which, as of its last update on Sept. 10, 2025, includes both Lazzarini and Grandi). Both Plaintiffs and AAF amici confuse Lazzarini and Grandi's titles (Commissioner-General of UNRWA and U.N. High Commissioner for Refugees, respectively) with their rank. *See* Reply at 7 n.5. Therefore, the Court rejects Plaintiffs' contention that the "U.S. has surrendered to the [U.N.] boundless and unreviewable discretion to dole out absolute immunity to [whomever] it wants, for whatever reasons it wants," Pl. Resp. Ltr. II at 20, but instead interprets binding international law in the CPIUN that lays out which categories of officials are entitled to immunity according to their function or rank. *See* CPIUN art. V, §§ 17–19.

exception in the FSIA and common law immunity context).[5]  Accordingly, Defendants Lazzarini

and Grandi are immune from suit under the CPIUN and VCDR.

### D.  Remaining Individual Defendants

The remaining Individual Defendants are also immune from suit under the CPIUN and

VCDR because they are all current or former U.N. officials, and all of Plaintiffs' allegations

about their conduct concern their official acts.  *See* Compl. ¶¶ 509, 511–15; Mem. at 21.  As it

relates to immunity under the CPIUN, the Secretary-General has not waived the Individual

Defendants' immunity.  Mem. at 21.  For the same reasons stated with respect to Lazzarini and

Grandi, the VCDR commercial exception does not apply to the Individual Defendants because

Plaintiffs' allegations address acts undertaken in their official roles.  *See* Compl. ¶ 515.  Indeed,

Plaintiffs disclaim alleging any conduct for "certain Individual Defendants who are no longer

affiliated with UNRWA" as it relates to "any act or omission following their departure from

UNRWA's employment" and only allege facts as they relate to "their acts or omissions during

their tenure with UNRWA."  Compl. ¶ 516.

Plaintiffs also argue that two press releases should be construed to constitute a waiver of the

Individual Defendants' immunity.  In the first press release, issued by UNRWA and dated

January 26, 2024, Lazzarini states that "[a]ny UNRWA employee who was involved in acts of

---

[5] Plaintiffs' reliance on *United States v. Bahel*, 662 F.3d 610 (2d. Cir. 2011) and *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012), to support their argument that a *jus cogens* exception should apply to the official-act immunity of the Individual Defendants is misplaced.  First, in *Bahel*, the Second Circuit found that the Secretary-General "effectively and expressly waived [the defendant U.N.-official's] immunity" because the U.N. was made aware of the defendant's corruption, and the Secretary-General sent a letter to the U.S. Attorney's Office stating it had "waived, [u]nder Article V, Section 20 of the [CPIUN] immunity from legal process" for the defendant.  *Id.* at 620-21, 26.  No such facts exist here, and instead, the U.N. has expressly invoked the immunity of the Individual Defendants and UNRWA.  *See generally* U.N. Ltr. I; U.N. Ltr. II; Defs. Imm. Ltr.  Second, in *Yousuf*, when the Fourth Circuit found a *jus cogens* exception for official-act immunity, the basis for immunity was the FSIA, not the CPIUN, as it is here.  *See* 699 F.3d at 766.  The case Plaintiffs cite to argue that this Circuit "followed *Yousuf*," Opp. at 21, dealt with the court "declaring invalid . . . the act of a foreign sovereign" under the "act of state doctrine," not absolute immunity under the CPIUN or even statutory immunity under the FSIA, *see, e.g.*, *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58 (2d Cir. 2019).

terror will be held accountable, including through criminal prosecution." *See* Brewer Decl. Ex. P at 2, ECF No. 24-16.  A second press release, issued two days later by a spokesperson for the Secretary-General, summarizes the briefing given to Lazzarini on allegations implicating UNRWA staff in the October 7 Attack and directs him to investigate those allegations.  *See* Brewer Decl. Ex. Q, ECF No. 24-17.  Plaintiffs state that these press releases constitute a waiver of immunity because they were "not made causally or lightly" and were made "in the interests of UNRWA[]."  Pl. Resp. Ltr. I at 24–25; Opp. at 23–25.  Because any waiver of immunity for a U.N. official must be expressly made by the Secretary-General under the CPIUN, the Court declines to imply a waiver from these public statements, *cf. United States v. Bahel*, 662 F.3d 610, 625 (2d Cir. 2011), especially where the U.N. has expressly invoked the immunity of the Individual Defendants.  *See* U.N. Ltr. I at 34; *see also* U.N. Ltr. II at 2; Def. Imm. Ltr. at 1; *see also LaVenture v. United Nations*, 746 F. App'x 80, 82 (2d Cir. 2018) (noting that mere use of the word "liability" in certain reports did not waive immunity, and refusing to imply a waiver from two Secretary-General reports because "[t]o the contrary, the [U.N.] has always maintained and continues to maintain its immunity from legal process in domestic courts")

Plaintiffs and AAF amici finally argue that a *jus cogens* exception should apply to any immunity afforded to the Individual Defendants.  Pl. Resp. Ltr. I at 24–25; Opp. at 21–23; AAF Br. at 10–25 (arguing in the alternative that Individual Defendants' conduct should be considered under an *ultra vires* theory).  As stated above, because there is no recognized *jus cogens* exception to diplomatic immunity, the Court cannot find one here.  For the same reasons, the Court rejects the argument that an implied *ultra vires* exception to the CPIUN or VCDR immunity applies to this case.

27

Accordingly, because the alleged conduct only concerns acts carried out in their official capacity and there has been no waiver of immunity, and no applicable exception applies, the Court finds that all Individual Defendants are immune from suit under the VCDR and CPIUN and need not address whether they are also immune under the IOIA.

## CONCLUSION[6]

Because UNRWA is a subsidiary organ of the United Nations and has not waived its immunity, it is entitled to immunity under the CPIUN. The Individual Defendants, including Defendants Lazzarini and Grandi, are likewise protected by diplomatic immunity for actions taken in their official capacities under the CPIUN and VCDR. Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' claims. Defendants' motion to dismiss is GRANTED, and the complaint DISMISSED with prejudice. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: September 30, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[6] Defendants also argue that this case should be dismissed for lack of personal jurisdiction over certain Defendants. Mem. at 29. Because the Court has concluded that there is no subject matter jurisdiction, it need not address arguments regarding personal jurisdiction. *See Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 12 (2d Cir. 1989). Plaintiffs' request for jurisdictional discovery, *see* Opp. at 27–28, is also denied because Plaintiffs have failed to make out a *prima facie* case for jurisdiction. *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Rep.*, 582 F.3d 393, 401–02 (2d Cir. 2009).